**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,                      Civil Action No. 2:14-cv-14-13710

                                          Hon. SEAN F. COX

        v.

R.G. & G.R. HARRIS FUNERAL
HOMES, INC.,

        Defendant.

_____/

**<u>DEFENDANT  R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S
MOTION TO DISMISS</u>**

      Defendant **R.G. & G.R. HARRIS FUNERAL HOMES, INC.**, by and through its attorney, **JOEL J. KIRKPATRICK, P.C.**, moves this Court, pursuant to Fed.R.Civ.P. 12(b)(6), for entry of an order dismissing the complaint on grounds that Plaintiff has failed to state a claim on which relief can be granted.  The grounds for this Motion are set forth more specifically in the attached supporting Brief.

      Pursuant to Local Rule 7.1(a), on November 18, 2013, concurrence was sought on the subject matter of this motion, but such concurrence was not obtained.

                              **JOEL J. KIRKPATRICK, P.C.**

                              */s/ Joel J. Kirkpatrick*
                              Joel J. Kirkpatrick
                              Attorney for Appellant
                              843 Penniman Ave. Suite 201
                              Plymouth, MI  48170
                              (734) 404 – 5710
                              (866) 241-4152 FAX
                              joel@joelkirkpatrick.com

Dated: November 19, 2014

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION**,
                    Plaintiff,                          Civil Action No. 2:14-cv-14-13710

                                                        Hon. SEAN F. COX

        v.

**R.G. & G.R. HARRIS FUNERAL**
**HOMES, INC.,**
                    Defendant.
_____/

**BRIEF IN SUPPORT OF**
**DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S MOTION TO**
**DISMISS**


**ISSUE PRESENTED**


**WHETHER THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FEDERAL**
**RULE OF CIVIL PROCEDURE 12(b)(6) BECAUSE PLAINTIFF'S COMPLAINT FAILS**
**TO STATE A CLAIM  UPON WHICH RELIEF CAN BE GRANTED**

2

## TABLE OF CONTENTS

ISSUES PRESENTED                                                                    2

CONTROLLING AUTHORITIES                                                             4

I. INTRODUCTION                                                                     6

II. FACTUAL/PROCEDURAL BACKGROUND                                                   6

III. LEGAL STANDARD                                                                 8

IV. ARGUMENT                                                                        9

    A.    Because Gender Identity Disorder is not a Protected Class Under
           Title VII, the EEOC's claim must fail as a matter of Law.          9

    B.    Because the EEOC's Prosecution of Gender Identity Disorder Claims
           Under Title VII's sex discrimination Provision is an *Ultra Vires* Act
           and, therefore, an invalid exercise of it authority, The EEOC's claim
           must fail as a matter of law.                                      11

    C.    The EEOC's Claim that Gender Identity Disorder is covered by
           sex discrimination Provisions of Title VII, Not Gender Identity,
           Per Se, But as Gender Stereotyping Under *Price Waterhouse*, is
           without merit.                                                    13

    ``    i. Employee dress and grooming Policies, even when sex specific
           do not violate Title VII's sex discrimination Provision. Therefore
           where, as here, the complainant was terminated for refusing to
           comply with the employer's dress and grooming code, such claim
           must fail.                                                        18

           ii. If the *Smith* principal were extended to Employer dress code cases,
           it would effectively invalidate all employer sex designated dress and
           grooming policies and deprive all employers of the ability to control
           the appearance of their employees.                                 20

    D.    The EEOC's claim of sex discrimination based upon the claim that
           Anthony is a woman is without merit and must fail as a matter of law.   22

    E.    The EEOC's Claims Are Incoherent and Result in the Failure to State a Claim   24

V.  CONCLUSION                                                                      26

## CONTROLLING AUTHORITIES

**Cases**

*Advocacy Org. For Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319* (6th Cir. 1999) ................................................................................................................................. 8

*Belissimo v. Westinghouse Elec. Corp., 764 F.2d 175 (3d Cir. 1985)* ........................................ 19

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Hunter, 565 F.3d at 992.* ...................... 8

*Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (3d Cir. 1991)* ............................................ 9

*Creed v. Family Express Corp.*, 2007 WL 2265630 (N.D. Ind. 2007 ......................................... 10

*Dobre v. National R.R. Passenger Corp. (Amtrak)*, 850 F.Supp. 284 (E.D. Pa. 1993) ............... 10

*Dodd v. Septa, 2007 WL 1866754 (E.D.Pa. 2007)* ................................................................... 19

*Doe v. U.S. Postal Service*, 1985 WL 9446 (D.D.C. 1985 ......................................................... 11

*Etsitty v. Utah Transit Auth., 2005 WL 1505610 (D. Utah 2005)* ............................................. 14

*Etsitty v. Utah Transit Authority, 502 F.3d 1215 (10th Cir. 2007* ............................................ 13

*Frank v. United Airlines, Inc., 216 F.3d 845 (9th Cir. 2000)* .................................................... 19

*Grossman v. Bernards Tp. Bd. of Educ.*, 1975 WL 302 (D.N.J. 1975) ....................................... 10

*Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385 (11th Cir. 1998)* ........................... 19

*Harper v. Blockbuster, 139 F.3d 1385 (11th Cir. 1998)* ........................................................... 19

*Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252 (1st Cir. 1999)* ............................... 20

*Holloway v. Arthur Anderson & Co.*, 566 F.2d 659 (9th Cir.) 1977) ......................................... 10

*In re Burnett Estate 834 N.W. 2dv 93, 99 (Mich. App.Ct. 2013)* .............................................. 23

*In re the marriage of Simmons, 825 N.E 2d 303 (App.Ill. 2005)* ............................................... 23

*In the Matter of the Estate of Gardiner, 42 P.3d 120 (Kansas 2002)* ......................................... 23

*Jesperson v. Hararh's Operating Co., Inc., 392 F.3d 1075 (9th Cir. 2004)* .............................. 19

*Kantara v. Kantara 884 So.2d 155, 159 (App. Fla. 2004)* ........................................................ 23

*Kastl v. Maricopa County Community College Dist.*, 2006 WL 2460636 (D.Ariz. 2006) .......... 10

*Kleinsorge v. Eyeland Crop., 2000 WL 124559 (E.D. Pa. 2000)* .............................................. 19

*Littleton v. Prange, 9 S.W. 3d 223, 231 (App. Tex. 1999)* ....................................................... 23

*Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864 (9th Cir. 2001)* .......................................... 20

*Oiler v. Winn-Dixie La., Inc., 2002 WL 31098541 (E.D. La. 2002)* .......................................... 14

*Powell v. Read's, Inc.*, 436 F. Supp. 369 (D.Md. 1977); *Oiler v. Winn-Dixie Louisiana, Inc.*, 2002 WL 31098541 (E.D. La. 2002) ........................................................................................ 10

*Price Waterhouse* ............................................................................................................. passim

*Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)* .................................................................. 14

*Rosa v. Park West Bank & Trust Co., 214 F.3d 213 (1st Cir. 2000)* ......................................... 20

*Schiavo v. Marina District Development Company, LLC,, 2013 WL 4105183 (N.J.Super. 2013)* ................................................................................................................................................. 19

*Schroer v. Billington, 424 F.Supp.2d 203 (D.C. 2006)* ............................................................. 15

*Schroer v. Billington*, supra, at 208-209 ................................................................................... 19

*Smith v. City of Salem Ohio, 378 F.3d 566 (6th Cir. 2004)* ...................................................... 18

*Sommers v. Budget Marketing, Inc.*, 667 F.2d 748 (8th Cir. 1982) ........................................... 10

Spearman v. Ford Motor Company, 231 F.3d 1080 (7th Cir. 2000, cert. denied, 532 U.S. 995 (2001 ....................................................................................................................................... 11

*Sweet v. Mulberry Lutheran Home*, 2003 WL 21525058 (S.D. Ind. 2003); ............................... 10

*Tavora v. New York Mercantile Exchange, 101 F.3d 907 (2nd Cir. 1996)* .................................. 19

*Territory of Alaska v. American Can Company, 358 U.S. 224 (1959).* ...................................... 12

*Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 19834) ................................................ 10

*United States v. Miami Univ., 294 F.3d 797, 807 (6th Cir. 2002)* ............................................. 12

*United States v. Miami Univ., 91 F. Supp. 2d 1132, 1149 (S. D. Ohio 2000) aff'd, 294 F.3d 797*
   *(6th Cir. 2002)* ...................................................................................................................... 12

*Vickers v. Fairfield Medical Center, et al., 453 F.3d 757 (6th Cir. 2006)* ................................ 13

*Vickers v. Fairfield Medical Center*, supra ................................................................................. 17

Voyles *v. Ralph K. Davies Medical Center*, 403 F.Supp. 456 (NB.D. Cal. 1975), aff'd without
   opinion, 570 F.2d 354 (9th Cir. 1978) .................................................................................... 11

## Statutes

42 U.S.C. Sec. 2000e-2 ............................................................................................................... 10

Americans With Disabilities Act.  42 U.S.C. Sec. 12211(b)(1) ................................................. 13

Federal Rule of Civil Procedure 56. ............................................................................................. 8

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501*
   *(6th Cir. 2003)* ........................................................................................................................ 9

Rule 12(b)(6) .............................................................................................................................. 8, 9

*Title VII of the Civil Rights Act of 1964* ...................................................................................... 9

## Other Authorities

73 C.J.S., *Public Administrative Law and Procedure*, § 163 ..................................................... 12

Employment Non-Discrimination Act ("ENDA") ...................................................................... 12

Sex Stereotyping Per Se: Transgender Employees and Title VII, 95 Ca. L. Rev. 561, 563 (2007
   ............................................................................................................................................... 16

Transforming the Debate: Why We Need to Include Transgender Rights in the Struggles for Sex
   and Sexual Orientation Equality, 101 Colum. L. Rev. 392, 392 (2001) ................................. 16

# I. <u>INTRODUCTION</u>

Plaintiff Equal Employment Opportunity Commission (hereinafter "EEOC"), an agency of the United States of America, has brought this federal employment discrimination suit against defendant,  R.G. & G.R. HARRIS FUNERAL HOMES, INC (hereinafter "Funeral Home"). The complaint  alleges unlawful employment practices on the basis of sex discrimination regarding former employee, William Anthony B. Stephens[1] (hereinafter "Anthony").   The EEOC alleges that Anthony was terminated from his employment as a funeral director/embalmer for informing the Funeral Home that he was transgender. (Complaint ¶ 10, 11)   The EEOC further alleges that Anthony was subject to unlawful employment practices on the basis of sex. The Complaint should be dismissed, however, because the EEOC is without a statutory basis to bring this action and has failed to state a claim upon which relief can be granted.

# II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Anthony was employed with the Funeral Home from September 2007 until August 2013. Anthony was an at-will employee, employed as an embalmer and funeral director.

As do all funeral homes, the Funeral Home has a dress code.  The Funeral Home's *Dress Code* is in writing and is provided to all Funeral Home staff.  The Funeral Home's *Dress Code* – provides that

> "*To create and maintain our reputation as "Detroit's Finest", it is fundamentally important and imperative that every member of our staff shall always be distinctively*

---

[1] The Complaint identifies the employee as "Aimee Stephens."  However, the Funeral Home has never employed anyone by the name of "Aimee Stephens." Anthony Stephens's name was, at the time he was hired and at all times during his employment with the Funeral Home, "William Anthony Beasley Stephens," and to the best of the Funeral Home's knowledge, information, and belief, Anthony Stephens' legal name is still "William Anthony Beasley Stephens" and so will be referred to by his legal name throughout this Brief.

*attired and impeccably groomed, whenever they are contacting the public as representatives of The Harris Funeral Home. Special attention should be given to the following consideration* [sic]*, on all funerals, all viewings, all calls, or on any other funeral work.*"

The *Dress Code* then goes on to distinguish between what male funeral directors are required to wear and what women funeral directors are required to wear. Male funeral directors are required to wear suits and ties. The suits must be black, gray, or dark blue. Shirts must be white with regular medium length collars. Ties must be Funeral Home issued or similar. Only black or dark blue socks and black or dark shoes may be worn. To assist funeral directors in complying with the Dress Code, the Funeral Home provides them with Dress Code compliant clothing.

In August of 2013, Anthony advised the Funeral Home that he had a "gender identity disorder" and that he intended to "live and work full-time as a woman," including dressing as a woman. The Funeral Home terminated Anthony's employment.

All the documentation in the Funeral Home's possession, most of which was provided by Anthony, including Anthony's *Certificate* from the Conference of Funeral Service Examining Board of the United States, his *Associate of Applied Science in Funeral Service* degree from Fayetteville Technical Community College, his cover letter and resume, his Funeral Service License issued by the State of Michigan, his employment tax records, his driver's license issued by the State of Michigan, and his 08/29/2013 Unemployment Insurance Claim, identify Anthony as male. In addition, Anthony is currently married to a woman, which would not be legally possible under the laws of Michigan if Anthony were a woman. Indeed, despite *referring* to himself on occasion as "female," nowhere does Anthony ever claim he is not biologically,

anatomically, and legally a male.

Upon his termination, Anthony filed an administrative complaint with the EEOC alleging unlawful employment practices.   The EEOC brings this Complaint, alleging gender discrimination and unlawful employment practices.   Specifically, the EEOC alleges  in its complaint that Anthony was terminated on the basis of "sex" under Title VII.   The Funeral Home brings this Motion to Dismiss on the ground that the EEOC has failed to state a claim upon which relief can be granted and lacks the statutory basis to bring its complaint under Title VII.

### III.   LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b) (6) seeks to have the complaint dismissed based upon the plaintiff's failure to state a claim upon which relief can be granted. *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). "To survive a motion to dismiss under Rule 12(b) (6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Hunter,* 565 F.3d at 992, quoting *Advocacy Org. For Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319* (6th Cir. 1999).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Hunter, 565 F.3d at 992.*

Ordinarily,  if matters outside the pleadings are presented to the court, a Rule 12(b)(6) motion is treated as one for summary judgment under Federal Rule of Civil Procedure 56. Fed.R.Civ.P. 12(c).  Where a plaintiff, however, has actual notice of all the information in the

movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated. *Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (3d Cir. 1991).* The Court also permits the consideration of materials beyond the complaint on a Rule 12(b)(6) motion challenging a limitation period, if such materials are appropriate for taking judicial notice. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)* (citations omitted).

The EEOC claims Anthony was discharged "*due to my sex and gender identity, female, in violation of Title VII of the Civil Rights Act of 1964.*"

## IV.   ARGUMENT

### A. Because Gender Identity Disorder is Not a Protected Class Under Title VII, The EEOC's Claim Must Fail As A Matter Of Law.

The Title VII provision under which the EEOC is bringing its claims against the Funeral Home provides:

> *(a) Employer practices:  It shall be an unlawful employment practice for an employer:*
>
> > *(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or*
> >
> > *(2) To limit, segregate, or classify his employees or applicants for employment in any way which would deprive, or tend to deprive, any individual of*

> *employment opportunities or otherwise adversely affect his status as an*
>
> *employee, on the basis of such individual's race, color, religion, sex or*
>
> *national origin.*

42 U.S.C. Sec. 2000e-2.

It is clear from the face of the statute that "gender identity disorder" is not a protected class under the statute, because within Congress's exhaustive list of protected classes 'gender identity' is nowhere to be found. In fact, the EEOC acknowledges that Title VII does not protect "gender identity disorder" *per se* as a protected class. Instead, the EEOC alleges that the "unlawful employment practices" it is pursuing is "on the basis of sex," not on the basis of transgender, transsexual, or gender identity disorder.

But, contrary to the EEOC's position, a multitude of courts have recognized that Title VII's "sex" discrimination provision applies only to discrimination based on a person's biological, anatomical, or physiological status as male or female, not one's so-called "gender identity" that is inconsistent with one's biological sex. *Grossman v. Bernards Tp. Bd. of Educ.*, 1975 WL 302 (D.N.J. 1975), aff'd without opinion, 538 F.2d 319 (3[d] Cir. 1976); *Dobre v. National R.R. Passenger Corp. (Amtrak)*, 850 F.Supp. 284 (E.D. Pa. 1993); *Powell v. Read's, Inc.*, 436 F. Supp. 369 (D.Md. 1977); *Oiler v. Winn-Dixie Louisiana, Inc.*, 2002 WL 31098541 (E.D. La. 2002); *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 19834); *Creed v. Family Express Corp.*, 2007 WL 2265630 (N.D. Ind. 2007); *Sweet v. Mulberry Lutheran Home*, 2003 WL 21525058 (S.D. Ind. 2003); *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748 (8th Cir. 1982); *Holloway v. Arthur Anderson & Co.*, 566 F.2d 659 (9th Cir.) 1977); *Kastl v. Maricopa County Community College Dist.*, 2006 WL 2460636 (D.Ariz. 2006), aff'd on other grounds, 325 Fed.Eppx. 492 (9th Cir. 2009); Voyles *v. Ralph K. Davies Medical Center*, 403 F.Supp. 456

(NB.D. Cal. 1975), aff'd without opinion, 570 F.2d 354 (9th Cir. 1978); *Doe v. U.S. Postal Service*, 1985 WL 9446 (D.D.C. 1985); Spearman v. Ford Motor Company, 231 F.3d 1080 (7th Cir. 2000, cert. denied, 532 U.S. 995 (2001)..

By attempting to shoehorn "gender identity disorder" into Title VII as a species of "sex discrimination," the EEOC is trying to unilaterally extend the reach of Title VII to a class it knows is not protected under Title VII.  Such bureaucratic overreaching should be rejected as an attempt by the executive branch of government to unilaterally and wrongfully amend a federal statute.  To the extent the EEOC's claim is that Anthony was terminated due to his gender identity disorder, the claim must be dismissed.

**B.  Because The EEOC's Prosecution of Gender Identity Disorder Claims Under Title VII's Sex Discrimination Provision Is An *Ultra Vires* Act And, Therefore, An Invalid Exercise Of Its Authority, The EEOC's Claim Must Fail As A Matter Of Law.**

Administrative agencies derive their powers from their enabling legislation.  Their authority cannot exceed that granted by the legislature and they are legally bound to comply strictly with their enabling statutes.  Agencies are bound by the terms of the statutes granting them their powers, and are required to act in accordance therewith and to keep within the limits of the powers and authority granted them.  Even when an agency is pursuing the policy objectives underlying the statutory scheme the agency is charged with enforcing, the agency may not disregard or expand upon the terms of the statutes themselves.  Agency actions beyond delegated authority are *ultra vires* and should be invalidated.  An agency that exceeds the scope of its authority acts *ultra vires* and the act is void.  Courts look to an agency's enabling statute and to subsequent legislation to determine whether the agency has acted within the bounds of

its authority.  73 C.J.S., *Public Administrative Law and Procedure*, § 163.  The Sixth Circuit Court of Appeals has recognized that "[a]n agency garners its authority to act from a congressional grant of such authority in the agency's enabling statute." *United States v. Miami Univ., 294 F.3d 797, 807 (6th Cir. 2002)*. Consequently, [i]f Congress does not expressly granted or necessarily imply a particular power for an agency, and that power does not exist." Id.  When determining the extent of an administrative agency's authority, courts "must adhere to the plain language of the statute, unless a contrary congressional intent is clearly established in the legislative history." *United States v. Miami Univ., 91 F. Supp. 2d 1132, 1149 (S. D. Ohio 2000) aff'd, 294 F.3d 797 (6th Cir. 2002).*

As clearly noted above, it is obvious from both the face of Title VII and case law that Title VII does not extend its protections to "gender identity disorder."

Moreover, if the face of the statute is not clear enough, one need only note the actions of Congress, which make clear that Congress did not and does not intend to include "gender identity" as a protected class under Title VII.  In particular, for 19 of the last 20 years,  the Employment Non-Discrimination Act ("ENDA") – the sole purpose of which is to  make "sexual orientation" and, in some  versions of ENDA, "gender identity," protected classes under Title VII and other federal non-discrimination statutes – has  been introduced in Congress, and every year ENDA has been introduced, Congress has rejected it. *http://en.wikipedia.org/wiki/Employment_Non-Discrimination_Act*.  These are legislative facts of which this Court may take judicial notice.  *Territory of Alaska v. American Can Company, 358 U.S. 224 (1959).*

The history of ENDA makes two things very clear.  First, it clarifies that even the proponents of ENDA acknowledge that "sexual orientation" and "gender identity" are not

currently protected classes under Title VII - because if they were there would be no need to enact ENDA to add them.  And, second, the fact that Congress has rejected ENDA every year that it has been introduced is a clear expression of Congressional intent that Congress does not intend Title VII to protect "sexual orientation" or "gender identity."

(It is also relevant to note that Congress specifically excluded "*transvestism, transexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders*" (our emphasis) from the definition of what constitutes a disability under the Americans With Disabilities Act.  42 U.S.C. Sec. 12211(b)(1).)  See *Etsitty v. Utah Transit Authority, 502 F.3d 1215 (10th Cir. 2007)*(the court agrees with the vast majority of federal courts to have addressed this issue and concludes that discrimination against a transsexual based on the person's status as a transsexual is not discrimination because of sex under Title VII).  See also *Vickers v. Fairfield Medical Center, et al., 453 F.3d 757 (6th Cir. 2006)*(because sexual orientation is not one of the listed protected classes under Title VII, sexual orientation is not a prohibited basis for discriminatory acts under Title VII).

Since it is clear, both from the face of Title VII, as well as from Congress's long and repeated history of expressly rejecting attempts to add "gender identity" to Title VII, that Title VII does not protect "gender identity" as a protected class, the EEOC has no authority to prosecute gender identity claims under Title VII.  Any attempt to do so is clearly an *ultra vires* act and void.  Therefore, the EEOC's gender identity claim here must fail as a matter of law.

## C.  The EEOC's Claim That Gender Identity Disorder Is Covered By The Sex Discrimination Provisions Of Title VII, Not as Gender Identity, *Per Se*, But As

## Gender Stereotyping Under *Price Waterhouse*, Is Without Merit.

To the extent the EEOC's claim on behalf of Anthony's gender identity disorder is based upon the argument that Anthony was not discriminated against on account of his gender identity, *per se*, but rather was discriminated against due to gender stereotyping under *Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)*, that claim must fail as well.

First, it is important to note that *Price Waterhouse* neither confronted nor addressed the issue of whether a person suffering from gender identity confusion and expressing that confusion in the workplace states a claim under Title VII. *Price Waterhouse* involved a woman, identifying and expressing herself as a woman, but whose fellow employees felt was not behaving in a sufficiently feminine manner – not a woman claiming to be a man and expressing herself as a male. The two situations are so different that any attempt to stretch the *Price Waterhouse* holding to encompass transgender claimants is untenable. See, for example, *Etsitty v. Utah Transit Auth., 2005 WL 1505610 (D. Utah 2005)*("There is a huge difference between a woman who does not behave as femininely as her employer thinks she should, and a man who is attempting to change his sex and appearance to be a woman"); *Oiler v. Winn-Dixie La., Inc., 2002 WL 31098541 (E.D. La. 2002)*("*Plaintiff's* [cross-dressing] actions are not akin to the behavior of plaintiff in <u>*Price Waterhouse*</u>. The plaintiff in that case may not have behaved as the partners thought a woman should have, but she never pretended to be a man or adopted a masculine persona. This is not just a matter of an employee of one sex exhibiting characteristics associated with the opposite sex. This is a matter of a person of one sex assuming the role of a person of the opposite sex. . . While Title VII's prohibition of discrimination on the basis of sex includes sexual stereotypes, the phrase 'sex' has not been interpreted to include sexual identity or gender identity disorders.").

14

The United States District Court for the District of Columbia made this distinction clear in *Schroer v. Billington, 424 F.Supp.2d 203 (D.C. 2006). In Billington* the court found that the *Price Waterhouse* holding "is considerably more narrow than its sweeping language suggests." In particular, the court pointed out that the "sexual stereotyping" claim recognized in *Price Waterhouse* was limited to claims of a *woman* claiming she was a *woman* who was discriminated against in employment because she was not *feminine* enough (in other words, for being out of sync with her claimed sex) – or a *man*, claiming to be a *man*, who was discriminated against in employment because he was not *masculine* enough (again, being out of sync with his claimed sex). It was not applicable to a *woman* claiming to be a *man* being allegedly discriminated against for *conforming* to masculine stereotypes (in other words, for *conforming* to her claimed sex) or, as here, a *man* claiming to be a *woman* discriminated against for *conforming* to *feminine* stereotypes (for *conforming* himself to stereotypes associated with his claimed sex). As the court stated:

> "To the extent that Title VII after *Price Waterhouse* prohibits sex stereotyping alone, it does so to allow <u>women</u> such as Ms. Hopkins to express their individual <u>female</u> identities without being punished for being 'macho,' or for <u>men</u> to express their individual <u>male</u> identities without reprisal for being perceived as effeminate. . . Protection against sex stereotyping is different, not in degree, but in kind, from protecting men, whether effeminate or not, who seek to present themselves <u>as</u> women, or women, whether masculine or not, who present themselves <u>as</u> men. The difference is illustrated in this case. *Schroer* is not seeking acceptance as a man with feminine traits. She seeks to express her female identity, not as an effeminate male, but as a woman. She does not wish to go against the gender grain, but with it. She has embraced the cultural mores

dictating that 'Diane' is a female name and that women wear feminine attire.  The problem she faces is not because she does not conform to the Library's stereotypes about how men and women should look and behave – she adopts those norms." (our emphasis). *Billington,* supra, at 210-211.

In other words, when, as here, a man suffering from gender identity disorder makes a claim of gender stereotyping, he is not, in fact, claiming that he is a man being discriminated against for expressing as a woman; rather, he is claiming that he is a woman being discriminated against for expressing as a woman.  In such a case, he is not complaining that he is being punished for not conforming to his sex, but rather that he is being punished precisely because he is conforming to his true sex.  Anthony is claiming he is a woman being discriminated against for conforming to gender stereotypes applicable to women.  Therefore, in such a case, there is and can be no gender stereotyping discrimination as identified in *Price Waterhouse*.

Second, distinguishing between Anthony's gender identity disorder and his expression of that disorder by the wearing of women's clothing and by otherwise attempting to take on the appearance and mannerisms of a woman, is a distinction without a difference.  Anthony's adoption of a female name, donning women's clothing, and exhibiting other outward expressions of being female, is simply the acting out of and one and the same with his gender identity disorder. See, for example, <u>Sex Stereotyping Per Se: Transgender Employees and Title VII</u>, 95 Ca. L. Rev. 561, 563 (2007)("[T]he very acts that define transgender people as transgender are those that contradict stereotypes of gender-appropriate appearance and behavior."); <u>Transforming the Debate: Why We Need to Include Transgender Rights in the Struggles for Sex and Sexual Orientation Equality</u>, 101 Colum. L. Rev. 392, 392 (2001)(defining transgender persons as those whose "*appearance, behavior, or other personal characteristics differ from traditional gender*

*norms*"). So to make the distinction the EEOC is trying to make – that an employer can lawfully discriminate against an employee like Anthony on account of the employee's gender identity disorder, *per se*, but not on account of his expression of that disorder, is nonsense. They are inseparable. Indeed the latter is synonymous with the former. So, because in the gender identity disorder context, the disorder and the expression of the disorder are synonymous, extending Title VII protection to the expression of the disorder effectively extends protection to the former, without exception, thereby undermining Congress's clearly expressed intent that gender identity disorder not be protected under Title VII. That this is not a legally acceptable resolution of this matter is made clear by the 6th Circuit Court of Appeal's decision in *Vickers v. Fairfield Medical Center*, supra. In *Vickers*, the court held that the sex stereotyping theory under *Price Waterhouse* was not broad enough to encompass the plaintiff's claim that he was discriminated against due to his harassers' perception that his sexual practices did not conform to traditional masculine sexual roles. Recognizing that Title VII does not protect "sexual orientation," the court warned that a gender stereotyping claim should not be used to bootstrap protection for sexual orientation into Title VII. As the court went on to say:

> "*Ultimately, recognition of Vickers' claim would have the effect of de facto amending Title VII to encompass sexual orientation as a prohibited basis for discrimination. In all likelihood, any discrimination based on sexual orientation would be actionable under a sex stereotyping theory if the claim is allowed to stand, as all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices.*" <u>Vickers</u>, supra, at 764.

The same, of course, must be said with respect to claims based in gender identity disorder – but to an even greater extent. The effect of recognizing the EEOC's claims here would be to

bootstrap all gender identity claims into Title VII because all employees suffering from gender identity disorder fail to conform to traditional gender norms.  That is the essence of gender identity disorder.

That is not to say that some lower courts haven't *appeared* to hold – on a cursory reading – that the *Price Waterhouse* holding goes further.  But a close reading of those cases makes clear that they certainly do not stand for the proposition at issue here – that Title VII prohibits an employer from requiring that its male employees – even male employees suffering from gender identity disorder – comply with reasonable male-specific dress and appearance  policies.

Take *Smith v. City of Salem Ohio, 378 F.3d 566 (6th Cir. 2004)*, for example.  In *Smith*, a male fire department employee, suffering from gender identity disorder, brought a Title VII action against the city for sex discrimination based upon allegations that he was terminated for not conforming to male sexual stereotypes.  Based upon *Price Waterhouse*, the court held that the fire fighter stated a claim for relief under Title VII's sex discrimination provision because he had alleged that he had suffered adverse employment action due to the fact that his employer thought his appearance and mannerisms were too feminine for a male.  But there was no evidence or allegation that his appearance violated the fire department's dress code.  Indeed, it is common knowledge that fire fighters wear uniforms while on duty and that there is no difference between the uniform of a male fire fighter and the uniform of a female fire fighter.  So, since *Smith* did not address the issue before the Court here, *Smith* is not determinative in this case.

i.     **Employer Dress And Grooming Policies – Even When Sex Specific – Do Not Violate Title VII's Sex Discrimination Provision.  Therefore, Where, As**

18

**Here, the Complainant Was Terminated For Refusing To Comply With The**

**Employer's Dress and Grooming Code, Such Claim Must Fail.**

EEOC's claim must fail for Anthony's refusal to comply with Defendant's dress and grooming code. "Courts before and after *Price Waterhouse* have found no Title VII violation in gender-specific dress and grooming codes, so long as the codes do not disparately impact one sex or impose an unequal burden." *Schroer v. Billington*, supra, at 208-209, citing *Jesperson v. Hararh's Operating Co., Inc., 392 F.3d 1075 (9th Cir. 2004); Frank v. United Airlines, Inc., 216 F.3d 845 (9th Cir. 2000); Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385 (11th Cir. 1998); Tavora v. New York Mercantile Exchange, 101 F.3d 907 (2nd Cir. 1996).* "Evenhanded and evenly applied grooming codes may be enforced even where the code is based on highly stereotypical notions of how men and women should appear." *Schroer v. Billington, supra, at 209. See also Schiavo v. Marina District Development Company, LLC,, 2013 WL 4105183 (N.J.Super. 2013)*(an employer's dress and grooming requirements that women, but not men, wear custom fitted black skirts, bustier tops, small jackets, pantyhose, and black shoes did not constitute illegal gender stereotyping); *Dodd v. Septa, 2007 WL 1866754 (E.D.Pa. 2007)*, citing *Belissimo v. Westinghouse Elec. Corp., 764 F.2d 175 (3d Cir. 1985)*(dress codes are permissible under Title VII even though the specific requirements between men and women differ, and this remains true even where an employer does not have a written dress code or policy); *Kleinsorge v. Eyeland Crop., 2000 WL 124559 (E.D. Pa. 2000)*(a grooming policy allowing women but not men to wear earrings fell outside the purview of Title VII); *Harper v. Blockbuster, 139 F.3d 1385 (11th Cir. 1998)*(employer's grooming policy allowing women, but not men, to wear long hair did not violate Title VII).

Indeed, a quick perusal of the cases the *Smith* court relied on for its decision reveals that

none of them involved the dress code issue [and only one of them even involves a gender identity disordered complainant and that was not even in an employment context]. *Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864 (9th Cir. 2001)*(male employee harassed for carrying his tray "like a woman" and having "feminine mannerisms" but not for not complying with a dress or grooming code), *Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252 (1st Cir. 1999)*(homosexual employees claim of sex discrimination on account of harassment over his homosexuality – but not involving any claim of not conforming to a dress or grooming policy); and *Rosa v. Park West Bank & Trust Co., 214 F.3d 213 (1st Cir. 2000)*

> ## ii. If The Smith Principle Were Extended To Employer Dress Code Cases , It Would Effectively Invalidate All Employer Sex-Designated Dress And Grooming Policies And Deprive All Employers Of The Ability To Control The Appearance Of Their Employees.

There is absolutely no support for the proposition that the Supreme Court in *Price Waterhouse* had any intention of depriving employers of the right to impose reasonable sex-specific dress and grooming policies on their employees.  That is clear, first, because *Price Waterhouse* did not itself involve an employee who was presenting as a person of a sex opposite to her biological sex, or transgressing any employer-mandated dress or grooming policy.  And, second, there is no Supreme Court or other case before or after *Price Waterhouse* that has declared employer-mandated dress or grooming policies – including gender stereotypical dress or grooming policies – to constitute "sex discrimination" under Title VII.  Indeed, the Ninth Circuit Court of Appeals recognized this very issue when it held an employer's grooming policy that required women, but not men, to wear makeup, did not constitute sex discrimination under

Title VII. In rejecting the claim that such gender specific grooming policies were illegal under Title VII, the court stated "if we were to do so [hold that a policy requiring women but not men to wear makeup constituted sex discrimination under Title VII], we would come perilously close to holy that **every** grooming, apparel, or appearance requirement that an individual finds personally offensive, **or in conflict with his or her own self-image**, can create a triable issue of sex discrimination." (Our emphasis) *Jespersen*, supra, at 1112.

Imagine the employment world if it were otherwise.  Every employer has a legitimate business interest in presenting a certain "face" to the public – a face that reflects the employer's brand; a face that attracts customers; literally the face of the business.  Indeed, this is the very reason that sex-specific dress and grooming policies have never been considered a violation of Title VII's sex discrimination provisions.

And this is particularly important in the funeral service industry, because funeral homes serve their clientele in the most serious and heart-rending contexts imaginable – the loss of loved ones.  And funeral directors, such as Anthony, interact directly with these grieving families, both in making funeral arrangements and in appearing at funerals – interacting with the family, guiding attendees to their seats, closing caskets during funeral services, driving hearses, and appearing with the family and funeral attendees at cemeteries for burials.  Indeed, this is precisely why the Funeral Home (1) requires its male funeral directors to wear men's suits and ties and (2) pays for that clothing to make sure they comply.  The Funeral Home wants to make sure that its funeral directors appear professional and that they do not detract or distract from the somber context in which the Funeral Home operates.

However, if the EEOC's position prevails, neither this Funeral Home nor any business will be able to any longer control how its employees and agents appear to the public.  Men will

be able to wear dresses, high heels, their hair long, and lip stick, and women will be able to shave their heads, wear men's suits and ties, and no make-up.  Indeed, under the EEOC's position, there would be nothing to prevent employees from mixing and matching their wardrobes.  Men will be able to wear dresses, but with men's shoes and facial hair.  And women will be able to wear men's suits and ties, but with high-heels, make-up and women's hairstyles.  Such a result would deprive business owners of the right to control their employees' work-related appearance and, therefore, the viability of their businesses.

Consequently, since no court – including any court in the 6th Circuit – has invalidated the historically recognized principle that employers may hold their employees to sex-specific dress and grooming policies, and because there is no allegation by the EEOC that the Funeral Home's dress and grooming policy in this case is unreasonable or otherwise unlawful, the Funeral Home's holding Anthony to its dress and grooming policy in this case cannot, as a matter of law, constitute a violation of Title VII's sex discrimination provision.

Now, the EEOC may argue that what is unlawful in this case is the Funeral Home's holding of Anthony to its *men's* dress and grooming policy because Anthony and the EEOC are claiming that – contrary to all objective evidence – Anthony is not a man, but rather a woman.  But the facts of this case do not support that assertion.   If the EEOC takes the position that Anthony is a woman, then the EEOC has effectively incorporated gender identity into Title VII, thereby committing an *ultra vires* act, as discussed above

**D. The EEOC's Claim Of Sex Discrimination Based Upon The Claim That Anthony Is A Woman Is Without Merit And Must Fail As A Matter Of Law**

This brings us to the EEOC's claim that Anthony was discriminated against on the basis of his "female" sex – evidently apart from his gender identity.  For a variety of reasons, this

22

claim, too, must fail as a matter of law.

First, Anthony is not, in fact, a woman. As discussed above, he is biologically, anatomically and legally, a man. He may assert – against all objective evidence – that he is a woman, but there is no medical or legal authority that would support him in that assertion. He may intend to undergo therapy and surgery that might to some extent change his *physical* appearance to resemble a female. But doing so would not make him a female and, in any event, he has not done so yet. There is no evidence that there has been any change in Anthony's legal status as a male, and if there has been it was certainly not the case when Anthony's employment was terminated. Since it is an undisputable fact that Anthony is a man – not a woman – he cannot claim his employment was terminated *on account of his being female*. See *Kantara v. Kantara* 8*84 So.2d 155, 159 (App. Fla. 2004)* (a male to female post-operative transsexual does not fit the definition of a female); *In re Burnett Estate 834 N.W. 2dv 93, 99 (Mich. App.Ct. 2013)* (a postoperative male to female transsexual is not a "woman"); *In re the marriage of Simmons, 825 N.E 2d 303 (App.Ill. 2005)* (a woman who undergoes some sex reassignment surgery and is issued a new birth certificate is not a man); *In the Matter of the Estate of Gardiner, 42 P.3d 120 (Kansas 2002)* (a male to female postoperative transsexual does not fit the definition of a female); *Littleton v. Prange, 9 S.W. 3d 223, 231 (App. Tex. 1999)* (holding, as a matter of law, that a man who underwent sex reassignment surgery and changed his birth certificate to appear female, is still a male).

Second, as pointed out above, the law is clear that Title VII's "sex" discrimination provision applies only to discrimination based on a person's biological, anatomical, or physiological status as male or female, not one's so-called "gender identity" that is inconsistent with one's biological sex. That Anthony – a biological male – is claiming he is really a female

is the sort of claim that is clearly not covered by Title VII's sex discrimination provision and must, therefore, fail as a matter of law.

Third, a claim that a man suffering from gender identity disorder has a claim for sex discrimination because such a man is really a woman is precisely the sort of bootstrapping that the court in *Vickers* rejected, for if such a claim were to be recognized, then all gender identity disorder claimants – by definition – would have a claim under the sex discrimination provision of Title VII, thereby resulting in a *de facto* amendment of Title VII.  Since this position has already been definitely rejected, the EEOC's position must fail as a matter of law.

Fourth, there is no case law that stands for the proposition that a male suffering from gender identity disorder has a claim for sex discrimination on the ground that he is really a female (or that a female suffering from gender identity disorder has a claim for sex discrimination on the ground that she is really a male).  The only gender identity disorder claim arguably recognized under Title VII is that the plaintiff was discriminated against for not conforming to gender stereotype expectations associated with the claimant's biological sex.  The theory itself precludes a claim that the claimant is not, in fact, his or her biological sex.  Indeed, the claim requires the recognition of the claimant's biological sex because, absent that, there is no ground to complain that the claimant was discriminated against for not conforming to his or her biological sex.

Consequently, to the extent the EEOC is claiming that Anthony was illegally discriminated against because he is a woman, that claim must fail as a matter of law.

**E.    The EEOC's Claims Are Incoherent and Result in the Failure to State a Claim.**

A thoughtful and reasoned analysis of the EEOC's positions clearly demonstrates their incoherence and their failure to state a claim.  Here's why –

The EEOC must be contending either of the following propositions:

(1) **Anthony is a man**.  But if Anthony is a man who wants to dress and present as a woman, including wearing women's clothing, such is contrary to the Funeral Home's legitimate dress and grooming policies.  If this is the EEOC's position, then the Funeral Home was merely requiring Anthony – a man – to comply with the Funeral Home's male dress and grooming code, which is imposed equally on all male funeral directors.   And if this is the case, then the Funeral Home was not illegally discriminating against Anthony when it terminated his employment for Anthony's refusal to abide by the Funeral Home's male dress code.

Or the EEOC is claiming that:

(2) **Anthony is a woman**.  But, even apart from the fact that there is absolutely no evidence to support such a claim, if Anthony is a woman, then the Funeral Home did not terminate him for his failure to conform to stereotypical female dress and expression, because by dressing and presenting as a woman Anthony – a woman – would not have been engaging in *non-conforming* gender stereotypical expression; instead he would have been engaging in *conforming* gender stereotypical expression. In this case, if Anthony is a woman it is impossible to claim that the Funeral Home illegally terminated Anthony for dressing and grooming contrary to feminine gender expectations since Anthony wanted to wear feminine attire.  And, as pointed out above, there is no legal authority for the proposition that a gender identity disorder claimant has a sex discrimination claim under Title VII based upon the assertion that the claimant is a sex other than his biological sex.  The only claim a gender identity disordered claimant has under Title VII is that he was discriminated against for not-

25

conforming with his biological sex – a male.

So, under either of the EEOC's possible positions, the Funeral Home could not have illegally discriminated against Anthony on account of gender stereotyping and, therefore, the EEOC's claims must fail as a matter of law.

# I. CONCLUSION

For the foregoing reasons, Defendant R.G. & G.R. Harris Funeral Homes, Inc. respectfully requests that the Court grant its Motion to Dismiss, and dismiss the complaint with prejudice.

**JOEL J. KIRKPATRICK, P.C.**

*/s/ Joel J. Kirkpatrick*
Joel J. Kirkpatrick
Attorney for Appellant
843 Penniman Ave. Suite 201
Plymouth, MI  48170
(734) 404 – 5710
(866) 241-4152 FAX
joel@joelkirkpatrick.com

Dated: November 19, 2014

# CERTIFICATE OF SERVICE

I certify that on November 19 2014, a copy of the above Motion to Dismiss was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Joel J. Kirkpatrick*

**JOEL J. KIRKPATRICK**