IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
)
        Plaintiff, )     CIVIL ACTION NO.
) 2:14-CV-13710
        v. ) Hon. Sean F. Cox
)
R.G. & G.R. HARRIS FUNERAL )
HOMES INC., )
)
        Defendant. )
_____ )

LAURIE A. YOUNG        JOEL J. KIRKPATRICK
KENNETH BIRD           JOEL J. KIRKPATRICK, P.C.
DALE PRICE (P55578)      Attorney for Defendant
MILES SHULTZ          843 Penniman Ave. Ste. 201
EMPLOYMENT          Plymouth, MI 48170
  OPPORTUNITY COMMISSION  (734) 404-5170
Attorneys for Plaintiff       Joel@JoelKirkpatrick.com
477 Michigan Ave., Room 865
Detroit, MI 48226
(313) 226-7808
dale.price@eeoc.gov

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS**

# TABLE OF CONTENTS

Questions Presented ........................................................................................ iii

Table of Authorities ........................................................................................ iv

Most Appropriate Authority ........................................................................... vi

I. Introduction ................................................................................................... 1

II. Motion to Dismiss Standard ....................................................................... 3

III. Argument .................................................................................................... 4

    A. Summary of the Argument ....................................................................... 4

    B. The Complaint States a Claim of Sex Discrimination Under Title VII ........... 6

        1.   Discrimination Against an Employee Because She is Transgender or is Transitioning from Male to Female is, by Definition, Sex Discrimination. ................................................................................ 6

        2.   Adverse Actions Motivated by Sex Stereotyping are Prohibited by Title VII. ................................................................................................ 10

        3.   Defendant's Dress Code Facts and Defense Must be Disregarded. ....... 14

    C. Defendant's Case Law Does Not Authorize Dismissal. ................................ 15

IV.   Conclusion ................................................................................................. 19

## QUESTIONS PRESENTED

1.  Title VII prohibits taking adverse employment actions motivated by sex-based considerations. Has the Commission stated a claim of sex discrimination under Title VII by alleging that Defendant discharged Amiee Stephens because she is transgender and was transitioning from male to female?

    The Commission Answers:                      Yes


2.  Does Title VII protect employees from adverse employment actions because they fail to conform to their employer's sex- or gender-based stereotypes?

    The Commission Answers:                      Yes

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................3, 13

*Barnes v. City of Cincinnati,* 401 F.3d 729 (6th Cir. 2005) ...............................8, 13

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008)......3, 14

*Caminetti v. United States,* 242 U.S. 470 (1917)........................................................8

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ............................4, 14

*Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011) ....................................6, 7, 8, 15

*Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009) .................................................15

*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3rd Cir.
     1997) ..................................................................................................................14

*International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187 (1991) ...........9

*Myers v. Cuyahoga Cty.*, 182 Fed. Appx. 510 (6th Cir. 2006)................................13

*Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 462 U.S. 669
     (1983)..................................................................................................................11

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)..................11, 18

*Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633 (1990)..............................17

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)...........................................6, 10

*Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011)...............3

*Schroer v. Billington*, 424 F. Supp. 2d 203 (D.D.C. 2006) ("Schroer I") ..............16

*Schroer v. Billington*
     577 F. Supp. 2d 293 (D.D.C. 2008) ("Schroer II") .............................6, 8, 16, 17

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) ..............................................12

iv

*Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996) ............................14

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) ..............................8, 11, 12, 13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................3

*United States v. Ron Pair Enters.,* 489 U.S. 235 (1989) ............................................8

*Vickers v. Fairfield Medical Ctr.*, 453 F.3d 757 (6th Cir. 2006).............................18

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997)...................................................3

**STATUTES**
42 U.S.C. § 2000e-2(a) .......................................................................................passim

**RULES AND REGULATIONS**
Fed. R. Civ. P. 12(b)(6)..............................................................................3, 4, 14, 15

Fed. R. Civ. P. 12(c).................................................................................................12

Fed. R. Civ. P. 12(d) ................................................................................................15

Fed. R. Civ. P. 56 ..............................................................................................14, 15

**OTHER AUTHORITIES**
Chad Livengood, *Anti-Bias Proposal for Gays Stalls*, DETROIT NEWS,
    Dec. 4, 2014 ......................................................................................................17

# MOST APPROPRIATE AUTHORITY

**CASES**

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004)

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir.2005)

*Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011)

**STATUTES**

42 U.S.C. § 2000e-2(a)

**RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6)

## I.    Introduction

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendant R.G. & G.R. Harris Funeral Homes Inc. ("RGGR") violated Title VII when it fired Amiee Stephens[1] because she is transgender, because of her transition from male to female, and/or because she did not conform to RGGR's "sex- or gender-based preferences, expectations, or stereotypes." Dkt. 1, Complaint at 4-5. The relevant portions of the Complaint are as follows:

> 8. Amiee Stephens had been employed by Defendant as a Funeral Director/Embalmer since October 2007.

> 9. Stephens adequately performed the duties of her position.

> 10. Stephens is a transgender woman. On or about July 31, 2013, Stephens informed Defendant Employer and her co-workers in a letter that she was undergoing a gender transition from male to female and intended to dress in appropriate business attire at work as a woman from then on, asking for their support and understanding.

> 11. On or about August 15, 2013, Defendant Employer's owner fired Stephens, telling her that what she was "proposing to do" was unacceptable.

> 12. Since at least September 13, 2011, the Defendant Employer has provided a clothing allowance to male employees but not female employees. Defendant Employer provides work clothes to male employees but provides no such assistance to female employees….

---

[1] RGGR refers to Ms. Stephens by her former first name, Anthony, throughout its motion. Although Anthony was her name before she announced her transition, consistent with the standards of courtroom decorum, the Commission refers to Ms. Stephens by her last name.

14. Defendant engaged in unlawful employment practices at its Garden City, Michigan facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by terminating Stephens because of sex.

15. Defendant Employer's decision to fire Stephens was motivated by sex-based considerations. Specifically, Defendant Employer fired Stephens because Stephens is transgender, because of Stephens's transition from male to female, and/or because Stephens did not conform to the Defendant Employer's sex- or gender-based preferences, expectations, or stereotypes.

16. The effect of the practices complained of in paragraphs 8 through 11 and 14 through 15 above has been to deprive Stephens of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

17. Defendant engaged in unlawful employment practices at its Garden City, Michigan facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by providing a clothing allowance/work clothes to male employees but failing to provide such assistance to female employees because of sex.[2]

18. The effect of the practices complained of in paragraphs 12 and 17 above has been to deprive a class of female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

Complaint, Dkt. 1.

In its *Motion to Dismiss*, RGGR improperly relies on facts that are not set

forth in the complaint, including allegations about a dress code. All such facts must

---

[2] The Defendant has not challenged this allegation in its motion and therefore the Commission has not offered an argument regarding it. The Commission intends to pursue its claim regarding the discriminatory clothing allowance. Consequently, the complaint should not be dismissed with prejudice even if the Court finds in favor of the Defendant with respect to its challenge to the individual claims involving Ms. Stephens.

be disregarded for purposes of this motion. The Court should deny the motion because the Commission has alleged a viable claim of sex discrimination under Title VII.

## II.    Motion to Dismiss Standard

A court should deny a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir.1997) ("Matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss."). A court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint* and are central to the claims contained therein." *Bassett v. National Collegiate Athletic*

3

*Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

Crucially, 12(b)(6) motions are not vehicles for the resolution of defenses or disputed facts:

> The purpose of a 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim or the applicability of defenses.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (internal quotation marks omitted).

## III.    Argument

### A .    Summary of the Argument

The Commission's allegations, which must be accepted as true on this motion to dismiss, are that RGGR discharged Stephens because she told her employer she was transgender, because she would be transitioning from male to female and presenting herself as female, and/or because she did not conform to RGGR's sex and/or gender-based stereotypes. RGGR's actions were motivated by the fact that a person who previously presented as one sex is now presenting as another sex. These are sex-based considerations, which are not permissible bases for employment decisions. Title VII prohibits the discharge of employees "because of…sex." 42 U.S.C. § 2000e-2(a)(1). The Complaint alleges that RGGR's conduct was motivated by considerations of Stephens's sex, and so it states a claim for relief.

4

RGGR's *Motion to Dismiss* simply misses the mark. The question properly before this Court is whether the Commission states a claim for relief under the facts as alleged in the complaint.

The Defendant's attempt to shoehorn in a defense based upon a dress code should be rejected out of hand, since the facts Defendant relies on for that purported defense are outside the Complaint. Defenses are not susceptible of resolution under a 12(b)(6) motion. All facts set forth in Defendant's motion that are not set forth in the Complaint must be disregarded for the purposes of this motion.

Discrimination against an employee because she is transgender and is transitioning from male to female is, by definition, discrimination because of sex. Further, Supreme Court and Sixth Circuit precedent support a Title VII claim where a transgender employee suffers an adverse action because is transgender, is transitioning, and/or failed to conform to her employer's sex- or gender-stereotypes. Therefore, the Commission respectfully requests that the Court deny RGGR's motion.

5

**B.** **The Complaint States a Claim of Sex Discrimination Under Title VII.**

1. <u>Discrimination Against an Employee Because She is Transgender or is Transitioning from Male to Female is, by Definition, Sex Discrimination</u>.

The Supreme Court made clear in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), that employment decisions that rely on "sex-based considerations" or which "take gender into account" are sex discrimination under Title VII. *See* 490 U.S. at 241-42 (to support sex discrimination claim, a plaintiff need only "prove that the employer relied upon sex-based considerations in coming to its decision").

That an individual is transgender or is transitioning from male to female involves, by definition, sex-based considerations. "A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011). As another court recognized, "discrimination on the basis of gender identity is literally discrimination 'because of ... sex.'" *Schroer v. Billington*, 577 F. Supp. 2d 293, 302 (D.D.C. 2008) ("*Schroer II*"). As will be discussed in more detail *infra*, Defendant relies upon outdated, inapposite or incomplete case law in support of its claim that individuals such as Ms. Stephens are not protected under Title VII.

6

In *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011), a unanimous Eleventh Circuit panel was presented with and answered the following question:

> The question here is whether discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause. For the reasons discussed below, we hold that it does.

In that case, Glenn was transitioning from male to female. After she started to present as a female, her employer fired her because her "transition was inappropriate…would be disruptive …some people would view it as a moral issue, and…[it] would make Glenn's co-workers uncomfortable." 663 F.3d at 1314. Glenn then sued her employer for sex discrimination.

Although *Glenn* was an Equal Protection Clause case, the Eleventh Circuit made clear that its conclusion that the plaintiff's discharge was sex discrimination would have been the same under Title VII. *See id.* at 1321 (concluding that evidence established that defendant acted on the basis of sex and noting that "[i]f this were a Title VII case, the analysis would end here"). Thus, in reaching its conclusion that transgender persons are protected against sex discrimination, *Glenn* relied heavily upon Title VII precedents, including cases from the Supreme Court and Sixth Circuit. First, Glenn noted that Price Waterhouse "held that discrimination on the basis of gender stereotype is sex-based discrimination." *Id.* at 1316. Further, "[a] person is defined as transgender precisely because of the

perception that his or her behavior transgresses gender stereotypes." *Id*. Thus,

Glenn held that "[a]ccordingly, discrimination against a transgender individual

because of her gender-nonconformity is sex discrimination, whether it's described

as being on the basis of sex or gender." *Id*. at 1317.

In its analysis, *Glenn* recognized that the Sixth Circuit has held that

"discrimination against a transgender individual because of his or her gender non-

conformity is gender stereotyping prohibited by Title VII." *Id*. (citing *Smith v. City

of Salem*, 378 F.3d 566 (6th Cir. 2004) and *Barnes v. City of Cincinnati*, 401 F.3d

729 (6th Cir. 2005)).

Importantly, *Glenn* noted that older cases which flatly refused to consider

the claims of transgender plaintiffs under Title VII have been "eviscerated" by

*Price Waterhouse*. *Glenn*, 663 F.3d at 1318 n.5. Thus, the EEOC's complaint

states a claim of sex discrimination under Title VII because Stephens is

transgender and RGGR fired her for that reason.

It is also clear that it is sex discrimination under Title VII to discharge an

employee because she is transitioning to a different gender presentation. In *Schroer

v. Billington*, 577 F. Supp. 2d 293 (D.D.C. 2008), the Library of Congress

expressed interest in hiring a candidate who was undergoing a gender transition

from male to female. However, that interest lasted only "until she disclosed her

transsexuality. The Library revoked the offer when it learned a man named David

8

intended to become, legally, culturally and physically, a woman named Diane."
*Schroer II*, 577 F. Supp. 2d at 306. The court held that this constituted
discrimination "because of … sex," and that the plain language of Title VII
required it. *Id*. (citing *United States v. Ron Pair Enters.,* 489 U.S. 235, 241 (1989)
and *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).

Furthermore, the court found that judicial attempts to "carve out"
transgender persons from protection were illegitimate, "allow[ing] their focus on
the label 'transexual' to blind them to the statutory language itself." *Id*. at 307.
Ultimately, the court analogized the position of transgender persons to those who
experienced hostility because they had converted to another religion, holding that
an employer that was biased against those who changed their religion would
clearly fall afoul of Title VII. *Id*. ("no court would take seriously the notion that
'converts' are not protected by the statute").

Stephens was regarded as a competent employee until she announced her
transition to her employer in a letter. Three weeks later, she was fired. While
Defendant may not have any problem with men as men or women as women, it
reacted negatively to one of its employees announcing a transition in gender from
one to the other. *See International Union, UAW v. Johnson Controls, Inc*., 499 U.S.
187, 199 (1991) (holding that whether an employment practice is based on sex
"does not depend on why the employer discriminates"). An adverse action

9

motivated by the fact that an employee is transgender or transitioning to another gender is, by definition, motivated by sex-based considerations prohibited by Title VII.

> 2. Adverse Actions Motivated by Sex Stereotyping are Prohibited by Title VII.

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer …  to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a). An employer discriminates on the basis of sex when it fires an employee for failing to conform to the employer's notions of the employee's sex.

The seminal case on this issue is *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Ann Hopkins was a senior manager at the defendant accounting firm who was proposed for partnership status by partners in her office. *Id*. at 233. She was rejected after a vote, and the evidence showed that many were hostile to her because she was a woman who acted like a man. *See id*. at 235 (Hopkins regarded as "macho," "overcompensated for being a woman," needed to take "a course at charm school," used profanity, "somewhat masculine," and needed "to walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry").

The Court held that this was sufficient evidence of stereotype-based bias, and was impermissible under Title VII.

> As to the existence of sex stereotyping in this case, we are not inclined to quarrel with the District Court's conclusion that a number of the partners' comments showed sex stereotyping at work. As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for [i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. An employer who objects to aggressiveness in women but whose positions require this trait places women in an intolerable and impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not. Title VII lifts women out of this bind.

*Id*. at 250-51 (citations and internal quotation marks omitted).

That the law does not expressly mention transgender individuals does not mean they are not subject to protection if the law is otherwise violated. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998) ("statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils"); *Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 462 U.S. 669 , 679-80 (1983) (that "congressional discussion focused on the needs of female members of the work force ... does not create a 'negative inference' limiting the scope of the act to the specific problem that motivated its enactment"); *id.* at 681 ("[p]roponents of [Title VII] stressed throughout the debates that Congress had always intended to protect all individuals from sex discrimination in

11

employment").

In *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) the Sixth Circuit explained that, after *Price Waterhouse*, an employer violates Title VII when it takes action against an employee based on "[s]ex stereotyping," that is, "based on a person's gender non-conforming behavior." This includes penalizing an employee for adopting dress and mannerisms that, in the employer's mind, conform to the wrong sex stereotypes. *See id.*; *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) ("What matters, for purposes of this part of the *Price Waterhouse* analysis, is that in the mind of the perpetrator the discrimination is related to the sex of the victim: here, for example, the perpetrator's actions stem from the fact that he believed that the victim was a man who 'failed to act like' one.").

The Sixth Circuit applied the *Price Waterhouse* analysis to reverse the Rule 12(c) dismissal of a transgender firefighter's Title VII suit. *Smith* noted that the employee alleged "that Defendants' discrimination was motivated by his appearance and mannerisms, which Defendants felt were inappropriate for his perceived sex." *Smith*, 378 F.3d at 574.

The Court held that this was sufficient to state a stereotyping claim under *Price Waterhouse*. *Id*. at 575 ("Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as 'transsexual,' is not fatal to a sex discrimination

12

claim where the victim has suffered discrimination because of his or her gender non-conformity.").

In the instant case, to survive the motion to dismiss, the Commission must only show "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint alleges that RGGR fired Stephens for failure to conform to RGGR's gender-based expectations and stereotypes. Pursuant to *Smith*, the claim is viable under Title VII's prohibition of sex discrimination.

Not only is *Smith* controlling law in this circuit, its reasoning was expressly affirmed by the Sixth Circuit in *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005) (quoting *Smith*); *see also Myers v. Cuyahoga Cty.*, 182 Fed. Appx. 510, 519 (6th Cir. 2006) ("Title VII protects transsexual persons from discrimination for failing to act in accordance and/or identify with their perceived sex or gender") (citing *Smith* and *Barnes*).

Thus, an employee who alleges that failure to conform to sex stereotypes concerning how a man or woman should look and behave was the "driving force" behind the employer's adverse employment actions "state[s] a claim for relief pursuant to Title VII's prohibition of sex discrimination." *Smith*, 378 F.3d at 575. In particular, an employer may not fire a transgender woman for failing to comport with the employer's gender expectations. Such an act is discrimination "because of

13

… sex," which Title VII prohibits. But that is precisely what the Commission alleges RGGR did when it fired Stephens for failing to conform to RGGR's perceptions of how Stephens should look and act.

### 3. Defendant's Dress Code Facts and Defense Must be Disregarded.

No document outside of the pleadings should be considered under 12(b)(6) unless it is directly invoked by the complaint. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (to be considered, material outside of the pleadings must be "referred to in the Complaint and [] central to the claims contained therein"); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3rd Cir. 1997) (material must be "integral to or explicitly relied upon in the complaint") (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). The Commission is not basing its claims upon Defendant's dress code, and does not reference a dress code in its Complaint.

Essentially, Defendant is injecting a defense into a 12(b)(6) motion and asking the court to accept the *defense* as true in order to find the *complaint* legally deficient. This is not the proper use of a motion to challenge a *complaint*. As noted above, a 12(b)(6) motion is not a vehicle "to resolv[e] …the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Instead, Rule 12(b)(6) by its terms provides for a defendant to move to dismiss a

14

complaint for "failure to state a claim upon which relief can be granted."

Rule 12 does not mandate that the Court treat a Rule 12(b)(6) motion as a Rule 56 summary judgment motion if the court chooses to consider material outside the pleadings. However, RGGR has not actually presented anything to the court to invoke this rule—it did not attach a copy of its dress code, and so even if the motion were treated as a Rule 56 motion, it should be denied because Defendant's statements of fact are entirely unsupported by evidence.

If the Court were to convert RGGR's motion to a Rule 56 motion, then the Commission, pursuant to Rule 56(d), asks that the court provide time to conduct necessary discovery in defending against a summary judgment motion. Fed.R.Civ.P. 12(d) and 56(d). *See Gunasekera v. Irwin*, 551 F.3d 461, 466 n.1 (6th Cir. 2009) (Rule 12(b)(6) motion could not be converted to Rule 56 because opposing party was not afforded opportunity to obtain requested discovery).

## C.    Defendant's Case Law Does Not Authorize Dismissal.

Defendant's sole argument which is cognizable under a 12(b)(6) analysis is that transgender persons are per se excluded from the protections of Title VII. Defendant cites several pre-*Price Waterhouse* cases and a few after that seminal decision in making its argument. *See* Dkt. 7 at Pg ID 30-31. As noted above in *Glenn*, the reasoning behind the blanket bar spelled out by the pre-*Price Waterhouse* cases has been stripped of any legal merit. *See Glenn*, 663 F.3d at

15

1318 n.5.

With respect to the handful of post-*Price Waterhouse* cases, none are from the Sixth Circuit and are not controlling here. Consequently, *Smith* and *Barnes* must control here.

Moreover, Defendant even misstates the import of one of the cases it quotes from extensively, *Schroer v. Billington*, 424 F. Supp. 2d 203 (D.D.C. 2006) ("Schroer I"). See Dkt. 7 at Pg ID 35-36. Namely, the court in *Schroer I **denied*** the employer's 12(b)(6) motion, holding that the plaintiff's gender or sexual identity may be protected under Title VII. *Id*. at 213 ("There are facts that Schroer could prove which would support her claim that the Library refused to hire her solely because of her sexual identity, and that in so doing, the Library discriminated against her 'because of...sex'").

But the case did not stop there. It went to trial, and the post-trial opinion shows that the court permitted Diane Schroer to proceed on a sex-stereotypes claim, and revised any qualms on the scope of *Smith* in light of the evidence:

> In my 2006 memorandum denying the Library's motion to dismiss, in this case, I expressed reservations about the Sixth Circuit's broad reading of *Price Waterhouse*. ...<u>That was before the development of the factual record that is now before me</u>.

*Schroer II*, 577 F. Supp. 2d at 304 (emph. added). If nothing else, the example of the *Schroer* litigation argues strongly against the resolution of these types of cases

16

on the pleadings.

Nor is there any merit to Defendant's argument that Congress' failure to pass legislation specifically identifying transgender persons as a protected class under Title VII means that they are "expressly rejected" from Title VII protection. Dkt. 7 at Pg ID 32-33. The exact same argument was also disposed of in *Schroer II* with the following quote:

> [S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress. It is a particularly dangerous ground on which to rest an interpretation of a prior statute when it concerns, as it does here, a proposal that does not become law. Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.

*Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal citation and quotation marks omitted) (quoted in *Schroer II*, 577 F. Supp. 2d at 308)).[3]

---

[3] That legislators might believe the law already protects transgender persons is not far-fetched. Similar arguments were recently made in debates over the current scope of Michigan's civil rights law. *See* Chad Livengood, *Anti-Bias Proposal for Gays Stalls*, DETROIT NEWS, Dec. 4, 2014 at http://www.detroitnews.com/story/news/politics/2014/12/03/mich-house-committee-vote-lgbt-legislation/19838895/ ("[Michigan House Speaker Jase] Bolger, R-Marshall, has opposed Democratic demands that 'gender identity or expression' be added to the Elliott-Larsen Civil Rights Act, arguing transgender individuals are already protected from discrimination under the classification of 'sex'").

Defendant's suggestion that Congress did not intend Title VII to cover gender identity discrimination is also without merit. In recognizing that same-sex harassment is actionable sex discrimination under Title VII, the Supreme Court rejected precisely the argument that RGGR makes: "[S]tatutory prohibitions often go beyond the principal evil [they were passed to combat] to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998). Thus, Defendant's arguments as to the significance of perceived legislative inaction lack substance.

Finally, Defendant cites to a case on sexual orientation, *Vickers v. Fairfield Medical Ctr.*, 453 F.3d 757 (6th Cir. 2006). However, in addition to being a sexual-orientation case, *Vickers* also expressly distinguished *Smith* by noting that it is behavior and expression which occurs in the workplace which is relevant:

> By contrast, the gender non-conforming behavior which Vickers claims supports his theory of sex stereotyping is not behavior observed at work or affecting his job performance. Vickers has made no argument that his appearance or mannerisms on the job were perceived as gender non-conforming in some way and provided the basis for the harassment he experienced. Rather, the harassment of which Vickers complains is more properly viewed as harassment based on Vickers' perceived homosexuality, rather than based on gender non-conformity.

*Vickers*, 453 F.3d at 763. *Vickers* is distinguishable from the allegations here, wherein Stephens expressly indicated that she intended to present herself in the

18

workplace with gender-nonconforming appearance and mannerisms.

## IV.    Conclusion

The Commission's complaint, alleging that RGGR fired Stephens because Stephens is transgender, because of Stephens' transition from male to female, and because Stephens did not conform to RGGR's sex stereotypes and gender-based preferences, expectations or stereotypes, is supported by Supreme Court and Sixth Circuit precedent, along with the growing trend of courts outside the Circuit. These allegations are all sex-based considerations. Under *Price Waterhouse, Smith,* and *Barnes*, the complaint states a claim for sex discrimination for which relief can be granted. Defendant's motion for judgment on the pleadings should be denied.

Respectfully submitted,

Dated: December 10, 2014

s/ Dale Price
Dale Price (P55578)
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Detroit Field Office
477 Michigan Ave., Suite 865
Detroit, MI 48226
Phone: (313) 226-7808
Fax: (313) 226-6584
E-mail: dale.price@eeoc.gov

**Certificate of Service**

I hereby certify that on December 10, 2014, a true and accurate copy of the foregoing Notice of Appearance was filed electronically. Notice of this filing will be sent to the counsel of record by operation of the Court's electronic filing system:

Respectfully submitted,

Dated: December 10, 2014

s/ Dale Price
Dale Price (P55578)
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Detroit Field Office
477 Michigan Ave., Suite 865
Detroit, MI 48226
Phone: (313) 226-7808
Fax: (313) 226-6584
E-mail: dale.price@eeoc.gov