UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
        Plaintiff,                            Civil Action No. 2:14-cv-14-13710

                                                  Hon. SEAN F. COX

    v.

R.G. & G.R. HARRIS FUNERAL
HOMES, INC.,
        Defendant.
_____/

**DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant **R.G. & G.R. HARRIS FUNERAL HOMES, INC.**, by and through its attorney, **JOEL J. KIRKPATRICK, P.C.**, for its Reply to the Plaintiff's Response to Defendant's Motion To Dismiss states as follows:

## INTRODUCTION

Plaintiff Equal Employment Opportunity Commission (hereinafter "EEOC") has alleged that the defendant, R.G. & G.R. Harris Funeral Homes, Inc. (hereinafter "Funeral Home") violated Title VII's prohibition on "sex" discrimination when the Funeral Home fired its employee – William Anthony B. Stephens[1] (hereinafter "Anthony") – after Anthony advised the Funeral Home that he was suffering from Gender Identity Disorder and was going to start

---

[1] The Complaint identifies the employee as "Aimee Stephens." However, the Funeral Home has never employed anyone by the name of "Aimee Stephens." Anthony Stephens's name was, at the time he was hired and at all times during his employment with the Funeral Home, "William Anthony Beasley Stephens," and to the best of the Funeral Home's knowledge, information, and belief, Anthony Stephens' legal name is still "William Anthony Beasley Stephens" hence this designation has been used throughout these pleadings.

1

dressing as a woman at work, thereby violating the Funeral Home's dress code requirements.

The Funeral Home filed a Motion to Dismiss the EEOC's Complaint on the grounds that the EEOC's Complaint fails to state a claim upon which relief may be granted. The EEOC's argument that its Complaint should not be dismissed is based on three contentions, namely: (1) discrimination against an employee because she is transgender is, by definition, sex discrimination; (2) discrimination against an employee because she is transitioning from male to female is, by definition, sex discrimination; and (3) adverse employment actions motivated by sex stereotyping are prohibited by Title VII.

The EEOC is in error.

## ARGUMENT

### I. Adverse Employment Action Against An Employee Because The Employee Is Transgender Is Not Sex Discrimination Under Title VII.

The EEOC contends that "Discrimination against an employee because she is transgender is . . . by definition, discrimination because of sex." This remarkable ipse dixit - "sex" means whatever the EEOC wanted to mean - violates the applicable statute, and any sensible application.

In fact, the vast majority of federal courts to have addressed the issue have concluded the opposite – that discrimination against a transsexual based on the person's status as a transsexual is *not* discrimination because of sex under Title VII. And that is the case even after *Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)*. See, for example, *Etsitty v. Utah Transit Authority, 502 F.3d 1215 (10th Cir. 2007)*(the court agrees with the vast majority of federal courts to have addressed this issue and concludes that discrimination against a transsexual based

on the person's status as a transsexual is not discrimination because of sex under Title VII).

This fact defeats the EEOC's repeated assertions that Title VII's "sex" discrimination provision *already* includes protection against transgender discrimination. The language of Title VII is contrary to the EEOC's position. The fact that Congress has repeatedly refused to enact ENDA so as to add transgender protection to VII is contrary to the EEOC's position. And the consistent decisions of a multitude of post-*Price Waterhouse* federal courts are contrary to the EEOC's position. The EEOC's position to the contrary is simply and clearly unsupportable.

Therefore, the EEOC's claim that the Funeral Home violated Title VII by terminating Anthony's employment because Anthony claims to be transgender (see page 8 of the EEOC's Response where the EEOC states that "Thus, the EEOC's complaint states a claim of sex discrimination under Title VII <u>because Stephens is transgender</u> and RGGR fired her for <u>that</u> reason")(our emphasis), fails to state a claim upon which relief can be granted.

## II.     Adverse Employment Action Against An Employee Because The Employee Is Transitioning From Male To Female Is Not Sex Discrimination Under Title VII.

The EEOC also contends that an employer's adverse employment action against a transgendered employee – because the employee is purportedly transitioning from male to female – constitutes illegal "sex" discrimination under Title VII. But that contention must also fail.

It must fail because referring to a transgendered person as "transitioning from male to female" can only mean an individual *is* transgendered; there is no articulable difference between perceived "identity" and where a person is in the process of acting upon their perception. Simply

3

put, transitioning from male to female or from female to male is inseparable from being transgendered.

Notably the EEOC does not define what "transitioning from male to female" means. Does it mean just wearing female clothing? Does it mean wearing female clothing and makeup? Does it necessitate hormone treatments? Does it mean surgery – and, if so, to what degree? As previously argued in this Motion – claiming an employer may lawfully discriminate against an employee on account of the employee's gender identity disorder, *per se*, but not on account of the *expression* of that disorder is, literally, nonsense. "Gender identity" and the expression of the disorder are synonymous, and the EEOC grassed that smoke when it attempts some distinction.

Indeed, the EEOC admits as much when it states, on page 7 of its Response, that "'[a] person is identified as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." Therefore, arguing that *being* a transgendered person is not protected under Title VII, but that *expressing* that identity is protected, is a contradiction in terms. The self-contradiction is easily demonstrated: In what factual circumstance could an employer demonstrate that an employee was terminated for being transgender, without reference to the transgendered employee's physical presentation of being transgendered? The answer, of course, is that one cannot conceive of any such circumstance – at least in the real world.

The EEOC relies heavily upon the case of *Glenn v. Brumby, 663 F.3d 1312* (11th Cir. 2011). However, *Glenn v. Brumby* is easily distinguished from the case at bar because *Brumby* was brought pursuant to 42 U.S.C. §1983 (2006) for alleged violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and not Title VII. Consequently, *Glenn v. Brumby* did not and could not have authoritatively addressed whether adverse employment action taken against a transgendered employee constituted

4

discrimination based on sex *under Title VII*. Indeed, this very distinction was recognized in *Equal Employment Opportunity Commission v. The McPherson Companies, Inc., 914 F.Supp.2d 1234, 1243 (N.D. Ga. 2012)* where the court distinguished *Brumby* from the Title VII sex discrimination case before it on the ground that, among other things, *Brumby* was not brought under Title VII, but rather ". . . under an entirely different federal statute with different essential elements."). Therefore, the *Brumby* case is inapplicable to the case here.

The EEOC's claim that an adverse employment action against an employee may be maintained under this authority finds no support; indeed, any action claiming that transitioning from male to female is sex discrimination under Title VII must fail.

### III.     Adverse Actions Motivated By Sex Stereotyping In The Transgender Context Are Not Prohibited by Title VII.

The Funeral Home does not contest that *Price Waterhouse* held that sexual stereotyping can constitute a form of "sex" discrimination under Title VII. That is not in dispute. The EEOC's overreach and consequent error is distorting "sexual stereotyping" into whatever it wishes that term to mean, and applying it to "gender identity" with all the predictable contradictions from that forced engineering.

Even the EEOC must concede that *Price Waterhouse* was not a gender identity case. It was, rather, a case of a *woman*, claiming to be a *woman*, and presenting herself as a *woman*, who was terminated on account of her employer's opinion that – as a *woman* – she was not complying with sexual stereotypes as to how *women* should dress and behave. Nor did *Price Waterhouse* involve any allegation that – as is the case here – the employee was not complying with the

5

employer's reasonable sex-specific dress code. *Price Waterhouse* would be analogous to this case only if – the *Price Waterhouse* employee was a *woman*, claiming to be a *man* and presenting herself as a *man*, refusing to comply with the employer's *female* dress code. This is a critical distinction, and consistent with what Congress intended to include (or not include) in protected classes under Title VII.

And that is where those courts that have applied *Price Waterhouse* to the transgender context have gone astray. They have applied the *Price Waterhouse* holding to a factual context significantly different from the factual context of the *Price Waterhouse* case; for which the *Price Waterhouse* principle was never intended; and in which the application leads to absurd results, as it does if applied here.

The EEOC claims that Anthony's discharge was "*due to my* [Anthony's] *sex and gender identity, <u>female</u>, in violation of Title VII of the Civil Rights Act of 1964*" (our emphasis). The EEOC consistently asserts throughout its pleadings that Anthony is a *woman*, while at the same time asserting, as the basis of its sexual stereotyping claim, that Anthony - existentially a woman - was fired for presenting as a *woman*. But if Anthony is existentially a woman, then Anthony could not have been illegally discriminated against for having *comported* with sexual stereotypes attributed to women, because the sexual stereotyping theory only applies to a member of one sex *not* complying with the stereotypes associated with that sex.

So, here, Anthony – who, according to the EEOC's own pleadings, is a woman – could only, under a sexual stereotyping theory, have been illegally discriminated against if Anthony was discriminated against for not comporting with *female* sexual stereotypes. But the EEOC claims that Anthony was illegally discriminated against – not for having failed to comport with female stereotypes, but rather – for having comported with female stereotypes. This absurd

6

outcome and obvious dilemma for the EEOC cannot be what the Supreme Court had in mind when it decided *Price Waterhouse*. It also demonstrates why the EEOC's Complaint fails to state a claim upon which relief can be granted.

The EEOC does not provide any evidence (nor can it) that transgender persons are a protected class under Title VII. Plaintiff would have this court believe that the lack of congressional intent and specific statutory language somehow creates a cause of action to exist out of thin air. And the insinuation that Congress may have failed to enact ENDA these past few decades because it knew transgender protections *already existed* under "sex" needs no further refutation beyond stating the argument. It is well-publicized and the topic of frequent political debate that Congress has specifically refused to "add" sexual orientation or gender identity, per se, as protected classes under Title VII. Despite extraordinary effort, Plaintiff cannot conjure up statutory protection that has never existed.

In a case just decided since defendant filed its motion to dismiss, a United States District Court for the Western district of Texas came to a similar conclusion. In *Eure v. Sage Corp., 2014 US Dist. Lexis 16151* (Attached), the court expressly rejected plaintiff's transgender claim as a sex discrimination claim under Title VII.

## CONCLUSION

For the foregoing reasons, Defendant R.G. & G.R. Harris Funeral Homes, Inc. respectfully requests that the Court grant its Motion to Dismiss, and dismiss the Complaint with prejudice.

**JOEL J. KIRKPATRICK, P.C.**

*/s/ Joel J. Kirkpatrick*
Joel J. Kirkpatrick
Attorney for Appellant
843 Penniman Ave. Suite 201

7

                                                Plymouth, MI  48170
                                                (734) 404 – 5710
                                                (866) 241-4152 FAX
                                                joel@joelkirkpatrick.com

Dated: December 23, 2014

## **CERTIFICATE OF SERVICE**

I certify that on December 23, 2014, a copy of the above *Defendant R.G.&G.R. Harris Funeral Homes, Inc.'s Reply To Plaintiff's Response To Defendant's Motion To Dismiss* was filed electronically via the ECF filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/*s/ Joel J. Kirkpatrick*

**JOEL J. KIRKPATRICK**