UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Equal Employment Opportunity Commission,

      Plaintiff,

v.                                                                    Case No. 14-13710

R.G. & G.R. Harris Funeral Homes, Inc.,              Sean F. Cox
                                                                      United States District Court Judge

      Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO DISMISS**

     The United States Equal Employment Opportunity Commission (the "EEOC") brought this employment discrimination action against R.G. & G.R. Harris Funeral Home, Inc. ("the Funeral Home") asserting two claims against the Funeral Home. First, it asserts a Title VII claim on behalf of the Funeral Home's former Funeral Director/Embalmer Stephens, who is transgender and is transitioning from male to female. The EEOC asserts that the Funeral Home's decision to fire Stephens was motivated by sex-based considerations, in that the Funeral Home fired Stephens because Stephens is transgender, because of Stephens's transition from male to female, and/or because Stephens did not conform to the defendant employer's sex- or gender-based preferences, expectations, or stereotypes. Second, the EEOC asserts that the Funeral Home engaged in an unlawful employment practice in violation of Title VII by providing a clothing allowance/work clothes to male employees but failing to provide such assistance to female employees because of sex. This second claim appears to be brought on behalf of an unidentified class of female employees of the Funeral Home.

1

The Funeral Home filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  The parties fully briefed the issues and the Court heard oral argument on April 16, 2015.  For the reasons that follow, the Court shall DENY the Funeral Home's Motion to Dismiss.

The pending motion does not challenge the EEOC's claim based on the alleged disparate treatment in relation to a clothing allowance and, therefore, that claim remains.

This Court also concludes that the EEOC's complaint states a Title VII claim against the Funeral Home on behalf of Stephens.  As explained below, transgender status is not a protected class under Title VII.  Thus, if the EEOC's complaint had alleged that the Funeral Home fired Stephens based solely upon Stephens's status as a transgender person, then this Court would agree with the Funeral Home that the EEOC's complaint fails to state a claim under Title VII.  But the EEOC's complaint also asserts that the Funeral Home fired Stephens "because Stephens did not conform to the [Funeral Home's] sex- or gender-based preferences, expectations, or stereotypes."  (Compl. at ¶ 15).  And binding Sixth Circuit precedent establishes that any person  without regard to labels such as transgender  can assert a sex-stereotyping gender-discrimination claim under Title VII, under a *Price Waterhouse* theory, if that person's failure to conform to sex stereotypes was the driving force behind the termination.  This Court therefore concludes that the EEOC's complaint states a claim as to Stephens's termination.

Finally, the remaining arguments in the Funeral Home's motion are without merit or are improperly raised in a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

On September 25, 2014, the EEOC filed this action against the Funeral Home.  The EEOC's complaint describes the nature of this action as follows:

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Amiee Stephens who was adversely affected by such practices. As alleged with greater particularity in paragraphs 8 through 16 below, Defendant R.G. & G.R. Harris Funeral Home, Inc., fired Stephens, a transgender woman, because of sex. Additionally, as alleged in paragraphs 12 and 17 below, Defendant discriminated against female employees by not providing them work clothing while providing work clothing to male employees.

(Compl. at 1). The EEOC.'s complaint alleges as follows in its "Statement of Facts" section:

8. Amiee Stephens had been employed by Defendant as a Funeral Director/Embalmer since October 2007.

9. Stephens adequately performed the duties of her position.

10. Stephens is a transgender woman. On or about July 31, 2013, Stephens informed Defendant Employer and her co-workers in a letter that she was undergoing a gender transition from male to female and intended to dress in appropriate business attire at work as a woman from then on, asking for their support and understanding.

11. On or about August 15, 2013, Defendant Employer's owner fired Stephens, telling her that what she was "proposing to do" was unacceptable.

12. Since at least September 13, 2011, the Defendant Employer has provided a clothing allowance to male employees but not female employees. Defendant Employer provides work clothes to male employees but provides no such assistance to female employees.

(*Id*. at 3-4). The EEOC's complaint alleges as follows in its "Statement of Claims" section:

13. Paragraphs 8 through 12 are fully incorporated herein.

14. Defendant engaged in unlawful employment practices at its Garden City, Michigan facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by terminating Stephens because of sex.

15. Defendant Employer's decision to fire Stephens was motivated by sex-based considerations. Specifically, *Defendant Employer fired Stephens because Stephens is transgender*, because of Stephens's transition from male to female, *and/or because Stephens did not conform to the Defendant Employer's sex- or gender-based preferences, expectations, or stereotypes.*

3

16.     The effect of the practices complained of in paragraphs 8 through 11 and 14 through 15 above has been to deprive Stephens of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

17.     Defendant engaged in unlawful employment practices at its Garden City, Michigan facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by providing a clothing allowance/work clothes to male employees but failing to provide such assistance to female employees because of sex.

18.     The effect of the practices complained of in paragraphs 12 and 17 above has been to deprive a class of female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

19.     The unlawful employment practices complained of in paragraphs 8 through 18 above were intentional.

20.     The unlawful employment practices complained of in paragraphs 8 through 18 above were done with malice or with reckless indifference to the federally protected rights of Stephens and a class of female employees.

(*Id*. at 4-5) (emphasis added).  The prayer for relief in the EEOC's complaint states as follows:

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any unlawful practice which discriminates against an employee or applicant because of their sex, including on the basis of gender identity.

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities regardless of sex (including gender identity), and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant Employer to make Stephens whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay for Stephens.

4

D.  Order Defendant Employer to make Stephens and a class of female employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 8 through 18 above, including medical losses, job search expenses, and lost clothing allowances, in amounts to be determined at trial.

E.  Order Defendant Employer to make Stephens and a class of female employees whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 8 through 18 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendant Employer to pay Stephens and a class of female employees punitive damages for its malicious or recklessly indifferent conduct described in paragraphs 8 through 18 above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

(*Id*. at 6-8).

On November 19, 2014, the Funeral Home filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). The motion has been fully briefed and the Court heard oral argument on April 16, 2015.

## STANDARD OF DECISION

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ*., 428 F.3d 223, 228 (6th Cir. 2005). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).

## ANALYSIS

**I.      The Funeral Home's Motion Does Not Challenge The EEOC's Claims Based On The Alleged Disparate Treatment In Relation To Clothing Allowances For Male And Female Employees.**

The EEOC's complaint in this action asserts two different types of claims against the Funeral Home.

First, the EEOC asserts that the Funeral Home's decision to fire Stephens was motivated by sex-based considerations, in that the Funeral Home fired Stephens because Stephens is transgender, because of Stephens's transition from male to female, and/or because Stephens did not conform to the Defendant Employer's sex- or gender-based preferences, expectations, or stereotypes.

Second, the EEOC asserts that the Funeral Home engaged in an unlawful employment practice in violation of Title VII by "providing a clothing allowance/work clothes to male employees but failing to provide such assistance to female employees because of sex." (Compl. at ¶ 17). This second type of claim appears to be brought on behalf of an unidentified class of female employees of the Funeral Home.

Although the Funeral Home's motion is titled a "Motion to Dismiss" and asks the Court to dismiss the EEOC's "complaint," (Def.'s Motion at 1), the motion does not include any challenges to the EEOC's second claim. As such, that claim would remain even if the Court found the Funeral Home's challenges to the first claim to have merit.

**II.     The EEOC's Complaint States A Title VII Claim Against The Funeral Home On Behalf Of Stephens.**

6

Again, as to its first claim, the EEOC asserts that the Funeral Home's decision to fire Stephens was motivated by sex-based considerations, in that the Funeral Home fired Stephens because Stephens is transgender, because of Stephens's transition from male to female, and/or because Stephens did not conform to the Defendant Employer's sex- or gender-based preferences, expectations, or stereotypes.

**A.     Transgender Status Is Not A Protected Class Under Title VII.**

If the EEOC's complaint had alleged that the Funeral Home fired Stephens based solely upon Stephens's status as a transgender person, then this Court would agree with the Funeral Home that the EEOC's complaint would fail to state a claim under Title VII.  That is because, like sexual orientation, transgender or transsexual status is currently not a protected class under Title VII.  *See, e.g.*, *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (Stating that "sexual orientation is not a prohibited basis for discriminatory acts under Title VII."); *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007) (Concluding that "transsexuals are not a protected class under Title VII", rejecting the plaintiff's argument for "a more expansive interpretation of sex that would include transsexuals as a protected class," and noting that "[e]ven the Sixth Circuit, which extended protection to transsexuals under the *Price Waterhouse* theory"   "explained that an individual's status as a transsexual should be irrelevant to the availability of Title VII protection.").

But the EEOC's complaint does not allege that the Funeral Home fired Stephens based solely upon Stephens's status as a transgender person.  The EEOC's complaint also asserts that the Funeral Home fired Stephens "because Stephens did not conform to the [Funeral Home's] sex- or gender-based preferences, expectations, or stereotypes."  (Compl. at ¶ 15).

7

In its brief, however, the EEOC appears to seek a more expansive interpretation of sex under Title VII that would include transgender persons as a protected class.  (Pl.'s Br. at 8) (Arguing that the EEOC's "complaint states a claim of sex discrimination under Title VII because Stephens is transgender and [the Funeral Home] fired her for that reason.").  There is no Sixth Circuit or Supreme Court authority to support the EEOC's position that transgender status is a protected class under Title VII.

> **B.     A Transgender Person – Just Like Anyone Else – Can Bring A Sex Stereo-Typing Gender-Discrimination Claim Under Title VII.**

Even though transgender/transsexual status is currently not a protected class under Title VII, Title VII nevertheless "protects transsexual persons from discrimination for failing to act in accordance and/or identify with their perceived sex or gender.*" Myers v. Cuyahoga Cnty, Ohio*, 183 F. A'ppx 510, (6th Cir. 2006) (Citing *Smith v. City Of Salem*, 378 F.3d 566 (6th Cir. 2004) and *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005)).

The seminal Sixth Circuit case on this issue is *Smith v. City of Salem*. The plaintiff in *Smith* was born a male and had been employed by the Salem Fire Department for seven years without any negative incidents.  After being diagnosed with Gender Identity Disorder, Smith began expressing a more feminine appearance on a full-time basis, including while at work. *Smith,* 378 F.3d at 568.  Smith's co-workers began questioning him about his appearance and commenting that his appearance and mannerisms were not "masculine enough." *Id*.  Smith then advised his supervisor about his Gender Identity Disorder diagnosis and informed him that his treatment would eventually include "complete physical transformation from male to female." *Id*. The news was not well-received by Smith's employer.  Smith's superiors met to devise a plan to terminate Smith, which included requiring him to undergo three separate psychological

8

evaluations in the hope that he would quit.

Smith ultimately filed suit and his claims against the city included a Title VII claim of sex stereotyping, in violation of the Supreme Court's pronouncements in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The district court dismissed Smith's sex-stereotyping claim under Title VII but the Sixth Circuit reversed.

The Sixth Circuit began its analysis by looking at the Supreme Court's decision in *Price Waterhouse*:

> In *Price Waterhouse*, the plaintiff, a female senior manager in an accounting firm, was denied partnership in the firm, in part, because she was considered "macho." 490 U.S. at 235, 109 S.Ct. 1775. She was advised that she could improve her chances for partnership if she were to take "a course at charm school," "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* (internal quotation marks omitted). Six members of the Court agreed that such comments bespoke gender discrimination, holding that Title VII barred not just discrimination because Hopkins was a woman, but also sex stereotyping   that is, discrimination because she failed to act like a woman. *Id.* at 250 51, 109 S.Ct. 1775 (plurality opinion of four Justices); *id*. at 258 61, 109 S.Ct. 1775 (White, J., concurring); *id*. at 272 73, 109 S.Ct. 1775 (O'Connor, J., concurring) (accepting plurality's sex stereotyping analysis and characterizing the "failure to conform to [gender] stereotypes" as a discriminatory criterion; concurring separately to clarify the separate issues of causation and allocation of the burden of proof).

*Smith,* 378 F.3d at 571-72. The *Smith* court further explained that:

> The Supreme Court made clear that in the context of Title VII, discrimination because of "sex" includes gender discrimination: "In the context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Price Waterhouse*, 490 U.S. at 250, 109 S.Ct. 1775. The Court emphasized that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." *Id*. at 251, 109 S.Ct. 1775.

*Id.* The *Smith* court concluded that Smith had stated a Title VII claim for relief, pursuant to *Price Waterhouse's* prohibition of sex stereotyping, based on his gender non-conforming

behavior and appearance.  The court noted that:

> His complaint sets forth the conduct and mannerisms which, he alleges, did not conform with his employers' and co-workers' sex stereotypes of how a man should look and behave. Smith's complaint states that, after being diagnosed with GID, he began to express a more feminine appearance and manner on a regular basis, including at work. The complaint states that his co-workers began commenting on his appearance and mannerisms as not being masculine enough; and that his supervisors at the Fire Department and other municipal agents knew about this allegedly unmasculine conduct and appearance. The complaint then describes a high-level meeting among Smith's supervisors and other municipal officials regarding his employment. Defendants allegedly schemed to compel Smith's resignation by forcing him to undergo multiple psychological evaluations of his gender non-conforming behavior. The complaint makes clear that these meetings took place soon after Smith assumed a more feminine appearance and manner and after his conversation about this with Eastek. In addition, the complaint alleges that Smith was suspended for twenty-four hours for allegedly violating an unenacted municipal policy, and that the suspension was ordered in retaliation for his pursuing legal remedies after he had been informed about Defendants' plan to intimidate him into resigning. In short, Smith claims that the discrimination he experienced was based on his failure to conform to sex stereotypes by expressing less masculine, and more feminine mannerisms and appearance.

*Id.* at 572.

The *Smith* court explained that "[h]aving alleged that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind Defendants' actions, Smith has sufficiently pleaded claims of sex stereotyping and gender discrimination."  *Id.*

The *Smith* court went on to explain that the district court erred in relying on "a series of *pre-Price Waterhouse* cases from other federal appellate courts holding that transsexuals, as a class, are not entitled to Title VII protection because 'Congress had a narrow view of sex in mind' and 'never considered nor intended that [Title VII] apply to anything other than the traditional concept of sex.'" *Id.* (citations omitted).  In that "earlier jurisprudence, male-to-

female transsexuals (who were the plaintiffs in *Ulane*, *Sommers*, and *Holloway*)    as biological

males whose outward behavior and emotional identity did not conform to socially-prescribed

expectations of masculinity    were denied Title VII protection by courts because they were

considered victims of 'gender' rather than 'sex' discrimination." *Smith*, 378 F.3d at 573.

The *Smith* court held that the approach in those cases, and the district court's position

below, "has been eviscerated[1] by *Price Waterhouse*." *Id.* "By holding that Title VII protected a

woman who failed to conform to social expectations concerning how a woman should look and

behave, the Supreme Court established that Title VII's reference to 'sex' encompasses both the

biological differences between men and women, and gender discrimination, that is,

discrimination based on a failure to conform to stereotypical gender norms. *See Price*

*Waterhouse*, 490 U.S. at 251, 109 S.Ct. 1775." *Id.*

Thus, "[a]fter *Price Waterhouse*, an employer who discriminates against women because,

for instance, they do not wear dresses or makeup, is engaging in sex discrimination because the

discrimination would not occur but for the victim's sex. *It follows that employers who*

*discriminate against men because they do wear dresses and makeup, or otherwise act*

*femininely, are also engaging in sex discrimination*, because the discrimination would not occur

but for the victim's sex." *Smith*, 378 F.3d at 574 (emphasis added).

The Sixth Circuit then rejected the position that, because a person is transgender, that

person is somehow less worthy of protection under Title VII as to a sex-stereotyping claim:

> Yet some courts have held that this latter form of discrimination is of a
> different and somehow more permissible kind. For instance, the man who acts in

---

[1]Notably, the Funeral Home's motion and brief rely on some of the very same cases that
the Sixth Circuit stated were eviscerated by *Price Waterhouse*.

11

ways typically associated with women is not described as engaging in the same activity as a woman who acts in ways typically associated with women, but is instead described as engaging in the different activity of being a transsexual (or in some instances, a homosexual or transvestite). Discrimination against the transsexual is then found not to be discrimination "because of ... sex," but rather, discrimination against the plaintiff's unprotected status or mode of self-identification. In other words, these courts superimpose classifications such as "transsexual" on a plaintiff, and then legitimize discrimination based on the plaintiff's gender non-conformity by formalizing the non-conformity into an ostensibly unprotected classification. *See, e.g., Dillon v. Frank*, No. 90 2290, 1992 WL 5436 (6th Cir. Jan.15, 1992).

Such was the case here: despite the fact that Smith alleges that Defendants' discrimination was motivated by his appearance and mannerisms, which Defendants felt were inappropriate for his perceived sex, the district court expressly declined to discuss the applicability of *Price Waterhouse*. The district court therefore gave insufficient consideration to Smith's well-pleaded claims concerning his contra-gender behavior, but rather accounted for that behavior only insofar as it confirmed for the court Smith's status as a transsexual, which the district court held precluded Smith from Title VII protection.

Such analyses cannot be reconciled with *Price Waterhouse*, which does not make Title VII protection against sex stereotyping conditional or provide any reason to exclude Title VII coverage for non sex-stereotypical behavior simply because the person is a transsexual. As such, discrimination against a plaintiff who is a transsexual   and therefore fails to act and/or identify with his or her gender   is no different from the discrimination directed against Ann Hopkins in *Price Waterhouse*, who, in sex-stereotypical terms, did not act like a woman. Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as "transsexual," is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity.

*Smith*, 378 F.3d at 574-75. "Accordingly, we hold that Smith has stated a claim for relief pursuant to Title VII's prohibition of sex discrimination." *Id.*

In *Barnes v. City of Cincinnati*, the Sixth Circuit concluded that the transsexual plaintiff in that case had also sufficiently pleaded a Title VII sex discrimination claim under a *Price Waterhouse* theory. *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005). The plaintiff in that case, Barnes, was employed by the Cincinnati Police Department. Barnes "was a male-to-female transsexual who was living as a male while on duty but often lived as a woman off duty.

Barnes had a reputation throughout the police department as a homosexual, bisexual or cross-dresser." *Id.* at 733.

Following a promotion to sergeant, Barnes was assigned to District One for a probationary period. During that probationary period, Barnes "was living off-duty as a woman, had a French manicure, had arched eyebrows and came to work with makeup or lipstick on his face on some occasions." *Id*. at 734.

After Barnes was demoted from sergeant, he filed suit and asserted a claim under Title VII. After a jury verdict in Barnes's favor, the City appealed. Among other things, the City asserted that Barnes did not sufficiently plead or prove a sex discrimination claim under Title VII. The Sixth Circuit rejected that argument, explaining as follows:

> In this case, Barnes claims that the City intentionally discriminated against him because of his failure to conform to sex stereotypes. The City claims that Barnes failed to establish the first and the fourth elements of a prima facie case, because he was not a member of a protected class and he failed to identify a similarly situated employee who passed probation.
>
> *Smith v. City of Salem*, Ohio, 378 F.3d 566 (6th Cir. 2004), instructs that the City's claim that Barnes was not a member of a protected class lacks merit. In *Smith*, this court held that the district court erred in granting a motion to dismiss by holding that transsexuals, as a class, are not entitled to Title VII protections, stating:
>
> > Sex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination, irrespective of the cause of that behavior; a label, such as "transsexual," is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity.
>
> *Id*. at 575. By alleging that his failure to conform to sex stereotypes concerning how a man should look and behave was the driving force behind defendant's actions, Smith stated a claim for relief pursuant to Title VII's prohibition of sex discrimination. *Id*. at 573, 575. Following the holding in *Smith*, Barnes established that he was a member of a protected class by alleging discrimination against the City for his failure to conform to sex stereotypes.

*Barnes,* 401 F.3d at 737.

Accordingly, *Smith* and *Barnes* establish that a transgender person   just like anyone else   can bring a sex-stereotyping gender-discrimination claim under Title VII under a *Price Waterhouse* theory.

Here, the EEOC's complaint alleges that Stephens informed the Funeral Home that Stephens "was undergoing a gender transition from male to female and intended to dress in appropriate business attire at work as a woman from then on," and that the Funeral Home responded by firing Stephens and stating that what Stephens "was 'proposing to do' was unacceptable." (Compl. at ¶¶ 10 & 11.) The complaint further alleges that the Funeral Home's "decision to fire Stephens was motivated by sex-based considerations," and that the Funeral Home fired Stephens because Stephens "did not conform to the [Funeral Home's] sex- or gender-based preferences, expectations, or stereotypes." (Compl. at ¶ 15).

This Court concludes that, having alleged that Stephens's failure to conform to sex stereotypes was the driving force behind the Funeral Home's decision to fire Stephens, the EEOC has sufficiently pleaded a sex-stereotyping gender-discrimination claim under Title VII.

### C.    The Funeral Home's Remaining Arguments Are Without Merit Or Are Improperly Raised In A Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6).

The Funeral Home's Motion to Dismiss makes numerous arguments. As stated above, this Court concludes that the EEOC has sufficiently pleaded a Title VII claim on behalf of Stephens. Below, the Court addresses challenges made by the Funeral Home that are not encompassed in the above analysis.

### 1.    The Funeral Home's "Gender Identity Disorder" Arguments Are Irrelevant.

14

In the pending motion, the Funeral Home asserts that "[t]o the extent the EEOC's claim is that [Stephens] was terminated due to his gender identity disorder, the claim must be dismissed." (Def.'s Br. at 11). In making this argument, the Funeral Home also asserts that Gender Identity Disorder is not a protected class under Title VII. (*Id*. at 3).

The EEOC's complaint never uses the term Gender Identity Disorder; nor does it assert that Gender Identity Disorder is a protected class under Title VII. Moreover, to the extent that the EEOC asks this Court to rule that transgender status is a protected class under Title VII, this Court declines to do so, as set forth in Section II. A. of this Opinion.

### 2.     The Court Rejects The Funeral Home's *Ultra Vires* Arguments.

The Funeral Home also asserts that "Title VII does not extend its protections to 'gender identity disorder'" and then takes the position that the EEOC's prosecution of this case is an *ultra vires* act. The Court rejects this argument. As stated above, the Court concludes that, having alleged that Stephens's failure to conform to sex stereotypes was the driving force behind the Funeral Home's decision to fire Stephens, the EEOC has sufficiently pleaded a sex-stereotyping gender-discrimination claim under Title VII.

### 3.     The Funeral Home's Defenses Based Upon Its Enforcement Of An Alleged Dress Code Are Not Properly Before The Court On A Motion Brought Under Fed. R. Civ. P. 12(b)(6).

In its motion, the Funeral Home also asserts that "the Complainant [Stephens] was terminated for refusing to comply with the employer's dress and grooming code" and therefore the claim fails. (Def.'s Br. at 19). It then cites cases that involved plaintiffs who filed suit alleging that their employer's dress codes violated Title VII.

Here, however, the EEOC's complaint does not assert any claims based upon a dress

15

code and it does not contain any allegations as to a dress code at the Funeral Home.

To the extent that the Funeral Home seeks to proffer a defense to the Title VII claim asserted on behalf of Stephen based upon its alleged dress code, this Court agrees with the EEOC that such a defense has no place in the context of a motion brought pursuant to Fed. R. Civ. P. 12(b)(6):

> Essentially, Defendant is injecting a defense into a 12(b)(6) motion and asking the court to accept the defense as true in order to find the complaint legally deficient.  This is not the proper use of a motion to challenge a complaint.  As noted above, a 12(b)(6) motion is not a vehicle "to resolv[e] . . . the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). Instead, Rule 12(b)(6) by its terms provides for a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."

(Pl.'s Br. at 14).[2]

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  April 21, 2015

---

[2]The Court also notes that although the Funeral Home makes assertions as to it having a dress code, and assertions as to what it entails (*see* Def.'s Br. at 6-7), the Funeral Home did not submit any evidence as to its purported dress code.  Thus, even if the Court wished to convert this motion to dismiss into a summary judgment motion, under Fed. R. Civ. P. 12(d), and consider matters outside of the pleadings, there would be no basis for it to do so here.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Equal Employment Opportunity Commission,

       Plaintiff,

v.                                                                                    Case No. 14-13710

R.G. & G.R. Harris Funeral Homes, Inc.,                Sean F. Cox
                                                                              United States District Court Judge
       Defendant.
_____/

PROOF OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record

on April 21, 2015, by electronic and/or ordinary mail.

                         S/Jennifer McCoy_____
                         Case Manager

17