IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 2:14-CV-13710 |
| v. | ) ) | Hon. Sean F. Cox Magistrate Judge |
| R.G. & G.R. HARRIS FUNERAL HOMES, INC., | ) ) ) | David R. Grand |
| Defendant. | ) ) | |

## Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, the Plaintiff Equal Employment Opportunity Commission moves for summary judgment on the grounds that there is no material factual dispute that the Defendant discharged Aimee Stephens because of sex.

The Commission further states neither the First Amendment to the Constitution nor the Religious Freedom Restoration Act authorizes the discharge of employees on the basis of sex, thus Defendant's affirmative defenses must fail as a matter of law.

Finally, the Commission states that there is no material factual dispute with respect to Defendant's clothing allowance, which provided

free clothing benefits to male employees and nothing to females until October 2014. Since that time, Defendant has provided stipends to women which are less than the value of the benefit provided to men. Both fringe-benefit policies constitute sex discrimination in violation of Title VII.

The Commission respectfully directs the Court to the attached memorandum for the arguments supporting this Motion.

The Commission sought concurrence in this motion from defense counsel on February 1, 2016 and said concurrence was denied.

Wherefore, the Commission respectfully moves for summary judgment in its favor.

Respectfully submitted,

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

s/ Miles Shultz
MILES SHULTZ (P73555)
Trial Attorney

s/ Katie Linehan
KATIE LINHAN (P77974)
Trial Attorney

Dated: April 7, 2016          s/ Dale Price
DALE PRICE (P55578)
Trial Attorney

DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
Dale.Price@EEOC.GOV
Tel. No. (313) 226-7808
Fax No. (313) 226-6584

3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 2:14-CV-13710 |
| v. | ) ) | Hon. Sean F. Cox Magistrate Judge |
| R.G. & G.R. HARRIS FUNERAL HOMES, INC., | ) ) ) | David R. Grand |
| Defendant. | ) | |

**Memorandum in Support of Plaintiff EEOC's
Motion for Summary Judgment**

# Table of Contents

Statement of the Issues...............................................................iv

Table of Authorities .................................................................ix

Controlling Authority................................................................ix

Index of Exhibits .....................................................................x

I. Introduction .........................................................................1

    A.   Overview of the Case. ...................................................1

    B.   The Affirmative Defenses ..............................................2

    C.   Thomas Rost Limits His Religious Exercise. ...................4

    D.   RGGR does not operate as a religious enterprise. .........5

    E.   Rost's religious beliefs about men and women motivated him to fire Stephens. ..............................................................8

    F.   Defendant's Clothing-Allowance Policy......................10

II. Relevant Law........................................................................12

    A.   Rule 56 Standard ........................................................12

    B.   First Amendment Free Exercise Standard ..................13

    C.   RFRA Standard...........................................................14

III. Arguments ...................................................................... 15

    A.   The Commission Has Not Violated Defendant's Free- Exercise rights. ......................................................... 15

    B.   Defendant's RFRA defense should be rejected. ........................... 17

      1. The Commission does not contest Defendant's religious sincerity. ................................................................. 17

      2. Defendant's Religious Exercise at RGGR is Not Affected by Title VII Enforcement. ......................................................... 18

      3. Enforcement of Title VII does not substantially burden Defendant. ................................................................ 21

      4. Enforcement of Title VII here furthers a compelling governmental interest in eradicating sex discrimination and is precisely tailored to further that interest. ............................................. 24

    C.   Summary Judgment as to liability for Stephens's gender-motivated termination is warranted. ........................... 26

    D.   Defendant's Clothing-Allowance Policy Constitutes Sex-Based Discrimination. ......................................................... 32

IV.     Conclusion ................................................................. 34

iii

## Statement of the Issues

1. Title VII is a neutral rule of general applicability which applies to businesses operated by non-religious and religious persons alike. Does the Commission's attempt to vindicate Aimee Stephens's Title VII rights violate Defendant's rights under the First Amendment Free Exercise Clause?

   The Commission answers "No."

2. The Religious Freedom Restoration Act prohibits the government from substantially burdening a sincere religious exercise unless such is done in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Defendant admits that it would not have had to change any of its religious practices if it had continued to employ Stephens, and has only asserted that Rost's beliefs have been impinged upon. Protection of the Title VII rights of employees is a compelling governmental interest, and Title VII is precisely tailored to further that interest. Does RFRA trump this enforcement action under Title VII?

   The Commission answers "No."

3. The Defendant's owner and sole decisionmaker has admitted that his decision to fire Aimee Stephens was motivated by his beliefs and attitudes about how men and women are supposed to act and present themselves. Are these testimonial admissions sufficient to warrant summary judgment in favor of the Commission as to liability for Aimee Stephens's termination?

   The Commission answers "Yes."

4. Until October 2014, Defendant provided a fringe benefit by which male employees were granted a clothing allowance of suits and ties free of charge, including free replacements as they wore out,

iv

whereas female employees were given nothing. The approximate value of a suit and tie is $235. Since October 2014, the female employees have been given annual stipends of either $75 or $150 depending upon whether they are part- or full-time, while the male employee benefit has remained the same. Do the pre- and post-October 2014 fringe benefit policies violate Title VII, warranting summary judgment in favor of the Commission?

The Commission answers "Yes."

# Table of Authorities

**Page(s)**

## Constitution

U.S. Const. amend. I ................................................................. 12, 23, 34

## Cases

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................ 12

*EEOC v. Preferred Mgmt. Corp.*,
   216 F. Supp. 2d 763 (S.D. Ind. 2002)................................ 16, 22, 23, 25

*EEOC v. Townley Engineering & Mfg. Co.*,
   859 F.2d 610 (9th Cir. 1988)............................................... 16

*Employment Division v. Smith*,
   494 U.S. 872 (1990)............................................................ 28, 29

*Fabian v. Hospital of Central Connecticut*,
   No. 3:12-cv-1154, __F. Supp. 3d __, 2016 WL 1089178 (D.
   Conn. March 18, 2016)........................................................ 28

*General Tel. Co. of the Northwest, Inc. v. EEOC*,
   446 U.S. 318 (1980)............................................................ 16

*Hansen v. Ann Arbor Pub. Schools*,
   293 F. Supp. 2d 780 (E.D. Mich. 2003)................................ 13

*Henderson v. Kennedy*,
   253 F.3d 12 (D.C.Cir.2001) ................................................ 19

*Hobby Lobby v. Sebelius*,
   723 F.3d 1114 (10th Cir. 2013), *aff'd sub nom Burwell v.
   Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ....................... 17, 24

vi

*Holt v. Hobbs*,
   135 S. Ct. 853 (2015).............................................................. 19

*Kaemmerling v. Lappin*,
   553 F.3d 669 (D.C. Cir. 2008) ............................................. 15

*Laffey v. Northwest Airlines, Inc.*,
   567 F.2d 429 (D.C. Cir. 1976) ............................................. 32

*Long v. Ringling Brothers-Barnum & Bailey Combined
   Shows*, 9 F.3d 340 (4th Cir. 1993) .................................. 32-33

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988).............................................................. 21

*McKnight v. MTC*,
   2015 WL 7730995 (N.D. Tex. Nov. 9, 2015) ................ 19, 20

*Michigan Cath. Conf. v. Burwell*,
   807 F.3d 738 (6th Cir. 2015) (*Burwell II*).................... 14, 21

*Michigan Catholic Conf. v. Burwell*,
   755 F.3d 372 (6th Cir. 2014), vacated and remanded, 135
   S. Ct. 1914................................................... 14, 15, 21, 24

*Mt. Elliott Cemetery Ass'n. v City of Troy*,
   171 F.3d 398 (6th Cir. 1999).............................................. 13

*Myers v. Cuyahoga Cty.*,
   182 Fed. Appx. 510 (6th Cir. 2006).................................. 27

*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998)................................................................ 27

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989)................................................. 27, 28, 29

*Sims v. Memphis Processors, Inc.*,
   926 F.2d 524 (6th Cir. 1991)............................................. 12

vii

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004)..................................................27, 28, 29

*Thomas v. Review Bd. of Ind. Employment Sec. Div.*,
    450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) ........................19

*Estate of Thornton v. Caldor, Inc.*,
    472 U.S. 703 (1985)...............................................................................22

*Wexler v. White's Fine Furniture, Inc.*,
    317 F.3d 564 (6th Cir. 2003)..................................................................26

*Wilson v. James*,
    __F. Supp. 3d__, 2015 WL 5952109 (D.D.C. 2015) ......................18, 19

## Statutes

42 U.S.C. § 2000bb–1(a), (b)............................................................14, 18

42 U.S.C. § 2000e–1(a) ...........................................................................16

42 U.S.C. § 2000e-2(a)(1).......................................................................32

## Regulations

29 C.F.R. §1604.9(a)–(b).........................................................................32

## Rules

Fed. R. Civ. P. 56....................................................................................12

## Controlling Authority

*Employment Division v. Smith*, 494 U.S. 872 (1990).

*Burwell v. Hobby Lobby Stores, Inc.,* 134 S. Ct. 2751 (2014)

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004).

*Michigan Catholic Conf. v. Burwell*, 755 F.3d 372 (6th Cir. 2014),
        vacated and remanded, 135 S. Ct. 1914; affirmed after remand, 807
        F.3d 738 (6th Cir. 2015).

*Mt. Elliott Cemetery Ass'n. v City of Troy*, 171 F.3d 398 (6th Cir. 1999).

*Hansen v. Ann Arbor Pub. Schools*, 293 F. Supp. 2d 780 (E.D. Mich.
2003).

# Index of Exhibits

Exhibit A, Stephens Letter

Exhibit B, Rost 30(b)(6) Dep.

Exhibit C, Notice of 30(b)(6) Dep.

Exhibit D, Daily Bread Devotional

Exhibit E, Jesus card

Exhibit F, Shaffer Dep.

Exhibit G, RGGR Mission Statement

Exhibit H, Nemeth Dep.

Exhibit I, Kish Dep.

Exhibit J, Cash Dep.

Exhibit K, Crawford Dep.

Exhibit L, Matthew Rost Dep.

Exhibit M, McKie Dep.

Exhibit N, Kowalewski Dep.

Exhibit O, Rost Dep.

Exhibit P, Clothing Allowance Benefits Checks

Exhibit Q, Stephens Dep.

x

Exhibit R, Articles of Incorporation

Exhibit S, Dress Code

Exhibit T, Defendant's Responses to Plaintiff's First Set of Discovery
Requests

Case 1, *Fabian v. Hospital of Central Connecticut*, No. 3:12-cv-1154, __ F.
Supp. 3d __, 2016 WL 1089178 (D. Conn. March 18, 2016)

Case 2, *McKnight v. MTC*, 2015 WL 7730995 (N.D. Tex. Nov. 9, 2015)

Case 3, *Wilson v. James*, __ F. Supp. 3d __, 2015 WL 5952109 (D.D.C.
2015)

# I.   <u>INTRODUCTION</u>

## A.   Overview of the Case.

The Equal Employment Opportunity Commission brought this Title VII case alleging sex discrimination. The case stems from a Charge filed by Aimee Stephens, who is a transgender woman and served as a funeral director/embalmer for the Defendant for nearly six years under the name of Anthony Stephens. It is undisputed that Stephens was a capable, competent employee who was not fired for performance reasons.

The Commission's Complaint alleged, *inter alia*, that the Defendant discharged her because she did not conform to the Defendant's sex-based stereotypes. Despite being a good employee, she was fired after giving the Defendant's owner, Thomas Rost, a letter describing her life struggles with gender-identity issues and stating her intention to present at work as a woman in appropriate business attire. Ex. A, Stephens Letter.

Rost responded two weeks later by handing Stephens a severance agreement. Ex. B, Rost 30(b)(6) Dep. at 126:1-8. "[T]he specific reason" Rost fired Stephens was that Stephens was going to present as a female:

"he [Stephens] was no longer going to represent himself as a man. He wanted to dress as a woman." *Id.* at 135:24-136:1.

Given the testimonial admissions of Rost, there is no material dispute that Stephens was terminated because she did not conform to Rost's gender stereotypes, and summary judgment in favor of the Commission as to the termination claim is appropriate.

In addition, the Defendant has maintained a discriminatory clothing-allowance policy which until October 2014 provided suits and ties to male employees who interacted with the public and nothing to similarly situated females. Since October 2014, female employees have been given an annual stipend of either $75 or $150, but this is still inferior to that accorded to men, both in dollar value and in flexibility, as the men can replace suits as needed. Thus, summary judgment is also appropriate as to this issue.

**B.    The Affirmative Defenses**

After eight months of litigation—including a Motion to Dismiss and an initial Answer to the Complaint—Defendant injected new defenses. Only after the Commission filed an Amended Complaint, which merely

2

corrected the spelling of the Charging Party's first name, Defendant first asserted that its termination of Stephens was protected by the Free Exercise Clause of the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 ("RFRA"). *See* Dkt. 22, Answer to Amended Complaint, p. 5 (Affirmative Defenses 12-13).

Defendant admits it discharged Stephens because she did not conform to the masculine gender stereotypes that Rost expected of her. That is sex discrimination. Yet, Defendant asserts that its religious beliefs have been burdened by Aimee Stephens's Title VII right to not be subject to gender stereotypes in the workplace.

That argument misconstrues both the Free Exercise Clause and RFRA. Controlling Supreme Court precedent makes clear that the Free Exercise Clause does not excuse compliance with a neutral and generally applicable law such as Title VII. Moreover, Defendant has identified no religious *exercise* that is substantially burdened, as is required to invoke RFRA. Even if Defendant had done so, courts have consistently recognized that preventing employment discrimination is a compelling government interest, which also takes this matter outside of RFRA's

3

scope. Because there are no material facts in dispute, summary judgment in favor of the Commission is appropriate on Affirmative Defenses 12 and 13.

### C.   Thomas Rost Limits His Religious Exercise.

Thomas Rost owns 94.5% of the shares of Defendant and was the sole decision-maker who terminated Stephens's employment. Ex. B, Rost 30(b)(6) Dep. at 26:20-26:24; 117:23-118:6 . Rost testified as to Defendant's religion-based affirmative defenses. Ex. C, Notice of 30(b)(6) Deposition, and Ex. B at 6:14-10:3. Defendant's religious exercises are those of Rost. Ex. B at 29:1-7.

Rost is a Christian. *Id.* at 29:20-22. He attends two churches with some regularity. *Id.* at 29:25-30:1-6. However, the evidence shows that Rost's exercise of his religious beliefs at or through RGGR is limited to the placement of (1) "Daily Bread" devotional books and (2) cards bearing the name of Jesus with New Testament verses on the back.

> Can you think of any ways in which you
> 24        express your faith through Harris, R.G. G.R.
> 25        Harris; you exercise your faith using your
> 40: 1     business?
> 2    A    The only thing in a direct way is little things
> 3         that we leave out, we give away Daily Breads

```
4          which is a little daily devotional; it's a pick
5          up. We have a little card that people can pick
6          up.   That would be the only thing.
7    Q    Okay.   And this is just -- as they walk out
8          they can grab something like that?
9    A    Yes.   It's a pick up item if they so desire.
10   Q    What about, you say a little card, what's that?
11   A    We call it a Jesus card.
12   Q    Okay.
13   A    I forgot what it says on the front.   It's kind
14         of to grab your attention and then on the back
15         it just has references, verse references.
16   Q    Scriptural references about Jesus?
17   A    Yes, exactly.   Yes.
```

*Id*. at 39:23-40:17; Ex. D (Daily Bread Devotional); and Ex. E (Jesus card). These publications were placed on a credenza or desk at the entry place for each location for visitors to take or leave as they desire. Ex. B, Ex. B at 39:14-40:17.

Rost admitted that continuing to employ Stephens would not have interfered with these religious practices at RGGR. *Id*. at 57:2-19.

## D.   RGGR does not operate as a religious enterprise.

Defendant is not affiliated with or part of any church. *Id*. at 31:15-31:19. Rost employs people from different denominations and of no religious beliefs at all. *Id*. at 40:18-41; Ex. F, Shaffer Dep. at 33:10-12. He admits that employing individuals with beliefs different from his own

5

does not constitute an endorsement of their beliefs or activities by RGGR. Ex. B at 41:20-42:18. He does not impose his own beliefs on employees, stating that he would not, for example, terminate an employee because he or she had sex outside of marriage, had an abortion, or committed adultery. *Id.* at 138:2-138:16.

The Defendant's articles of incorporation do not avow any religious purpose. Ex. R, Articles of Incorporation at p. 6. There are no religious views or values that employees are expected to uphold. Ex. B at 81:18-21. RGGR's website contains a "mission statement" which makes two references to God, the second of which is a passage in the Gospel of Matthew (Ex. G), which Rost chose because he liked it. Ex. B at 85:7-85:21. And the Defendant's employees do not regard RGGR as a Christian business enterprise. *See*, e.g., Ex. H, Nesmith Dep. at 19:18-20:4; Ex. I, Kish Dep. at 55:10-55:25.

Defendant is open 24 hours per day, 365 days per year, and Easter is not a paid holiday. Ex. B at 88:20-89:21. It serves clients of every religion (various Christian denominations, Hindu, Muslim, Jewish, native Chinese religions) or those of no religious affiliation. Ex. J, Cash

6

Dep. at 41:19-42:10; Ex. K, Crawford Dep. at 32:18-34:9; Ex. B at 33:19-36:23. Indeed, employees have been known to wear Jewish head coverings when holding a Jewish funeral service. Ex. K at 34:20-35:4; Ex. J at 42:7-12. The business keeps Catholic religious items (crucifixes, kneelers, candles) in storage until requested by Catholic (or occasionally non-Catholic) clients. Ex. L, Matthew Rost Dep. at 36:20-25; Ex. J at 42:19-25; Ex. H at 26:1-10; Ex. K at 34:20-35:11; Ex. F at 34:16-35:10; Ex. M, McKie Dep at 29:12-25; 31:11-14.

While the rooms where funerals are held on site are called "chapels," they are decorated to look like living rooms and are not decorated with visible religious fixtures. Ex. B at 84:2-85:6. This is done deliberately to avoid offending people of different religions. *Id*. Although some of the chapels have statues of Jesus Christ and the Virgin Mary, these are kept hidden behind curtains unless a Catholic service is being held. Ex. J at 53:7-16; Ex. M at 29:16-25.

As far as presenting itself to the outside world, Defendant has not advertised in Christian publications or church bulletins in more than twenty years, with one exception. Ex. B at 37:25-38:9. The one exception

7

is a small advertisement in a Catholic parish's festival publication that Rost regards as a "gift." *Id*. at 39:2-13.

RGGR does not sponsor publications which call people to join the Christian faith or celebrate Christian holidays. *Id*. at 31:20-32:2; 39:2-16. There are no prayer groups or Bible studies at RGGR. Ex. J at 47:8-16; Ex. N, Kowalewski Dep. at 30:11-12; Ex. H at 19:18-24; Ex. I, Kish Dep. at 55:10-20; Ex. M at 27:8-15. RGGR does not have any religion-based exclusions to employee medical coverage, such as refusing to pay for abortions. Ex. B at 92:17-93:20.

Significantly, Rost admitted that the business climate causes him to act against his religious ideals: the practice of cremation instead of holding a funeral. His Christian beliefs align him toward performing funerals. *Id*. at 51:22. However, the industry has changed, with a growing preference for cremations, and he needs to do them to stay in business. *Id*. at 52:14-53:10.

## E.   Rost's religious beliefs about men and women motivated him to fire Stephens.

Rost's religious *beliefs*—not a religious exercise—led him to terminate Stephens's employment after she presented her transition

8

letter. When asked what was objectionable to him about continuing to

employ Aimee Stephens, Rost stated that transgender expression

violated his beliefs regarding proper behavior by men and women:

```
        Q   So, your personal faith as a follower of Jesus
22          Christ tells you that it would be improper
23          or -- to employ someone like the person you
24          knew as Anthony Stephens?
25   A    Absolutely.
55: 1   Q    Okay.   You indicated as part of the healing
2           process, but what about your religious beliefs
3           specifically are violated by continuing to
4           employ Stephens?
5    A    I believe it would violate my faith, yes,
6           absolutely.
7    Q    Okay.   What aspects of it?
8    A    Well, I believe that God created a man as a man
9           and God created a woman as a woman.   And to --
10          to not honor that, I would feel it's a
11          violation of my faith, absolutely.
12   Q    So Stephens would be presenting in a way that
13          offended your religious beliefs, essentially?
14   A    Yes.   Yes.
```

Ex. B at 54:21-55:19. Later, under questioning by his own attorney, Rost

re-affirmed that Stephens's non-conformance with his beliefs regarding

the behavior of men and women prompted the firing decision. Compare

the above with *Id.* at 135:24-136:3 ("[the specific reason Stephens was

fired] was [that Stephens was] no longer going to represent himself as a

9

man. He wanted to dress as a woman").

Rost also testified that he objected to Stephens's use of "Aimee" in the charge of discrimination, saying that this made him "uncomfortable….because he's [Stephens] a man." Ex. O, Rost Dep. at 23:4-8.

### F.   Defendant's Clothing-Allowance Policy

Defendant provides a different clothing allowance to its male and female employees. *Id*. at 24:8-25; Ex. I, Kish Dep. at 16:13–19:5. This dress code requires female employees to wear a suit jacket, skirt, and blouse. Ex. O at 24:8-25; Ex. I at 16:15-17:7. Male employees, including funeral directors, must wear a suit jacket, suit pants, white dress shirt, and tie. Ex. O at 13:4-21; Ex. I at 17:8-24.

For male employees who have contact with customers, Defendant provides nearly all work attire free of charge. Approximately 10 years ago, Defendant made an arrangement with a local clothier—Sam Michael's—to pay for suit jackets, suit pants, and ties for the male employees. Immediately upon hire of a full-time male, Defendant pays for two suit jackets, two suit pants, and two ties from Sam Michael's. Ex.

10

O at 14:9-19. For part-time males, Defendant pays for one suit jacket, one suit pant, and one tie. *Id*. These clothing benefits also include tailoring of the suit jackets and pants (Ex. I at 19:20-24) and repairs to the suit as needed (Ex. O at 19:2-24). Moreover, replacement suit jackets, suit pants, and ties are provided on an as-needed basis, which, on average, is every year or sometimes more often. Ex. K at 19:1-3; Ex. J at 21:4-8; Ex. F at 44:3-15; Ex. N at 22:21-23:1.

No work-clothing benefits were provided to any female employees until late 2014. Ex. O at 15:16-16:12; Ex. I at 20:16–21:3; Ex. P, Clothing Allowance Checks; Ex. M at 42:1-4; Ex. H at 13:5–14:4. Beginning in October 2014, Defendant began to provide female employees who have customer contact an annual clothing stipend. Ex. I at 20:16–21:23; Ex. P. The amount depends on the employee's status: full-time females are given $150 per year and part-time women receive $75 per year. Ex. I at 20:16-21:23. Defendant acknowledges, however, that the attire it provides to its male employees costs Defendant approximately $235 (part-time) to $470 (full-time) per employee.   Ex. O at 15:3-6. Defendant also acknowledges that it based the amount of clothing allowance for its

11

female employees on what it determined was "fair," rather than the amount it paid for its male employees' clothes. *Id*. at 45:12-20. Furthermore, unlike Defendant's male employees who receive their clothing benefits immediately upon hire, Defendant's female employees are required to wait until the next clothing allowance checks are issued for all female employees. Ex. I at 25:11-15, 38:15-25.

## II.   <u>RELEVANT LAW</u>

### A.   **Rule 56 Standard**

Summary judgment is only appropriate where the record reveals there are no issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of "clearly and convincingly" demonstrating the absence of any genuine disputes of material fact. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524 (6th Cir. 1991) (citing *Kochins v. Linden-Ailmak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986)). If Plaintiff meets this burden, the Defendant is required to present significant probative evidence showing that genuine, material disputes remain. *Sims*, 926 F.2d at 526.

**B.     First Amendment Free Exercise Standard**

The standard for review of a free-exercise claim is well-established:

a religious objector to legislative enactments must comply with neutral

laws of general applicability. *Mt. Elliott Cemetery Ass'n. v City of Troy*,

171 F.3d 398, 403 (6th Cir. 1999) (quoting *Employment Division v.*

*Smith*, 494 U.S. 872, 879 (1990)).

To determine whether a law is neutral and of general applicability,

the Sixth Circuit asks if the object of the law is to target practices

because of their religious motivation:

> A law is not neutral if the object of the law, whether overt or
> hidden, is to infringe upon or restrict practices because of their
> religious motivation. *See [Church of the] Lukumi Babalu [, Aye, Inc.*
> *v. City of Hialeah,]* 508 U.S. 520, 535 (1993).

> The requirement that the law be of general applicability protects
> against unequal treatment which results when a legislature
> decides that the governmental interests it seeks to advance are
> worthy of being pursued only against conduct with a religious
> motivation.

*Mt. Elliott Cemetery Ass'n.*, 171 F.3d at 405.

Ultimately, if a religious person is being treated the same as a

non-religious person under a valid and neutral law of general

applicability, there is no free-exercise violation. *See Hansen v. Ann Arbor*

13

*Pub. Schools*, 293 F. Supp. 2d 780, 809 (E.D. Mich. 2003) (where no students were permitted to comment at a school panel on homosexuality, free-exercise rights of religious student were not violated).

## C.    RFRA Standard

The Religious Freedom Restoration Act ("RFRA") prohibits the government from substantially burdening the exercise of religion unless the government demonstrates that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(a), (b).

The standard for analyzing a RFRA claim is a two-step process:

> First, the plaintiff must make out a prima facie case by establishing Article III standing and showing that the law in question would (1) substantially burden (2) a sincere (3) religious exercise. If the plaintiff makes out a prima facie case, it falls to the government to demonstrate[ ] that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest . The government carries the burdens of both production and persuasion when it seeks to justify a substantial burden on a sincere religious practice.

*Michigan Catholic Conf. v. Burwell,* 755 F.3d 372, 383 (6th Cir. 2014), vacated and remanded, 135 S. Ct. 1914; affirmed after remand, 807 F.3d 738 (6th Cir. 2015) (citations and internal quotation marks omitted).

14

Determining whether or not the government has substantially burdened an exercise of religion is a question of law. *Id*. at 385. Further, "[a] substantial burden exists when government action puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 717, 718 (1981)).

## III.   ARGUMENTS

### A.   The Commission Has Not Violated Defendant's Free-Exercise rights.

Defendant alleges in Affirmative Defense 12 that the EEOC's claims violate RGGR's free exercise rights, but that cannot be: the Defendant did not put the Commission on notice that religious exercise issues were involved until it filed its Answer to the Amended Complaint in June 2015. Rost admits that he did not raise such defenses during the EEOC's investigation of Stephens's charge of discrimination. Ex. B at 70:7-71:17; 141:2-142:15. Thus, the lawsuit could not have been formulated with any anti-religious motive in mind.

Even if the defense were construed to be an attack on Title VII, which it does not seem to be, Defendant's claim would be unsuccessful

15

under the Free Exercise Clause. Title VII is a neutral law of general applicability.[1] *See General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 326 (1980) (there is a public interest in preventing employment discrimination ). Title VII applies equally to all employers with 15 or more employees regardless of religious status—including Defendant. *See* Dkt. 22 at paragraphs 5-6 (admitting that Defendant is an employer for the purposes of Title VII).

A free-exercise claim cannot insulate an employer from liability under Title VII, and no court has so held. *See EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 620-21 (9th Cir. 1988) (elimination of mandatory attendance requirement for corporate prayer meetings to accommodate the Title VII rights of a non-religious employee did not violate Defendant's free exercise rights). In another religious claim involving Title VII enforcement, the court held that an investigation and subsequent lawsuit did not infringe upon a business owner's religious practices. *See EEOC v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763, 810 (S.D. Ind. 2002) (even assuming the effect of EEOC's

---

[1] Far from being intended to infringe upon religion, Title VII protects the convictions of religious institutions by allowing them to restrict employment to those of their own faith. 42 U.S.C. § 2000e–1(a).

16

investigation and litigation were to force conformance to Title VII's strictures against using religious criteria to make employment decisions, such would not "substantially burden" owner's religious beliefs or practices).

Consequently, summary judgment in favor of the Commission is proper as to Defendant's free-exercise defense set forth in Affirmative Defense 12.

**B.   Defendant's RFRA defense should be rejected.**

> 1.   <u>The Commission does not contest Defendant's religious sincerity</u>.

Defendant's religious exercise is limited—much more than the religious practices of other plaintiffs in RFRA disputes. *See, e.g., Hobby Lobby v. Sebelius*, 723 F.3d 1114, 1122 (10th Cir. 2013), *aff'd sub nom Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) (describing the evangelical activity, religious principles and actions demonstrated by the two plaintiff corporations). And the Defendant here gave no indication that its religious beliefs were being violated until litigation had been underway for nearly eight and a half months. Nevertheless, for the purposes of this motion, the Commission will not contest the

17

sincerity of Defendant's religious views.

      2.   <u>Defendant's Religious Exercise at RGGR is Not Affected by Title VII Enforcement</u>.

There is nothing about enforcement of Title VII that will interfere with Rost's religious exercises at Defendant. RFRA protects religious exercise, not simply beliefs. 42 U.S.C. § 2000bb(1)(a) In particular, RFRA does not protect Mr. Rost from having his religious beliefs offended. The Commission is not requesting that Defendant endorse Stephens's transition or otherwise affirm something to which Rost objects.

In *Wilson v. James*, __ F. Supp .3d __, 2015 WL 5952109 (D.D.C. 2015), the plaintiff, a member of the Utah National Guard, was reprimanded after he sent an email using a military account objecting to a same-sex marriage ceremony held in the Cadet Chapel at West Point. The plaintiff sued under RFRA, claiming that he was being punished for his beliefs. However, the district court rejected the RFRA claim, noting that a burden on beliefs was different from a burden on the exercise of those beliefs:

A substantial burden on one's religious beliefs—as distinct from

18

such a burden on one's *exercise* of religious beliefs—does not violate RFRA. [H]ere, Plaintiff has not identified any burdened action or practice of the LDS faith. The discipline imposed did not "force[ him] to engage in conduct that [his] religion forbids" or "prevent[ him] from engaging in conduct [his] religion requires," *Henderson v. Kennedy,* 253 F.3d 12, 16 (D.C.Cir.2001). Nor did it "condition[ ] receipt of an important benefit upon conduct proscribed by [his] religious faith, or ... den[y] such a benefit because of conduct mandated by [his] belief," *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Nothing prevented Plaintiff from continuing to maintain his beliefs about same-sex marriage and homosexuality, just as he had before the [reprimand], without repercussion.

*Wilson*, 2015 WL 5952109 at *8.

Similarly, in *McKnight v. MTC*, 2015 WL 7730995 (N.D. Tex. Nov. 9, 2015), a prisoner filed a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1, et seq.,[2] alleging that his religious freedom rights had been violated by the placement of a homosexual cellmate in his cell. In the absence of any claim that the plaintiff's religious exercise had been changed, the court held that the claim was without merit:

> Here, Plaintiff has pled no facts tending to show that Defendants' refusal to accommodate his housing request "put a substantial pressure on him to modify his behavior and to violate his beliefs."

---

[2] RLUIPA claims are evaluated under the same standard as RFRA claims. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015).

19

> *Jehovah [v. Clarke],* 798 F.3d [169 (4th Cir. 2015)] at 180–181
> (quotations and quoted case omitted). Plaintiff relies instead on
> conclusory statements that sharing a cell with a homosexual
> inmate is against his conscience and "religious obligation to honor
> God." … Thus, Plaintiff's allegations suggest that he takes issue
> only with the *exposure* to a homosexual cellmate, and not with any
> *effect* it has on his religious activities. Indeed, his filings do not
> identify any religious exercise apart from mentioning very general
> tenets of his religion to "honor God" and maintain his "human
> dignity."

*McKnight*, 2015 WL 7730995 at *4.

The facts are similar here: Rost avers that his obligation to honor God obliges him to fire Stephens, who does not act as Rost's beliefs dictate she should. In other words, the mere presence of and exposure to Stephens offends his beliefs. *See* Ex. T, Def's Answers to Plaintiff's First Set of Discovery Requests at p. 4 ("Stephens['s] intentions also violated Mr. Ros[t]'s sincerely held religious beliefs"). However, this is not sufficient to sustain a RFRA claim.

Significantly, Defendant is still able to engage in the religious activities identified by Rost—the placement of devotionals and cards for the public—regardless of whether or not one of its employees happens to violate Rost's religion-based gender stereotypes. Thus, Rost's religious exercises are not affected by the presence or employment of Stephens.

20

The mere fact that Rost thinks Stephens's continued employment violates his religious beliefs is legally insufficient under RFRA.

> 3.   Enforcement of Title VII does not substantially burden Defendant.

Even if Defendant identifies a religious exercise that has been burdened, RFRA requires a "*substantial* burden" and such is a question of law for the Court. "RFRA is not a mechanism to advance a generalized objection to a governmental policy choice, even if it is one sincerely based upon religion." *Michigan Cath. Conf. v. Burwell*, 807 F.3d 738 (6th Cir. 2015) (*Burwell II*) (affirming *Burwell I*):

> But a government action does not constitute a substantial burden on the exercise of religion even if "the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs" if the governmental action does not coerce the individuals to violate their religious beliefs or deny them the "rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988).

*Id.*, 755 F.3d at 384 (6th Cir. 2014).

Here, RGGR cannot establish a substantial burden. As stated before, there is no burdened exercise. Further, the Commission is not asking Rost to adopt a different belief about transgender people, and

21

Rost has already admitted that employing people with religious beliefs different from his own does not constitute an endorsement of the employee's religious views.

Likewise, continued employment of Aimee Stephens does not constitute an endorsement of any religious view. As Justice O'Connor stated in a concurring opinion:

> A statute outlawing employment discrimination based on race, color, religion, sex, or national origin has the valid secular purpose of assuring employment opportunity to all groups in our pluralistic society. Since Title VII calls for reasonable rather than absolute accommodation and extends that requirement to all religious beliefs and practices rather than protecting only the Sabbath observance, I believe an objective observer would perceive it as an anti-discrimination law rather than an endorsement of religion or a particular religious practice."

*Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 711-712 (1985).

Instead, in this case, the EEOC has filed suit in an effort to create a workplace free of gender discrimination for a qualified funeral director and embalmer. Since no employer can discharge people for reasons grounded in sexual stereotypes, the Defendant is not being denied any right, benefit or privilege granted to an employer who does not share its views. Further, Commission investigations and lawsuits under Title VII

22

are not a substantial burden under RFRA. In *EEOC v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763 (S.D. Ind. 2002), the Commission investigated and sued an employer under Title VII for alleged religious discrimination against employees and applicants who did not share the fundamentalist Christian views of the Defendant's management. Both the investigation and lawsuit involved extensive and searching examination of the religious viewpoints of the Defendant's decision-makers and employees. *See Preferred*, 216 F. Supp. 2d at 772-803. The defendant in *Preferred* objected to this process, claiming that it violated its rights under RFRA and the First Amendment. *Id.* at 804-805. The court held that neither the 2½-year investigation (which included 24 depositions) nor the litigation itself constituted a substantial burden on the religious rights of the employer. *Id.* at 807-809, 810.

Here, because the Defendant chose not to assert them, the Commission was entirely unaware of any potential religious issues during the investigation. Thus, there can be no claim of a substantial burden from the investigation. As to the litigation itself, Defendant injected religion into the matter, so the Commission properly probed the

23

religious claims at stake.

Therefore, as a matter of law, it should be held that Defendant's rights have not been substantially burdened by this action.

>    4.    Enforcement of Title VII here furthers a compelling governmental interest in eradicating sex discrimination and is precisely tailored to further that interest.

To the Commission's knowledge, there is no case law holding that RFRA trumps Title VII. To the contrary, the Supreme Court suggested in a colloquy between the principal dissent and the majority opinion in *Hobby Lobby*, 134 S. Ct. 2751, that Title VII serves a compelling governmental interest which cannot be overridden by RFRA. While dealing with a matter far removed from the dispute here, the discussion is worth quoting in full.

In *Burwell*, the principal dissent expressed concerns about RFRA being used to trump laws regarding accommodation and hiring, especially in the context of sex-based hiring decisions informed by religion. *See Burwell* at 2804-2805 (Ginsberg, J., dissenting).

In response, the majority opinion emphasized that anti-discrimination laws with respect to hiring would not be trumped by

24

RFRA:

> The principal dissent raises the possibility that discrimination in hiring, for example on the basis of race, might be cloaked as religious practice to escape legal sanction. See *post,* at 2804 – 2805. Our decision today provides no such shield. The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal.

*Id.* at 2783. Title VII's prohibitions against sex discrimination in the workplace demonstrate that the government has a compelling interest in protecting employees from losing their jobs on the basis of an employer's gender stereotyping, and they are precisely tailored to ensure this.

Ultimately, the concurring opinion stated the balance most clearly in the employment context:

> Among the reasons the United States is so open, so tolerant, and so free is that no person may be restricted or demeaned by government in exercising his or her religion. Yet neither may that same exercise unduly restrict other persons, such as employees, in protecting their own interests, interests the law deems compelling.

*Id.* at 2786-87 (Kennedy, J., concurring).

Even if Title VII burdens a religious practice, there "is a 'compelling government interest' in creating such a burden: the eradication of employment discrimination based on the criteria

25

identified in Title VII[.]" *Preferred Mgmt.*, 216 F. Supp. 2d at 810.

In the final analysis, Thomas Rost is free to exercise his Christian religious beliefs, but he is not free to take away Aimee Stephens's livelihood in the process. Nor is he able to excuse his actions under the cloak of religious freedom. Neither the Constitution nor RFRA authorize the firing of Stephens. To the contrary, Rost's admissions warrant entry of judgment in favor of the Commission.

### C.  Summary Judgment as to liability for Stephens's gender-motivated termination is warranted.

Title VII violations can be established through either circumstantial or direct evidence. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Rost admits that his sex-based stereotypes motivated Stephens's termination. Ex. B at 135:24-136:3. And this constitutes an admission of discrimination. Thus, the Commission respectfully requests that summary judgment as to liability for Stephens's termination be entered in favor of the Plaintiff.

26

As this Court discussed in its *Amended Opinion & Order Denying Defendant's Motion to Dismiss* (Dkt. 13), an employer discriminates on the basis of sex when it fires an employee for failing to conform to the employer's notions of the employee's sex. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989) (sexual stereotyping claim based on, among other things, instruction to plaintiff to wear jewelry and dress more femininely); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998) ("statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils"). Here, there is no material dispute of fact regarding motivation. Rost has frankly and forthrightly stated his motivation for firing Stephens in no uncertain terms—that Stephens was a man and had to present as one. Ex. B at 135:24-136:3.

In *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004), the Sixth Circuit explained that an employer violates Title VII when it takes action against an employee based on "[s]ex stereotyping," that is, "based on a person's gender non-conforming behavior." This includes penalizing an employee for dress or mannerisms that, in the employer's mind, conform to the wrong sex stereotypes. *See also Myers v. Cuyahoga Cty.*,

27

182 Fed. Appx. 510, 519 (6th Cir. 2006) ("Title VII protects transsexual persons from discrimination for failing to act in accordance and/or identify with their perceived sex or gender") (citing *Smith* and *Barnes*); *Fabian v. Hospital of Central Connecticut*, No. 3:12-cv-1154, __F. Supp. 3d __, 2016 WL 1089178 at *10-13 (D. Conn. March 18, 2016) (following *inter alia*, Title VII's plain language, *Price Waterhouse* and *Smith* and discussing the development of the case law).

Thus, an employee who alleges that failure to conform to sex stereotypes concerning how a man or woman should look and behave was the "driving force" behind the employer's adverse employment actions "state[s] a claim for relief pursuant to Title VII's prohibition of sex discrimination." *Smith*, 378 F.3d at 575. In particular, an employer may not fire a transgender woman for failing to comport with the employer's gender expectations. Such an act is discrimination "because of … sex," which Title VII prohibits.

RGGR fired Stephens because she did not conform to its expectations of how someone assigned the male sex at birth should look and act:

28

Q        [Defense Counsel] Okay. Why did you -- what was the specific
         reason that you terminated Stephens?
A        Well, because he -- he was no longer going to
         represent himself as a man. He wanted to dress
         as a woman.

Ex. B at 135:24-136:1. Rost also admits that Stephens's termination was

not motivated by any performance reasons. *Id*. at 108:25-109:9.

Stephens intended to provide the same level of services to the

Respondent as she had always provided. And she still intended to dress

professionally, in a manner consistent with the Respondent's dress

requirements for women. Ex. Q, Stephens Dep. at 133:6-133:9. In other

words, she still intended to meet all of the Respondent's legitimate

business expectations. Therefore, RGGR discriminated against Stephens

based on its gender stereotypes, in contravention of *Smith*. Ex. B at

55:8-55:9 ("Well, I believe that God created a man as a man and God

created a woman as a woman."). As the Sixth Circuit noted in *Smith*,

*Price Waterhouse* states that Title VII forbids discrimination based on

the employer's notions of how a male or female should look or act. *See*

378 F.3d at 572-73.

Because the Commission can establish direct evidence of

discrimination, the Court need not proceed to the second step of the

traditional *McDonnell Douglas* burden-shifting analysis for cases

proceeding under a circumstantial evidence theory. Even if the Court

considers RGGR's dress code a possible defense, RGGR's argument fails

for two reasons: RGGR's dress code is not a legitimate,

non-discriminatory reason for terminating Stephens, and even if it were

non-discriminatory, the dress code is a pretext, not the real reason

RGGR fired Stephens.

RGGR is likely to cite a string of cases allegedly standing for the

proposition that sex-specific dress codes do not violate Title VII. *See* Dkt.

7 at Pg ID 38-40. However, as this Court already recognized, this is not

the Commission's allegation in the lawsuit. *See* Dkt. 13 at Pg ID 197

("Here, however, the EEOC's complaint does not assert any claims based

upon a dress code and it does not contain any allegations as to a dress

code at the Funeral Home"). The Commission is not asserting that

RGGR's dress code violates Title VII—rather the violation is RGGR's

insistence that Stephens dress in accord with Rost's gender stereotypes.

Stephens's gender identity is female, and she was prepared to abide by

30

RGGR's female dress code. Ex. Q, Stephens Dep. at 133:6-9. RGGR's desire to force her to present as a male at work evidences the exact sex-based consideration that establishes RGGR terminated Stephens because of her sex.

RGGR claims that if it cannot force Stephens to dress inconsistent with her gender identity, sex specific dress codes would be "effectively invalidate[d]." Dkt. 7 at Pg ID 40-42. RGGR's argument misses the mark because Stephens fully intended to abide by the female dress code—and to continue to dress in a professional manner at work.

RGGR claims that employers will not be "able to any longer control how its employees and agents appear to the public." Dkt. 7 at Pg ID 41. This is unworthy of credence. RGGR can require its employees to dress professionally and appropriately. What RGGR cannot require is that an employee dress inconsistently with his or her gender identity. It is RGGR's insistence that it could require Stephens to present inconsistently with her gender identity—but consistently with RGGR's stereotypes for how she should dress—that establishes that RGGR terminated Stephens for violating its gender-based expectations. Such

31

employer action violates Title VII.

### D.   Defendant's Clothing-Allowance Policy Constitutes Sex-Based Discrimination.

Title VII makes it unlawful for an employer to "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Defendant's policy of paying for the work clothing of male employees, while failing to provide a comparable benefit to female employees violates Title VII.

As clarified by the EEOC Guidelines on Discrimination Because of Sex, "fringe benefits" are encompassed by the language in § 2000e-2(a)(1). 29 C.F.R. §1604.9(a)–(b). Federal courts have also recognized various allowances, including work-clothing-related allowances, as being fringe benefits under Title VII. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 443, 453–56 (D.C. Cir. 1976) (upholding lower court's finding that providing a uniform-cleaning allowance to only the male employees, but not female employees, constituted a violation under Title VII); *Long v. Ringling Brothers-Barnum & Bailey Combined Shows*, 9 F.3d 340, 343–44 (4th

32

Cir. 1993) (finding genuine issues of material fact in a Title VII case involving a claim of fringe benefits, which included allowances for meals, laundry and valet services, and life and health insurances).

Thus, Defendant's practice of providing fringe benefits only to men in the form of free work clothing violated Title VII.

Even now, although Defendant provides female employees with a yearly clothing allowance of $75 to $150, this is significantly less than the clothing benefits in excess of $200 provided to male employees, and is less flexible, since women can only obtain it on a pre-determined schedule and even part-time male employees can replace clothing at need as it wears out or is damaged.

Specifically, RGGR permits its male employees to receive their clothing benefits immediately upon hire and they can replace soiled or damaged clothes as needed, also at no cost. In contrast, Defendant's female employees are required to wait until the next clothing allowance checks are issued for *all* female employees before they receive their clothing allowance. As a consequence, Defendant has only lessened, but not eliminated, its discrimination against female employees. Hence, it

continues to violate Title VII and is liable for damages for discrimination on the basis of sex. Thus, summary judgment is appropriate as to the clothing-allowance claim as well.

## IV.   CONCLUSION

There is no factual dispute that Thomas Rost discharged Aimee Stephens because she refused to conform to his sex-based stereotypes and present as a man. Rost has forthrightly admitted this, and more than once. Moreover, his religious beliefs regarding transgender persons do not excuse him from his duty as an employer to respect Aimee Stephens's Title VII rights. No case has held that either the First Amendment or RFRA trumps or voids employee discrimination claims.

Further, Defendant has and continues to provide inferior clothing allowance benefits to female employees. This, too, is not a matter of dispute. Consequently, summary judgment in favor of the Commission is appropriate as to both of the claims at issue in this lawsuit, and the Commission respectfully requests that the Court grant its motion as to liability and the matter proceed as to the calculation of damages

Respectfully submitted,

34

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

s/ Miles Shultz
MILES SHULTZ (P73555)
Trial Attorney

s/ Katie Linehan
KATIE LINHAN (P77974)
Trial Attorney

Dated: April 7, 2016                    s/ Dale Price
DALE PRICE (P55578)
Trial Attorney

DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
Dale.Price@EEOC.GOV
Tel. No. (313) 226-7808
Fax No. (313) 226-6584

## Certificate of Service

I hereby certify that on April 7, 2016, I electronically filed the forgoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all record attorneys.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

dated: April 7, 2016                    s/ Dale Price
DALE PRICE (P55578)
Trial Attorney

35

36