IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 2:14-CV-13710 |
| v. | ) ) ) | Hon. Sean F. Cox Magistrate Judge David R. Grand |
| R.G. & G.R. HARRIS FUNERAL HOMES, INC., | ) ) ) | |
| Defendant. | ) | |

**Statement of Material Facts Not in Dispute**

<u>Termination Claim</u>

1. Defendant ("RGGR") hired Aimee Stephens in October 2007. Ex. Q, Stephens Dep. at 50:8-13.

2. Aimee Stephens served as a funeral director/embalmer for the Defendant ("RGGR") for nearly six years under the name of Anthony Stephens. Ex. Q, Stephens Dep. at 56:14-15.

3. Before RGGR hired her, Stephens was a licensed funeral director in North Carolina. Ex. Q, Stephens Dep. at 20:1-3.

4. Michigan required her to complete a six-month apprenticeship before she could become a licensed funeral director in Michigan. Ex. Q, Stephens Dep. at 45:20-46:10.

5. RGGR hired Stephens as a director/embalmer following her six month apprenticeship. Ex. Q, Stephens Dep. at 59:4-8.

6. On July 31, 2013, Stephens informed RGGR's owner, Thomas Rost, in a letter that she was undergoing a gender transition from male to female and intended to dress in appropriate business attire at work as a woman from then. Ex. B, Rost 30(b)(6) Dep. at 109:24-110:10.

7. Stephens's gender identity is female. Ex. Q, Stephens Dep. at 133:6-133:9.

8. Stephens intended to abide by RGGR's dress code for its female employees. Ex. Q, Stephens Dep. at 133:6-133:9.

9. Stephens took a previously scheduled vacation from July 31, 2013, through August 15, 2013. Ex. B, Rost 30(b)(6) Dep. at 111:19-112:2.

10. On August 15, 2013, Rost fired Stephens. Ex. Q, Stephens Dep. at 80:1-80:6.

11. Rost privately fired Stephens in person at RGGR's Garden City location. Ex. B, Rost 30(b)(6) Dep. at 126:1-10.

12. After firing Stephens, Rost informed RGGR's employees of his decision via facsimile. Ex. B, Rost 30(b)(6) Dep. at 127:19-128:10.

13. Rost made the decision to terminate Stephens by himself without consulting anyone else. Ex. B, Rost 30(b)(6) Dep. at 118:1-6.

14. Rost admitted that "the specific reason" he fired Stephens was that Stephens was going to present as a female: "he [Stephens] was no longer going to represent himself as a man. He wanted to dress as a woman." Ex. B, Rost 30(b)(6) Dep. at 135:24-136:3.

15. Rost testified that he objected to Stephens's use of "Aimee" in the charge of discrimination, saying that this made him "uncomfortable….because he's a man." Ex. O, Rost Dep. at 23:4-8.

16. Stephens's job performance did not motivate Rost's decision to terminate her. Ex. B, Rost 30(b)(6) Dep. at 108:1-109:9.

17. Rost admitted the only reason he fired Stephens was become she intended to present as a woman at work. Ex. B, Rost 30(b)(6) Dep. at 135:24-137:10.

18. Rost admitted that RGGR's dress code comports with his religious views. Ex. B, Rost 30(b)(6) Dep. at 57:20-59:12.

## Religious-Based Defenses

19. Rost owns 94.5% of the shares of Defendant and was the sole decision-maker who terminated Stephens's employment. Ex. B, Rost 30(b)(6) Dep. at 26:20-26:24.

20. To the extent RGGR has free exercise or religious freedom rights at issue in this litigation, they are those of Rost. Ex. B, Rost 30(b)(6) Dep. at 29:8-13.

21. Rost is a Christian. Ex. B, Rost 30(b)(6) Dep. at 29:20-22.

22. Rost's exercise of his religious beliefs at or through RGGR is limited to (1) the placement of "Daily Bread" devotional books and (2) cards bearing the word "Jesus" on the front with New Testament verses on the back. Ex. B, Rost 30(b)(6) Dep. at 39:23-40:17; Ex. D, Daily Bread Devotional; and Ex. E, Jesus card.

23. Stephens's intent to present consistently with her gender identity violated Rost's sincerely held religious beliefs and was an express motivation for her firing. Exhibit T, Defendant's

Responses to Plaintiff's First Set of Discovery Requests, Interrogatory 3.

24. Stephens' continued employment at RGGR would not have affected Rost's ability to continue placing either the Daily Bread or Jesus cards in the funeral home. Ex. B, Rost 30(b)(6) Dep. at 57:2-19.

25. RGGR is not affiliated with or part of any church. Ex. B, Rost 30(b)(6) Dep. at 31:15-31:19.

26. The articles of incorporation for RGGR do not avow any religious purpose. Ex. R, Articles of Incorporation.

27. There are no religious views or values that employees are expected to uphold. Ex. B, Rost 30(b)(6) Dep. at 81:18-21.

28. RGGR's employees do not regard RGGR as a Christian business enterprise. Ex. H, Nemeth Dep. at 19:18-20:4; Ex. I, Kish Dep. at 55:10-55:25.

29. RGGR is open 24 hours per day, 365 days per year, and Easter is not a paid holiday. Ex. B, Rost 30(b)(6) Dep. at 88:20-89:21.

30. RGGR serves clients of every religion (various Christian denominations, Hindu, Muslim, Jewish, native Chinese religions) or none at all. Ex. J, Cash Dep. at 41:19-42:10; Ex. K,

Crawford Dep. at 32:18-34:9; Ex. B, Rost 30(b)(6) Dep. at 33:19-36:23.

31. Employees have worn Jewish head coverings when holding a Jewish funeral service. Ex. K, Crawford Dep. at 34:20-35:4; Ex. J, Cash Dep. at 42:7-12.

32. RGGR keeps Catholic religious items (crucifixes, kneelers, candles) in storage until requested by Catholic (or occasionally non-Catholic) clients. Ex. L, Matthew Rost Dep. at 36:20-25; Ex. J, Cash Dep. at 42:19-25; Ex. H, Nemeth Dep. at 26:1-10; Ex. K, Crawford Dep. at 34:20-35:11; Ex. F, Shaffer Dep. at 34:16-35:10; Ex. M, McKie Dep. at 29:12-25; 31:11-14.

33. While the rooms where funerals are held on site are called "chapels," they are decorated to look like a living room and are not decorated with visible religious fixtures. This is done deliberately to avoid offending people of different religions. Ex.B, Rost 30(b)(6) Dep. at 84:2-85:6.

34. RGGR does not sponsor publications which call people to join the Christian faith or celebrate Christian holidays. Ex. B, Rost 30(b)(6) Dep. at 31:20-32:2; 39:2-16.

35. There are no prayer groups or Bible studies at RGGR. Ex. J, Cash Dep. at 47:8-16; Ex. N, Kowalewski Dep. at 30:11-12; Ex. H, Nemeth Dep. at 19:18-24; Ex. I, Kish Dep. at 55:10-20; Ex. M, McKie Dep. at 27:8-15.

36. Rost does not have any religion-based exclusions to employee medical coverage, such as refusing to pay for abortions. Ex. B, Rost 30(b)(6) Dep. at 92:17-93:20.

37. Rost employs people from different religious denominations, and of no religious beliefs at all. Ex. B, Rost 30(b)(6) Dep.at 40:18-42:11; Ex. F, Shaffer Dep. at 33:10-12.

38. Rost recognizes that employing individuals with beliefs different from his own does not constitute an endorsement of their beliefs or activities by the Funeral Home. Ex. B, Rost 30(b)(6) Dep. at 41:20-42:18.

39. Rost does not impose his own Christian beliefs on employees, stating that he would not terminate an employee because he or she had sex outside of marriage, had an abortion, or committed adultery. Ex. B, Rost 30(b)(6) Dep. at 138:2-138:16.

40. The business climate causes Rost to act against his religious ideals: the practice of cremation instead of holding a funeral.

His Christian beliefs align him toward performing funerals. Ex. B, Rost 30(b)(6) Dep. at 51:1-22.

41. However, the industry has changed, with a growing preference for cremations, and he needs to do them to stay in business. *Id.* at 52:14-53:10.

Clothing Allowance Claim

42. RGGR provides its male employees who interact with clients, including both funeral directors and runners, with suits and ties free of charge. Ex. I, Kish Dep. at 17:25-19:5, 57:12-58:4; and Ex. O, Rost Dep. at 51:1-8.

43. A runner is someone who obtains death certificates and aids in body removals. Ex. I, Kish Dep. at 18:25-19:5.

44. For the past 10 years RGGR has purchased these suits and ties from Sam Michael's. Ex. O, Rost Dep. at 13:22-24.

45. Sam Michael's invoices RGGR directly for payment. Ex. I, Kish Dep. at 19:6-19.

46. Prior to Sam Michael's RGGR used a different retailer to provide clothing benefits for male employees. Ex. O, Rost Dep. at 15:9-15.

47. Upon hire, full-time male employees are provided two suits and two ties and part-time male employees are provided one suit and one tie. Ex. O, Rost Dep. at 14:9-19.

48. After the initial suits are provided, RGGR replaces suits as needed. Ex. O, Rost Dep. at 14:20-15:2.

49. Typically, male employees receive one or two new suits a year on an as needed basis. Ex. N, Kowalewski Dep. at 22:21-23:1; Ex. J, Cash Dep. at 21:4-8; Ex. F, Shaffer Dep. at 44:3-15; Ex. K, Crawford Dep. at 19:1-3.

50. Male employees go to Sam Michael's to be fitted and obtain their suits during work hours. Ex. F, Shaffer Dep. at 44:10-15.

51. These clothing benefits also include tailoring of the suit jackets and pants and repairs to the suit as needed. Ex. I, Kish Dep. at 19:20-24.

52. RGGR spends about $225 per suit and $10 per tie. Ex. O, Rost Dep. at 15:3-6.

53. RGGR's dress code lists "Funeral Directors on Duty" in the section governing what male employees must wear. Ex. S, Dress Code.

54. Until October 2014, after the EEOC filed this lawsuit, no work-clothing benefits were provided to female employees. Starting in October 2014 female employees have been given an annual clothing stipend ranging from $75 for part-time employees to $150 for full-time employees. Ex. O, Rost Dep. at 15:16-16:12; Ex. I, Kish Dep. at 20:16-21:3; Ex. P, clothing allowance checks; and Dkt. 1.

55. Rost acknowledges, however, that the attire it provides to its male employees costs RGGR approximately $235 (part-time) to $470 (full-time) per employee. Ex. O, Rost Dep. at 15:3-6.

56. RGGR based the amount of clothing allowance for its female employees on what it determined was "fair," rather than the amount it paid for its male employees' clothes. Ex. O, Rost Dep. at 45:12-20.

57. Rost characterizes the female clothing allowance as "little." Ex. O, Rost at 15:16-17.

58. Unlike Defendant's male employees who receive their clothing benefits immediately upon hire, Defendant's female employees are required to wait until the next clothing allowance checks

are issued for all female employees. Ex. I, Kish Dep. at 25:11-15, 38:15-25.

59. RGGR issues the female employees a separate check each year for their clothing stipend. Ex. I, Kish Dep. at 25:11-15.

60. RGGR does not issue a clothing allowance stipend to female employee upon hire. Ex. I, Kish Dep. at 38:15-25.

61. Female employees do not purchase clothes while at work. Ex. M, McKie Dep. at 25:19-21.

62. Since October 2014, male employees continue to receive suits and ties at no cost as before. Ex. O, Rost Dep. at 13:4-9.

Respectfully submitted,

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

s/ Miles Shultz
MILES SHULTZ (P73555)
Trial Attorney

s/ Katie Linehan
KATIE LINEHAN (P77974)
Trial Attorney

Dated: April 7, 2016

s/ Dale Price
DALE PRICE (P55578)
Trial Attorney

DETROIT FILED OFFICE
Patrick V. McNamara

        477 Michigan Ave., Room 865
        Detroit, MI 48226
        Dale.Price@EEOC.GOV
        Tel No. (313) 226-7808
        Fax No. (313)226-6584

**<u>Certificate of Service</u>**

I hereby certify that on April 7, 2016 m I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all record attorneys.

        EQUAL EMPLOYMENT
        OPPORTUNITY COMMISSION

Dated: April 7, 2016        <u>s/ Dale Price</u>
        DALE PRICE (P55578)
        Trial Attorney