## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Equal Employment
Opportunity Commission,

              Plaintiff,

v.

R.G. & G.R. Harris Funeral
Homes, Inc.,

              Defendant.

Civil Action No.
2:14-cv-13710
Hon. Sean F. Cox

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S MOTION FOR SUMMARY JUDGMENT

---

James A. Campbell (AZ Bar 026737)
Douglas G. Wardlow (AZ Bar 032028)
Joseph P. Infranco (NY Bar 1268739)
Bradley S. Abramson (AZ Bar 029470)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jcampbell@ADFlegal.org
dwardlow@ADFlegal.org
jinfranco@ADFlegal.org
babramson@ADFlegal.org

Joel J. Kirkpatrick (P62851)
JOEL J. KIRKPATRICK, P.C.
843 Penniman Ave., Suite 201
Plymouth, MI 48170
(734) 404-5710
(866) 241-4152 Fax
joel@joelkirkpatrick.com

*Attorneys for Defendant*

**<u>Statement of the Issues Presented</u>**

1. Whether the Court should grant summary judgment to Defendant R.G. & G.R. Funeral Homes, Inc. ("R.G.") on Plaintiff Equal Opportunity Employment Commission's (the "EEOC") Title VII claim on behalf of Charging Party Stephens, when the undisputed evidence demonstrates that R.G. dismissed Stephens because of Stephens's stated intent to violate a sex-specific dress code that imposes equal burdens on the sexes.

2. Whether the Religious Freedom Restoration Act ("RFRA") requires the Court to grant summary judgment to R.G. on the EEOC's Title VII claim on behalf of Stephens, when the undisputed evidence shows that the EEOC seeks to compel R.G. (a closely held corporation) to violate its owner's sincerely held religious beliefs.

3. Whether the Court should grant summary judgment to R.G. on the EEOC's Title VII claim (on behalf of an unidentified group of women) that challenges R.G.'s manner of providing work clothes and clothing allowances to its employees, when the EEOC lacks authority to bring a claim of discrimination that is unrelated to Stephens (a biological male when employed by R.G.) and that involves a kind of discrimination (discrimination in the terms and conditions of employment) different than that alleged by Stephens (discriminatory discharge), and when the undisputed evidence demonstrates that R.G. provides work clothes and clothing allowances that are equivalent for comparable male and female employees.

i

<u>**Authority for the Relief Sought**</u>

Issue No. 1

      *Barker v. Taft Broadcasting Co.*, 549 F.2d 400 (6th Cir. 1977)

      *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104 (9th Cir. 2006) (en banc)

Issue No. 2

      Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, *et seq.*

      *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)

Issue No. 3

      *EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977)

## <u>**Table of Contents**</u>

Introduction ........................................................................................ 1

Standard of Review ............................................................................ 2

Argument ............................................................................................ 3

I.    Stephens Was Not Unlawfully Dismissed Because of Sex in Violation of Title VII. ..................................................................... 3

    A.    Stephens Must Be Considered a Male for Purposes of Title VII. ................................................................................. 4

    B.    R.G.'s Enforcement of its Sex-Specific Dress Code Does Not Violate Title VII. ............................................... 5

        1.    Sex-Specific Dress Codes That Impose Equal Burdens on Men and Women Do Not Violate Title VII. ..................................................................... 5

        2.    R.G.'s Sex-Specific Dress Code Does Not Impose Unequal Burdens on Males and Females. ........................... 7

        3.    Neither *Price Waterhouse* nor *Smith* Invalidate R.G.'s Sex-Specific Dress Code. ......................................... 9

        4.    R.G.'s Dress Code Furthers Particular Business Needs in the Funeral Industry. ............................................. 12

II.    RFRA Prohibits the EEOC from Compelling R.G. to Violate its Sincerely Held Religious Beliefs. ................................................. 15

    A.    RFRA Protects R.G.'s Exercise of Religion. .................................. 15

    B.    Applying Title VII in this Case Would Substantially Burden R.G.'s Exercise of Religion. ............................................. 18

    C.    The EEOC Cannot Demonstrate That Applying Title VII in this Case Would Satisfy Strict Scrutiny. ..................................... 19

III.    The EEOC Cannot Prevail on its Clothing Allowance Claim on Behalf of a Class of Female Employees. ..................................... 21

A.    The EEOC Lacks Authority to Raise its Clothing
       Allowance Claim. ............................................................... 21

B.    The EEOC's Clothing Allowance Claim Lacks Merit
       Because R.G. Does Not Discriminate Between Comparable
       Male and Female Employees. .......................................... 24

Conclusion ............................................................................................. 25

## Index of Authorities

**Cases:**

*Barker v. Taft Broadcasting Co.*,
    549 F.2d 400 (6th Cir. 1977) ................................................................... 6, 9

*Burwell v. Hobby Lobby Stores, Inc.*,
    134 S. Ct. 2751 (2014) ......................................................... 16, 17, 19, 20

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978) ...................................................................... 21

*EEOC v. Bailey Co.*,
    563 F.2d 439 (6th Cir. 1977) .......................................................21, 22, 23

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
    100 F. Supp. 3d 594 (E.D. Mich. 2015) ................................................. 4

*Fagan v. National Cash Register Co.*,
    481 F.2d 1115 (D.C. Cir. 1973) ....................................................... 5

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ................................................................. 19, 20

*Hamm v. Weyauwega Milk Products, Inc.*,
    332 F.3d 1058 (7th Cir. 2003) ....................................................... 14

*Harper v. Blockbuster Entertainment Corp.*,
    139 F.3d 1385 (11th Cir. 1998) ....................................................... 7

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) ................................................................ 23

*Holt v. Hobbs*,
    135 S. Ct. 853 (2015) ................................................................. 18

*Humenny v. Genex Corp.*,
    390 F.3d 901 (6th Cir. 2004) .......................................................... 3

*Jespersen v. Harrah's Operating Co.,*
    444 F.3d 1104 (9th Cir. 2006) ............................................................ 5, 6, 7, 8, 9, 11

*Martin v. Ohio Turnpike Commission,*
    968 F.2d 606 (6th Cir. 1992) ................................................................................. 2

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ............................................................................................. 3

*Nelson v. General Electric Co.,*
    2 F. App'x 425 (6th Cir. 2001) .......................................................................... 23

*Oncale v. Sundowner Offshore Services, Inc.,*
    523 U.S. 75 (1998) ........................................................................................... 3, 4

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989) .............................................................. 4, 9, 10, 11, 12

*Smith v. City of Salem,*
    378 F.3d 566 (6th Cir. 2004) ................................................................... 9, 10, 11

*St. Mary's Honor Center v. Hicks,*
    509 U.S. 502 (1993) .......................................................................................... 10

*Thomas v. Review Board of the Indiana Employment Security Division,*
    450 U.S. 707 (1981) .......................................................................................... 18

*Thompson v. North American Stainless, LP,*
    562 U.S. 170 (2011) .......................................................................................... 23

*Trafficante v. Metropolitan Life Insurance Co.,*
    409 U.S. 205 (1972) .......................................................................................... 23

*Vickers v. Fairfield Medical Center,*
    453 F.3d 757 (6th Cir. 2006) ............................................................................... 3

*White v. Baxter Healthcare Corp.,*
    533 F.3d 381 (6th Cir. 2008) ......................................................................... 3, 10

**Constitutional Provisions, Statutes, and Rules:**

Federal Rules of Civil Procedure, Rule 56................................................................ 2

42 U.S.C. § 2000e-2 ........................................................................................ 3, 22

42 U.S.C. § 2000e-5 ........................................................................................... 23

42 U.S.C. § 2000bb-1 .................................................................................... 15, 19

**Other Authorities:**

EEOC Compliance Manual (June 2006) ............................................................... 7

## Introduction

Defendant R.G. & G.R. Harris Funeral Homes, Inc. ("R.G.") and its owner Thomas Rost ("Rost") walk alongside grieving family members and friends when their loved ones pass away. Rost is a devout Christian who believes that God has called him to minister to these grieving families, and his faith informs the way he operates his business and how he presents his business to the public.

Charging Party Stephens was employed by R.G. as a funeral director embalmer. In Stephens's work as a funeral director, Stephens regularly interacted with the public, including grieving family members and friends. When Stephens, a biological male, informed Rost of an intention to begin wearing the female uniform for funeral directors, R.G. dismissed Stephens for refusing to comply with R.G.'s dress code.

Plaintiff Equal Employment Opportunity Commission (the "EEOC") claims that R.G. violated Title VII's prohibition on sex discrimination when R.G. dismissed Stephens. This Court's previous rulings have established that the EEOC is confined to arguing that R.G. engaged in unlawful sex stereotyping when it dismissed Stephens. Yet the undisputed evidence demonstrates that R.G. dismissed Stephens because Stephens stated an intent to violate a sex-specific dress code that imposes equal burdens on men and women. That decision had nothing to do with pernicious or illegitimate sex-based stereotypes. Consequently, as a matter of law, Stephens's termination does not violate Title VII.

In addition, R.G. is entitled to summary judgment because the Religious

Freedom Restoration Act ("RFRA") forbids the EEOC from applying Title VII to punish R.G. under the facts of this case. RFRA applies here because R.G. is a closely held corporation entirely controlled and majority-owned by Rost and because Rost operates R.G. consistent with his Christian faith. Rost sincerely believes that a person's sex (whether male or female) is an immutable God-given gift, and that he would be violating his faith if he were to pay for and otherwise permit his funeral directors to dress as members of the opposite sex while at work. Compelling R.G. to allow its male funeral directors to wear the uniform prescribed for females would thus substantially burden R.G.'s exercise of religion. Because the government cannot satisfy strict scrutiny here, RFRA bars Title VII's application in this case.

Finally, the Court should reject the EEOC's claim that R.G. violates Title VII by allegedly failing to provide female employees work clothes or clothing allowances equivalent to those given to males. This is because the EEOC lacks authority to raise that claim and because the work clothes and clothing allowances that R.G. provides to its employees do not discriminate between comparable male and female employees.

## Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party carries its initial burden, the non-moving party may avoid summary judgment by "point[ing] to evidence in the record upon which a reasonable jury could find for it." *Martin v. Ohio Turnpike Comm'n*,

2

968 F.2d 606, 608-09 (6th Cir. 1992) (citations omitted).

<u>Argument</u>

**I.    Stephens Was Not Unlawfully Dismissed Because of Sex in Violation of Title VII.**

Title VII prohibits an employer from dismissing or otherwise taking adverse action against an employee "because of" the employee's sex. 42 U.S.C. § 2000e-2(a)(1). Plaintiffs generally rely on the indirect method of proof for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that method, a plaintiff must establish the prima facie case by showing that "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *accord Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006). If the plaintiff establishes these elements, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). If the employer provides such a reason, the plaintiff's claim fails unless the plaintiff produces evidence that the proffered reason is a pretext for discrimination. *Id.*

In Title VII sex-discrimination litigation, "[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner*

3

*Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Even though Stephens stated an intent to begin wearing the female uniform for funeral directors, Stephens was at all relevant times—from the time of Stephens's hiring through discharge—a biological male. Consequently, to establish a prima facie case for sex discrimination, Stephens must show that R.G. treated Stephens less favorably than a similarly situated female employee or that Stephens was replaced with a female employee. The EEOC cannot make this showing because R.G. was simply enforcing its legitimate dress code for funeral directors when it dismissed Stephens. Accordingly, the EEOC cannot prove intent to discriminate against Stephens based on sex.

### A. Stephens Must Be Considered a Male for Purposes of Title VII.

Ruling on R.G.'s Motion to Dismiss, this Court held that "transgender status is not a protected class under Title VII." *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 100 F. Supp. 3d 594, 595 (E.D. Mich. 2015). This Court also "rejected the EEOC's claim that R.G. violated Title VII by firing Stephens . . . because of Stephens's transition from male to female." Order Granting in Part and Denying in Part EEOC's Motion for Protective Order at *2 (ECF No. 34). The EEOC is thus confined to arguing that R.G. discriminated against Stephens under the sex-stereotyping theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Legal analysis under that theory must begin by identifying the plaintiff's sex, which forms the basis of the alleged stereotyping. Because transgender status is not a protected class, the baseline for a sex-stereotyping claim must be a person's biological sex.

4

In this case, there is no dispute that during Stephens's employment at R.G., Stephens was a biological male. Indeed, this fact is conclusively established in this proceeding. In its response to R.G.'s Requests for Admissions, the EEOC *denied* that Stephens is "female *and not a male* for purposes of determining whether discrimination on the basis of 'sex' has occurred under Title VII." Pl.'s Resp. to Def.'s First Set of Discovery at Request for Admission No. 6 (Ex. 25) (emphasis added).

Thus, Stephens must be treated as a male for purposes of Stephens's Title VII claim. This conclusion has two consequences. First, any claim that Stephens was subjected to unlawful discrimination because Stephens is female must fail. Second, Stephens was subject to R.G.'s dress code for male funeral directors.

**B.    R.G.'s Enforcement of its Sex-Specific Dress Code Does Not Violate Title VII.**

**1.    Sex-Specific Dress Codes That Impose Equal Burdens on Men and Women Do Not Violate Title VII.**

Courts generally uphold sex-specific dress and grooming policies against Title VII challenges. *See, e.g.*, *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (stating that the Ninth Circuit has "long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits"); *Fagan v. Nat'l Cash Register Co.*, 481 F.2d 1115, 1117 n.3 (D.C. Cir. 1973) ("[R]easonable regulations prescribing good grooming standards are not at all uncommon in the business world, indeed, taking account of basic differences in male and female physiques and common differences in customary dress of male and

female employees, it is not usually thought that there is unlawful discrimination 'because of sex.'"). This is particularly true when even though the challenged policy treats men and women differently, it does so without placing an unequal burden on one sex.

In *Barker v. Taft Broadcasting Co.*, 549 F.2d 400, 401 (6th Cir. 1977), for example, the Sixth Circuit held that a male employee who was discharged for failing to keep his hair short as required by his employer's sex-specific grooming policy did not state a cause of action under Title VII for discrimination based on sex. The employer's grooming policy "limited the manner in which the hair of the men could be cut and limited the manner in which the hair of women could be styled." *Id.* In holding that the male plaintiff failed to make out a prima facie case of sex discrimination, the court observed that there was "no allegation that women employees who failed to comply with the code provisions relating to hair style were not discharged"; nor was there "any allegation that the employer refused to hire men who did not comply with the code, but did hire women who were not in compliance." *Id.* In other words, the plaintiff did not state a claim for sex discrimination because he failed to allege that the employer's grooming policy imposed an unequal burden on men.

Courts in other circuits have reached the same conclusion. In 2006, an en banc panel of the Ninth Circuit confronted a similar set of facts in *Jespersen*. There, the court considered whether Harrah's Casino violated Title VII by requiring its bartenders to conform to a dress and grooming policy that required female bartenders

6

to wear makeup and nail polish and to tease, curl, or style their hair, while prohibiting male bartenders from wearing makeup or nail polish and requiring them to keep their hair cut above the collar. *Jespersen*, 444 F.3d at 1107. The court noted that it has "long recognized that companies may differentiate between men and women in appearance and grooming policies." *Id.* at 1110. "The material issue under our settled law is not whether the policies [for men and women] are different, but whether the policy imposed on the plaintiff creates an unequal burden for the plaintiff's gender." *Id.* (citation and quotation marks omitted). Because the female plaintiff failed to show that requiring women to wear makeup (and prohibiting men from doing so) imposed an unequal burden on women, the Ninth Circuit held that she could not establish her claim of sex discrimination. *Id.* at 1112; s*ee also Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (upholding sex-specific grooming policy); EEOC Compliance Manual § 619.4(d) (June 2006) (stating that sex-specific dress codes that "are suitable and are equally enforced and . . . are equivalent for men and women with respect to the standard or burden that they impose" do not violate Title VII).

2.    **R.G.'s Sex-Specific Dress Code Does Not Impose Unequal Burdens on Males and Females.**

Because R.G.'s dress code for funeral directors imposes equivalent burdens on men and women, the enforcement of the dress code against Stephens was not unlawful discrimination, and R.G. is entitled to judgment as a matter of law.

R.G.'s basic dress code is outlined in the company's employee handbook. *See*

7

R.G. Employee Manual, EEOC002717-19 (Ex. 19). It is a sex-specific dress code that R.G. applies based on the biological sex of its employees. T. Rost Aff. ¶ 35 (Ex. 1). The dress code requires men who interact with the public to wear dark suits with nothing in the jacket pockets, white shirts, ties, dark socks, dark polished shoes, dark gloves, and only small pins. R.G. Employee Manual, EEOC002717-19 (Ex. 19). Women who interact with the public must wear "a suit or a plain conservative dress" in muted colors. *Id.* The employees of R.G. understand that this requires those male employees to wear suits and ties and those female employees to wear skirts and business jackets. *See* Peterson Dep. 30:24-31:25, 32:3-8 (Ex. 11); Kish Dep. 17:8-16, 58:5-11 (Ex. 5); Shaffer Dep. 52:12-22 (Ex. 12); Cash Dep. 23:1-4 (Ex. 8); Kowalewski Dep. 22:10-15 (Ex. 9); McKie Dep. 22:22-25 (Ex. 13); M. Rost Dep. 14:9-19 (Ex. 10).

When analyzing the EEOC's claim on behalf of Stephens, the relevant requirements of the dress code are those that apply to R.G.'s funeral directors because that is the position held by Stephens. *See Jespersen*, 444 F.3d at 1106-07 (focusing only on the dress code for the plaintiff's position). R.G. employees understand that the dress code requires funeral directors to wear company-provided suits. *See* Kish Dep. 17:8-22 (Ex. 5); Crawford Dep. 18:3-11 (Ex. 6). Although R.G. has not had an opportunity to employ a female funeral director since Rost's grandmother stopped working for R.G. around 1950, *see* Stephens Dep. 102:4-14 (Ex. 14); T. Rost Aff. ¶ 52-53 (Ex. 1), there is no dispute that R.G. would provide female funeral directors with skirt suits in the same manner that it provides pant suits to male funeral directors, and

8

that those female employees would be required to wear those suits while on the job. *Id.* at ¶ 54. The burden on male funeral directors that must wear a company-issued suit is identical to the burden on female funeral directors that must wear company-issued suits for women.

Moreover, R.G. does not discriminate in its enforcement of the dress code. R.G. has in fact disciplined employees for failing to comply with the dress code, *see* Kish Dep. 54:1-16, 68:22-69:8 (Ex. 5); M. Rost Dep. 37:22-39:6 (Ex. 10), and no evidence indicates that R.G. has enforced it unevenly. Indeed, it is undisputed that if a female funeral director were to say that she planned to wear a men's suit at work, that employee would be discharged just like Stephens was. T. Rost Aff. ¶ 55 (Ex. 1). In addition, neither R.G.'s dress code nor any other R.G. policy requires any employee to act in a masculine or feminine manner. Nor has R.G. ever disciplined an employee for failing to act in a stereotypically masculine or feminine way.

The undisputed evidence thus demonstrates that R.G.'s dress code imposes equivalent burdens on male and female funeral directors. Consequently, the EEOC has failed to present an issue of triable fact, and R.G. is entitled to summary judgment.

### 3.   Neither *Price Waterhouse* nor *Smith* Invalidate R.G.'s Sex-Specific Dress Code.

The Supreme Court's decision in *Price Waterhouse* and the Sixth Circuit's holding in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), do not alter the widely accepted rule acknowledged in *Barker* and *Jespersen* that sex-specific dress and grooming codes

9

are lawful under Title VII when they impose equivalent burdens on men and women. In *Smith*, the Sixth Circuit held that a male firefighter's Title VII complaint, which alleged that his employer took an adverse action against him because he "express[ed] less masculine, and more feminine mannerisms and appearance," stated a claim upon which relief could be granted. 378 F.3d at 572. In *Price Waterhouse*, the Supreme Court held that the plaintiff's employer violated Title VII by denying her a promotion because she was too "macho" and "aggressive" for a woman. 490 U.S. at 235-237, 250-51, 256. In neither case did the plaintiffs refuse to comply with (or challenge) a sex-specific dress code or grooming policy that imposed equal burdens on the sexes.

The absence of such a policy is critical. An important question when resolving sex-discrimination claims is whether the employer treats employees of one sex better than employees of the other sex. *White*, 533 F.3d at 391. And "the ultimate question" is whether the employee "has proven that the defendant intentionally discriminated against him because of his [sex]." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (quotation marks and alterations omitted). An employer's comments that a female employee is too "aggressive" or "macho" (as in *Price Waterhouse*, 490 U.S. at 235, 256) or that a male employee is engaging in "non-masculine behavior" (as in *Smith*, 378 F.3d at 570) show an intent to single out and discriminate against that employee because of his or her sex. But when an employer is simply enforcing a dress code that places equal burdens on the sexes and that applies to all employees in the same position, that does not demonstrate an intent to treat women worse than men

10

(or vice versa). *See Jespersen*, 444 F.3d at 1111-12 ("The [sex-specific dress and grooming] policy does not single out Jespersen. It applies to all of the [employees in her position], male and female."). Indeed, unlike the employers in *Price Waterhouse* or *Smith*, R.G. never indicated that Stephens's behavior was too feminine or not masculine enough. R.G. simply maintained that Stephens, like all other employees, whether male or female, must comply with the dress code. Thus, the EEOC (on behalf of Stephens) cannot show what the plaintiff in *Price Waterhouse* could (and what the plaintiff in *Smith* alleged)—that R.G. treated Stephens differently from other employees because of Stephens's sex.

As the Ninth Circuit has noted, the plaintiff in *Price Waterhouse* established impermissible sex-based discrimination because "the very traits that [the female plaintiff] was asked to hide"—primarily her aggressiveness—"were the same traits *considered praiseworthy* in men." *Jespersen*, 444 F.3d at 1111 (emphasis added). Indeed, the Court in *Price Waterhouse* explained that "[a]n employer who objects to aggressiveness in women but whose positions require this trait places women in an intolerable and impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not." 490 U.S. at 251 In other words, by insisting that female employees conduct themselves in a stereotypically feminine fashion, Price Waterhouse impeded those employees' ability to perform their jobs and advance their careers. That is why the sex stereotyping in *Price Waterhouse* established unlawful discrimination.

But this case is very different. It is instead like *Jesperson*, where the plaintiff tried

11

to use *Price Waterhouse* to invalidate a sex-specific dress and grooming policy that imposed equal burdens on the sexes. But the Ninth Circuit rejected the plaintiff's argument, concluding that "Jespersen's claim . . . materially differs from [the plaintiff's] claim in *Price Waterhouse* because Harrah's grooming standards do not require Jespersen to conform to a stereotypical image that would objectively impede her ability to perform her job requirements as a bartender." 444 F.3d at 1113.

Similarly here, "[t]he record contains nothing to suggest [that R.G.'s dress] standards would objectively inhibit" one sex's "ability to do the job." *Id.* at 1112. R.G.'s dress code does not require Stephens to conform to a sex stereotype that would impede Stephens's ability to perform the duties of a funeral director. On the contrary, as discussed below, R.G. implemented its dress code to further its unique work as a funeral business catering to the needs of its customers. Thus, far from impeding Stephens's ability to perform the requirements of the job, R.G.'s dress code *enabled* Stephens to do the job well.

### 4.    R.G.'s Dress Code Furthers Particular Business Needs in the Funeral Industry.

R.G.'s dress code is driven by the unique nature of the funeral industry, which requires utmost sensitivity to the needs of grieving families—including the need for an environment free from distraction. *See* T. Rost Aff. ¶ 34 (Ex. 1) ("Maintaining a professional dress code that is not distracting to grieving families is an essential industry requirement that furthers their healing process."); T. Rost 30(b)(6) Dep.

12

59:13-60:5 (Ex. 4) (explaining that R.G. instituted its dress code because grieving families and friends that come to R.G. deserve "an environment where they can begin the grieving process and the healing process," and noting that clients "don't need some type of a distraction . . . for them and their family"); Stephens Dep. 91:22-92:9 (Ex. 14) (testifying that professional attire is particularly important in the funeral industry given that "the funeral business is a somber one . . . because somebody has died, and people are . . . mourning the loss"). The dress code ensures that R.G.'s "staff is . . . dressed in a professional manner that's acceptable to the families that [R.G.] serve[s]." T. Rost Dep. 49:22-50:15 (Ex. 3); *see also* T. Rost 30(b)(6) Dep. 57:20-58:6 (Ex. 4) (testifying that the "dress code conforms to what is acceptable attire in a professional manner for the services that [R.G.] provide[s]").

The sex-specific nature of the dress code is also rooted in the business need for professionalism and the absence of distraction. The dress code forbids male funeral directors from wearing the female uniform because allowing them to do that would attract undue attention to themselves and disrupt the grieving process for the clients. T. Rost Aff. ¶ 37 (Ex. 1). Indeed, Stephens himself, while owner of a funeral business, required male employees to wear a coat and tie and required the only female employee to wear a ladies' "business-type dress," described as "[a] ladies' blue jacket." Stephens Dep. 36:1-23 (Ex. 14).

Professional dress takes on heightened significance for funeral directors like Stephens because they often deal directly with grieving family members. For example,

13

funeral directors regularly interact with families throughout the funeral process. Cash Dep. 27:13-28:9 (Ex. 8); Crawford Dep. 14:8-18 (Ex. 6); T. Rost Aff. ¶¶ 16-31 (Ex. 1). Funeral directors also perform sensitive duties like removing the body of the deceased from the family—a particularly distressing experience for family members. T. Rost Aff. ¶¶ 14-15 (Ex. 1). Rost believes that allowing a male funeral director to dress as a female would distract R.G.'s clients mourning the loss of their loved ones, disrupt their healing process, and harm R.G.'s clients and business. *Id.* at ¶¶ 36-40.

These uncontested facts demonstrate that R.G.'s dress code and its decision to dismiss Stephens were motivated by legitimate business needs and the interests of the grieving people that R.G. serves. Thus, neither R.G.'s dress code nor Stephens's discharge violates Title VII's prohibition on sex discrimination.

R.G. must emphasize one concluding point about the EEOC's sex-stereotyping argument: accepting that argument would make it impossible for a company to enforce sex-specific dress or grooming requirements, even if they impose equal burdens on the sexes. Not only would this contravene the well-established Title VII case law that affirms those sorts of sex-specific policies, it would also override employers' freedom to determine how their businesses will present themselves to the public and would jeopardize their success in the marketplace. As Judge Posner has observed, sex-stereotyping case law does not create "a federally protected right for male workers to wear nail polish and dresses . . . , or for female ditchdiggers to strip to the waist in hot weather." *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1067

14

(7th Cir. 2003) (Posner, J., concurring). If it did, Title VII would require employers with legitimate sex-specific dress and grooming policies to allow an employee to dress in a female uniform one day, switch to a male uniform the next day, and return to the female uniform whenever that employee chooses. Congress surely did not have this in mind when it added sex as a protected classification in Title VII.

## II. RFRA Prohibits the EEOC from Compelling R.G. to Violate its Sincerely Held Religious Beliefs.

RFRA provides that the government "shall not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(a). The only exception to this rule is if the government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). The EEOC's attempt to apply Title VII under these circumstances would substantially burden R.G.'s exercise of religion by, among other things, forcing R.G. to violate Rost's religious belief that a person's sex (whether male or female) is an immutable God-given gift and that R.G. cannot pay for or otherwise permit one of its male funeral directors to wear the female uniform at work. Because the EEOC cannot demonstrate that forcing R.G. to violate its faith in this way would satisfy strict scrutiny, RFRA prohibits the EEOC's attempt to apply Title VII here.

### A. RFRA Protects R.G.'s Exercise of Religion.

RFRA applies to "a person's" exercise of religion. 42 U.S.C. §§ 2000bb-1(a), (b).

This includes closely held for-profit corporations like R.G., 94.5 percent of which is owned by Rost, its sole officer and chief executive, with the remaining 5.5 percent split between Rost's two children. *See* T. Rost 30(b)(6) Dep. 26:20-28:25, 78:2-9 (Ex. 4); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768-69 (2014) (concluding that "persons" protected by RFRA include closely held for-profit corporations).

Moreover, R.G. exercises religion through the work that it performs. As the Supreme Court explained in *Hobby Lobby*: "[T]he exercise of religion involves not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons. Business practices that are compelled or limited by the tenets of a religious doctrine fall comfortably within that definition." *Id.* at 2770 (quotation marks and citation omitted).

Rost has been a Christian for over sixty-five years. T. Rost 30(b)(6) Dep. 30:13-22 (Ex. 4). His faith informs the way he operates his business, *id.* at 86:20-22, 87:3-24, which includes hosting funeral services of deep spiritual significance to many, *see id.* at 32:3-13; T. Rost Aff. ¶¶ 10, 20, 26, 30 (Ex. 1). R.G.'s mission statement, which is posted on its website with a Scripture verse, reflects the business's religious purposes:

> R.G. & G.R. Harris Funeral Homes recognize that its highest priority is to honor God in all that we do as a company and as individuals. With respect, dignity, and personal attention, our team of caring professionals strive to exceed expectations, offering options and assistance designed to facilitate healing and wholeness in serving the personal needs of family and friends as they experience a loss of life.

R.G. Webpage (Ex. 15). Long-time employees and managers agree that R.G. is

16

operated according to Rost's religious convictions. Cash Dep. 8:25-9:25, 46:5-18 (Ex. 8) (testifying that he considers R.G. to be a Christian business); Kowalewski Dep. 29:8-10 (Ex. 9) (testifying that he considers R.G. to be a Christian business).

R.G. is a tangible expression of Rost's deeply felt religious calling to care for and minister to the grieving. *See* T. Rost 30(b)(6) Dep. 86:2-19 (Ex. 4) (testifying that he considers his business to be a ministry to grieving families); T. Rost Aff. ¶ 10 (Ex. 1). Rost describes the ministry of R.G. as one of healing and giving comfort—to help families on the "worst day of their lives" and "meet their emotional, relational and spiritual needs . . . in a religious way." T. Rost 30(b)(6) Dep. 86:2-19 (Ex. 4). In addition to the spiritual and emotional care involved in his ministry, Rost ensures that all customers have access to spiritual guidance by placing throughout his funeral homes Christian devotional booklets entitled "Our Daily Bread" and small cards with Bible verses on them called "Jesus Cards," and by making a Bible available to visitors at all his funeral homes. *Id.* at 39:23-40:17; Nemeth Dep. 27:13-28:2 (Ex. 7); Cash Dep. 47:17-24 (Ex. 8); Kowalewski Dep. 31:17-32:21, 33:5-22 (Ex. 9); M. Rost Dep. 28:20-29:19 (Ex. 10); Peterson Dep. 28:18-30:12 (Ex. 11).

Viewing all this evidence of R.G.'s religious exercise in the light of *Hobby Lobby*, this Court should conclude that RFRA's protections apply here. Indeed, just as the businesses in *Hobby Lobby* exercised religion by operating "in [a] manner that reflects [their] Christian heritage," *Hobby Lobby*, 134 S. Ct. at 2770 n.23, R.G. exercises religion by, as its mission statement says, upholding as "its highest priority" the need "to

17

honor God in all that we do as a company." R.G. Webpage (Ex. 15).

**B.    Applying Title VII in this Case Would Substantially Burden R.G.'s Exercise of Religion.**

The EEOC's attempt to apply Title VII here would substantially burden Rost's exercise of religion. A substantial burden exists where the government requires a person "to engage in conduct that seriously violates [his] religious beliefs," *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quotation marks omitted), or where it "put[s] substantial pressure on an adherent . . . to violate his beliefs," *Thomas v. Rev. Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). Rost sincerely believes that a person's sex (whether male or female) is an immutable God-given gift and that it is wrong for a person to deny his or her God-given sex. T. Rost Aff. ¶¶ 41-42 (Ex. 1). He also sincerely believes that he would violate his faith if he were to pay for or otherwise allow one of his funeral directors to wear the uniform for members of the opposite sex while at work. T. Rost Aff. ¶¶ 43-46 (Ex. 1). Thus, compelling R.G. to allow Stephens to wear the uniform for female funeral directors at work would impose a substantial burden on R.G.'s free exercise of religion by compelling Rost to engage in conduct that "seriously violates [his] religious beliefs." *Holt*, 135 S. Ct. at 862.

Moreover, requiring R.G. to permit a male funeral director to wear the uniform for female funeral directors would interfere with R.G.'s ability to carry out Rost's religious mission to care for the grieving. *See* T. Rost 30(b)(6) Dep. 59:8-12, 69:25-70:6 (Ex. 4). This is because allowing a funeral director to wear the uniform for members

18

of the opposite sex would often create distractions for the deceased's loved ones and thereby hinder their healing process. *Id.* at 54:8-17, 59:13-60:9; T. Rost Aff. ¶¶ 36-38 (Ex. 1). And by forcing R.G. to violate Rost's faith, this application of Title VII would significantly pressure Rost to leave the funeral industry and end his ministry. T. Rost Aff. ¶ 48 (Ex. 1). Thus, applying Title VII in this case would substantially burden R.G.'s and Rost's religious exercise of caring for the grieving.

### C.   The EEOC Cannot Demonstrate That Applying Title VII in this Case Would Satisfy Strict Scrutiny.

Having established a substantial burden on religious exercise, the burden shifts to the government to satisfy strict scrutiny. 42 U.S.C. § 2000bb-1(b). RFRA requires that the EEOC "demonstrat[e] that application of [a substantial] burden to the person . . . is the least restrictive means of furthering" a compelling government interest. *Id.* This is an "exceptionally demanding" standard, requiring the government to "show[] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties." *Hobby Lobby*, 134 S. Ct. at 2780. The EEOC cannot make the required showing.

To begin with, the EEOC cannot demonstrate a compelling interest here. RFRA's strict-scrutiny test "look[s] beyond broadly formulated interests justifying the general applicability of government mandates," and instead scrutinizes the specific interest in applying the law to the party before the court and "the asserted harm of granting specific exemptions to [that party]." *Gonzales v. O Centro Espirita Beneficente*

19

*Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006); *see also Hobby Lobby*, 134 S. Ct. at 2779. Thus, the relevant government interest is not a generic interest in opposing discrimination, but the specific interest in forcing R.G. to allow its male funeral directors to wear the uniform for female funeral directors while on the job. Yet the EEOC has no compelling interest in mandating that.

Notably, this case does not involve discriminatory animus against any person or class of persons. R.G. dismissed Stephens because Stephens would no longer comply with the dress code. R.G. was not motivated by animus against people who dress as members of the opposite sex. Indeed, it is undisputed that R.G. would not discharge or otherwise discipline employees who dress as members of the opposite sex on their own time but comply with the dress code while on the job. T. Rost Aff. ¶¶ 50-51 (Ex. 1); T. Rost 30(b)(6) Dep. 137:11-15 (Ex. 4). Moreover, the uncontested evidence demonstrates that R.G.'s dress code and its enforcement of the dress code against Stephens are based on R.G.'s legitimate interest in ensuring that mourners have a space free of disruptions to begin the healing process after the loss of a loved one. T. Rost 30(b)(6) Dep. 139:5-23 (Ex. 4); T. Rost Aff. ¶¶ 36-39 (Ex. 1). Consequently, applying Title VII here would not further a compelling government interest.

Nor can the EEOC satisfy RFRA's least-restrictive-means requirement. A number of available alternatives would allow the government to achieve its goals without violating R.G.'s free-exercise rights. For example, the government could continue to enforce Title VII in most situations, but permit businesses in industries

that serve distressed people in emotionally difficult situations to require that its public representatives comply with the dress code at work. Alternatively, the government could prohibit employers from discharging employees simply because they dress inconsistently with their biological sex outside of work, while allowing employers to dismiss employees who refuse to wear sex-specific uniforms on the job. Because these alternatives (and others) are available, the EEOC cannot meet RFRA's least-restrictive means requirement and thus cannot satisfy strict scrutiny.

## III.  The EEOC Cannot Prevail on its Clothing Allowance Claim on Behalf of a Class of Female Employees.

The EEOC's complaint seeks relief on behalf of "a class of female employees" that were supposedly deprived of work clothes or clothing allowances that R.G. allegedly provides to male employees. Am. Compl. ¶¶ 17-18 (ECF No. 21). R.G. is also entitled to summary judgment on this "clothing allowance" claim.

### A.  The EEOC Lacks Authority to Raise its Clothing Allowance Claim.

The EEOC may include in a Title VII suit only claims that fall within an "investigation reasonably expected to grow out of the [complainant's] charge of discrimination." *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977), *disapproved of on other grounds by Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). The Sixth Circuit has held that a claim falls outside that scope if (1) the claim is "unrelated to [the charging] party" and (2) it involves discrimination "of a kind other than that raised by [the charging party]." *Id.* at 448. These two considerations show that the

21

EEOC's clothing allowance claim does not result from an investigation reasonably expected to grow out of Stephens's charge of discrimination, which alleged unlawful "discharge[] due to [Stephens's] sex and gender identity." Charge of Discrimination, EEOC002748 (Ex. 21).

First, the EEOC's clothing allowance claim on behalf of a class of women is unrelated to Stephens. As previously discussed, Stephens was a biological male while employed at R.G. *See* T. Rost Dep. 21:1-25 (Ex. 3); Def.'s Resp. to Charge at 4-5, EEOC002744-45 (Ex. 22); Kish Dep. 67:9-68:21 (Ex. 5). And there is no dispute that Stephens received, accepted, and wore the men's clothing provided by R.G. *See* Stephens Dep. 59:14-60:1 (Ex. 14); Pl.'s Resp. to Def.'s First Set of Discovery at Request for Admission No. 2 (Ex. 25). Thus, an allegation concerning work clothes or an allowance not provided to a class of females is simply not related to Stephens.

Second, the clothing allowance claim alleges discrimination of a kind other than that raised by Stephens. In the EEOC charge, Stephens alleged a discriminatory "discharge[]." Charge of Discrimination, EEOC002748 (Ex. 21). Stephens did not mention anything about inequality in the clothing or clothing allowance provided by R.G. *Id.* A claim that asserts "discriminat[ion] . . . with respect to . . . compensation, terms, conditions, or privileges of employment" (as the clothing allowance claim does) is of a different kind than a claim that alleges discriminatory "discharge." 42 U.S.C. § 2000e-2(a)(1); *see Bailey Co.*, 563 F.2d at 451 (rejecting "the belief that all forms of unlawful employment discrimination . . . whether involving hiring, discharge,

promotion, or compensation are like or related"); *Nelson v. Gen. Elec. Co.*, 2 F. App'x 425, 428 (6th Cir. 2001) (unpublished) (finding that "the scope of the investigation reasonably expected to grow out of [an] EEOC charge" that alleged unlawful discharge did not include failure to promote). Moreover, a claim of discrimination against a class of women (which the clothing allowance claim is) is separate and distinct from a claim of discrimination against a biological man (which is all Stephens could validly raise in an EEOC charge).

Nor could Stephens have included the clothing allowance claim in an EEOC charge because, as a biological male, Stephens was not "aggrieved" by a clothing policy that supposedly disfavors women. *See* 42 U.S.C. § 2000e-5(b) (noting that EEOC charges are filed by "person[s] claiming to be aggrieved"). While older case law called for a broad reading of what it means to be an "aggrieved" person under other federal statutes, *see Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972), the Supreme Court has mandated a narrower reading of that language in Title VII, *see Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176-77 (2011) (rejecting *Trafficante* in the Title VII context). Therefore, just as Article III standing principles generally forbid a person from raising the "rights or interests of third parties," *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013), so does Title VII's aggrieved person standard, *see Thompson*, 562 U.S. at 177 (concluding that "the term 'aggrieved' [in Title VII] must be construed more narrowly than the outer boundaries of Article III"). Consequently, a

23

biological male could not raise the legal interests of a class of female employees at R.G.

**B.    The EEOC's Clothing Allowance Claim Lacks Merit Because R.G. Does Not Discriminate Between Comparable Male and Female Employees.**

The EEOC's claim that work clothes or clothing allowances were provided to male employees but not to a class of female employees also fails on its merits. To the extent that the class of employees the EEOC references is R.G.'s funeral directors—the position that Stephens held—the EEOC has failed to show disparate treatment. Indeed, R.G. provides suits for all funeral directors. *See* T. Rost Dep. 13:4-14, 47:23-48:11 (Ex. 3); Kish Dep. 64:12-24 (Ex. 5); McKie Dep. 38:19-23 (Ex. 13); Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Ex. 28). Although R.G. has not employed a female funeral director since Rost became the owner (notably, a qualified woman has not applied for an open funeral-director position during that time, *see* T. Rost Aff ¶¶ 52-53 (Ex. 1)), it is undisputed that R.G. would provide female funeral directors with a women's suit of equal quality and value to the men's suit provided to male funeral directors. *Id.* at ¶ 54.

Nor can the EEOC establish sex discrimination with respect to the clothes and clothing allowances that R.G. provides to employees in positions other than funeral director. Male employees who interact with the public in positions other than funeral director (all of whom are part-time) receive one suit from R.G. that is replaced by R.G. when it is no longer serviceable. *See* T. Rost Aff. ¶ 57 (Ex. 1) And female employees

who interact with the public in positions other than funeral director receive an annual clothing allowance of $150 for full-time employees and $75 for part-time employees. T. Rost Dep. 15:16-16:4 (Ex. 3); Nemeth Dep. 13:5-23 (Ex. 7); Kish Dep. 20:16-25 (Ex. 5). This allowance is sufficient to purchase an outfit that conforms to R.G.'s dress code for those positions and to cover the cost of replacing those outfits when they wear out. *See* Kish Aff. ¶¶ 5-7 (Ex. 2). Accordingly, regardless of the sex of the employees in those positions, R.G. provides them with clothing or resources to purchase dress code-complying clothing. Finally, no clothes or clothing allowance is provided for employees, whether male or female, in positions that do not interact with the public. *See* Kish Dep. 56:14-58:4, 65:17-66:18 (Ex. 5). The EEOC thus cannot prevail on its clothing allowance claim because it is unable to show that R.G. discriminates between comparable male and female employees.

## Conclusion

For the foregoing reasons, R.G. respectfully requests that the Court grant summary judgment in its favor.

Dated: April 7, 2016

Respectfully submitted,

/s/ James A. Campbell
James A. Campbell