## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Equal Employment
Opportunity Commission,

           Plaintiff,

v.

R.G. & G.R. Harris Funeral
Homes, Inc.,

           Defendant.

Civil Action No.
2:14-cv-13710
Hon. Sean F. Cox

---

## DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF EQUAL OPPORTUNITY EMPLOYMENT COMMISSION'S MOTION FOR SUMMARY JUDGMENT

---

James A. Campbell (AZ Bar 026737)
Douglas G. Wardlow (AZ Bar 032028)
Joseph P. Infranco (NY Bar 1268739)
Bradley S. Abramson (AZ Bar 029470)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jcampbell@ADFlegal.org
dwardlow@ADFlegal.org
jinfranco@ADFlegal.org
babramson@ADFlegal.org

Joel J. Kirkpatrick (P62851)
JOEL J. KIRKPATRICK, P.C.
843 Penniman Ave., Suite 201
Plymouth, MI 48170
(734) 404-5710
(866) 241-4152 Fax
joel@joelkirkpatrick.com

*Attorneys for Defendant*

**<u>Statement of the Issues Presented</u>**

1.      Whether testimony indicating that Defendant R.G. & G.R. Funeral Homes, Inc. ("R.G.") discharged Charging Party Stephens because Stephens intended to violate R.G's sex-specific dress code constitutes direct evidence of discrimination based on sex in violation of Title VII, when the undisputed evidence establishes that R.G.'s dress code imposes equal burdens on the sexes.

2.      Whether the Religious Freedom Restoration Act ("RFRA") prohibits the Court from applying Title VII to Plaintiff Equal Opportunity Employment Commission's ("EEOC") claims on behalf of Stephens, when the undisputed evidence shows that this application of Title VII would compel R.G. (a closely held corporation) to violate its owner's sincerely held religious beliefs, and when the EEOC cannot demonstrate that applying Title VII under these circumstances is the least restrictive means of furthering a compelling government interest.

3.      Whether the EEOC is entitled to summary judgment on its Title VII claim challenging R.G.'s manner of providing work clothes and clothing allowances to its employees, when the EEOC lacks authority to bring that claim, and when the undisputed evidence demonstrates that R.G. provides equivalent clothing benefits to comparable male and female employees.

## <u>Authority for the Relief Sought</u>

Issue No. 1

> *Barker v. Taft Broadcasting Co.*, 549 F.2d 400 (6th Cir. 1977)

> *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104 (9th Cir. 2006) (en banc)

Issue No. 2

> Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, *et seq.*

> *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)

Issue No. 3

> *EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977)

## <u>Table of Contents</u>

Introduction ...................................................................................................... 1

Argument ........................................................................................................... 2

I.  RG's Enforcement of Its Sex-Specific Dress Code Does Not Constitute
    Impermissible Sex Stereotyping under Title VII ...................................... 2

    A.  The EEOC's Argument Is Fatally Flawed Because It Fails to
        Account for R.G.'s Sex-Specific Dress Code. ............................... 3

    B.  Accepting the EEOC's Argument Would Invalidate All Sex-
        Specific Dress Codes under Title VII. ......................................... 10

    C.  Stephens's Purported Intent to Abide by R.G.'s Dress Code for
        Female Employees Is Not Relevant .............................................. 13

II. RFRA Prohibits the EEOC from Applying Title VII to Force R.G. to
    Violate its Sincerely Held Religious Beliefs. ......................................... 16

    A.  Contrary to the EEOC's Contentions, Applying Title VII in this
        Case Would Substantially Burden R.G.'s Religious Exercise .......... 16

    B.  The EEOC Has Not Shown that Applying Title VII in this Case
        Satisfies Strict Scrutiny. ............................................................ 20

III. The EEOC Is Not Entitled to Summary Judgment on Its Clothing-
     Allowance Claim. ................................................................................. 22

Conclusion ...................................................................................................... 24

# Table of Authorities

**Cases:**

*Barker v. Taft Broadcasting Co.*,
  549 F.2d 400 (6th Cir. 1977) ................................................................ 3, 8

*Burwell v. Hobby Lobby Stores, Inc.*,
  134 S. Ct. 2751 (2014) ................................................ 17, 18, 20, 21, 22

*Carroll v. Talman Federal Savings and Loan Association of Chicago*,
  604 F.2d 1028 (7th Cir. 1979) ........................................................ 8, 9, 12

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978) ............................................................................ 23

*EEOC v. Bailey Co.*,
  563 F.2d 439 (6th Cir. 1977) ................................................................ 23

*EEOC v. Preferred Management Corporation*,
  216 F. Supp. 2d 763 (S.D. Ind. 2002) ................................................ 20

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
  100 F. Supp. 3d 594 (E.D. Mich. 2015) .......................................... 15, 16

*Fagan v. National Cash Register Co.*,
  481 F.2d 1115 (D.C. Cir. 1973) ...................................................... 3, 12

*Frank v. United Airlines, Inc.*,
  216 F.3d 845 (9th Cir. 2000) .................................................................. 7

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) ............................................................................ 20

*Harper v. Blockbuster Entertainment Corporation*,
  139 F.3d 1385 (11th Cir. 1998) .............................................................. 7

*Holt v. Hobbs*,
  135 S. Ct. 853 (2015) .......................................................................... 19

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
  515 U.S. 557 (1995) ............................................................................ 20

*Jespersen v. Harrah's Operating Co.*,
    444 F.3d 1104 (9th Cir. 2006) ...............................................................7, 8, 16

*Los Angeles Department of Water and Power v. Manhart*,
    435 U.S. 702 (1978) ................................................................................ 13

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ............................................................................... 7, 8

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ................................................................... 11

*Tavora v. New York Mercantile Exchange*,
    101 F.3d 907 (2nd Cir. 1996) ..................................................................... 7

*Willingham v. Macon Telegraph Publishing Co.*,
    507 F.2d 1084 (5th Cir. 1975) ................................................................. 13

## Other Authorities:

EEOC Compliance Manual (June 2006) ............................................................ 5

## Introduction

Plaintiff Equal Opportunity Employment Commission ("EEOC") argues that Defendant R.G. & G.R. Harris Funeral Homes, Inc. ("R.G.") violated Title VII's ban on sex discrimination when it discharged Charging Party Stephens for refusing to comply with its sex-specific dress code. In essence, the EEOC asks this Court to hold that R.G.'s sex-specific dress code constitutes unlawful sex stereotyping for the sole reason that it is sex-specific—a holding that would expand Title VII to invalidate all such dress codes. No court has ever gone so far. On the contrary, giving due consideration to an employer's right to manage the public face of its business, courts have long held that sex-specific dress codes are permissible under Title VII when they do not unequally burden one sex. Because there is no dispute that R.G.'s dress code does not unequally burden one sex, it is R.G. (not the EEOC) that is entitled to summary judgment on the EEOC's unlawful discharge claim.

The EEOC also contends that the Religious Freedom Restoration Act ("RFRA") does not protect R.G.'s and its owner Tom Rost's exercise of religion. But the undisputed facts show that R.G.'s exercise of religion is substantially burdened by forcing it to purchase female work attire for a male employee and by requiring it to permit its male funeral directors to wear the female uniform. Because the EEOC cannot show that imposing these burdens is the least restrictive means of furthering a compelling interest, RFRA bars the application of Title VII in this case.

1

Finally, the EEOC claims that R.G.'s clothing allowance treats men more favorably than women. But the EEOC lacks standing to bring that claim, and the undisputed facts show that male and female employees receive equivalent benefits. As a result, it is R.G. (not the EEOC) that is entitled to summary judgment on the clothing allowance claim.

<u>**Argument**</u>

## I.   RG's Enforcement of Its Sex-Specific Dress Code Does Not Constitute Impermissible Sex Stereotyping under Title VII.

The EEOC's argument in this case is deceivingly simple: it contends that R.G.'s "admission" that it discharged Stephens because Stephens stated an intent to wear female attire at work constitutes direct evidence of sexual stereotyping. *See* EEOC Mem. at 26-29. The EEOC, however, is categorically wrong. Its argument skims across a critical, decisive, and undisputed fact: that when Stephens, a biological man, stated an intent to wear the female uniform at work, *Stephens announced an intent to violate R.G.'s sex-specific dress code.* T. Rost 30(b)(6) Dep. 136:22-137:15 (Def. SJ Ex. 4).[1] This sex-specific dress code makes all the difference in the world. To the best of R.G.'s knowledge, no state or federal court has *ever* held that an employer whose dress code is sex-specific violates Title VII simply because men are expected to wear different clothing than women. By shrouding its argument in concepts like gender identity and

---

[1] Defendant's Summary Judgment Exhibits 1 through 34 are attached to Defendant's Memorandum of Law in Support of R.G.'s Motion for Summary Judgment. Defendant's Summary Judgment Exhibits 35 through 40 are attached to Defendant's Memorandum of Law in Opposition to the EEOC's Motion for Summary Judgment.

transgender status, the EEOC attempts to mask the enormity of what it wants this Court to do—to hold that sex-specific dress codes constitute illegal sex stereotyping in all cases, even when the burdens they impose on the sexes are entirely equal. That would depart from the longstanding precedent of the Sixth Circuit and every other circuit in the country.

### A. The EEOC's Argument Is Fatally Flawed Because It Fails to Account for R.G.'s Sex-Specific Dress Code.

As explained in R.G.'s memorandum in support of its motion for summary judgment, *see* Memorandum of Law in Support of R.G. & G.R. Harris Funeral Homes, Inc.'s Motion for Summary Judgment ("Def. SJ Mem.") at 5-7, it has long been held that sex-specific dress codes and grooming policies that impose equal burdens on men and women do not violate Title VII. *See*, *e.g., Barker v. Taft Broad. Co.*, 549 F.2d 400, 401 (6th Cir. 1977) (holding that a sex-specific employee-appearance standard that did not impose an unequal burden on one sex did not violate Title VII); *Fagan v. Nat'l Cash Register Co.*, 481 F.2d 1115, 1117 n.3 (D.C. Cir. 1973) (explaining that when employers adopt policies that take account of "common differences in customary dress of male and female employees, it is not usually thought that there is unlawful discrimination 'because of sex'"). The undisputed facts in this case demonstrate that R.G.'s dress code does not impose an unequal burden on one sex. *See* Def. SJ Mem. at 7-9. Accordingly, R.G.—not the EEOC—is entitled to summary judgment on the EEOC's unlawful discharge claim.

3

At first glance, the arguments of the EEOC and R.G. appear to be like ships passing in the night heading for opposite shores. To understand why the EEOC's argument must be rejected in favor of R.G.'s, it is important to understand the point at which the two arguments necessarily come to grips—namely, R.G.'s sex-specific dress code.

The EEOC attempts to avoid the central importance of R.G.'s dress code by stating that the EEOC "is not asserting that R.G.[]'s dress code violates Title VII— rather the violation is R.G.[]'s insistence that Stephens dress in accord with . . . gender stereotypes." Memorandum in Support of Plaintiff EEOC's Motion for Summary Judgment ("Pl. Mem.") at 30. That argument is nothing more than an attempt to avoid addressing the real issue in this case. Two considerations show that to be true.

First, while the EEOC avoids a direct challenge to R.G.'s sex-specific dress code, there is no dispute that R.G. discharged Stephens because of Stephens's stated intention to violate the dress code at work. This fact is established by Rost's uncontested testimony on behalf of R.G.:

> Q.    Is . . . the reason you fired him . . . because he claimed that he was really a woman; or was it because . . . he would no longer dress as a man?
> A.    That he would no longer dress as a man.
> Q.    And why was that a problem?
> A.    Well, because we -- we have a dress code that is very specific that men will dress as men; in appropriate manner, in a suit and tie that we provide and that women will conform to their dress code that we specify.

4

T. Rost 30(b)(6) Dep. 136:22-137:10 (Def. SJ Ex. 4); *see also id.* at 137:11-15 (Def. SJ Ex. 4) (testifying that R.G. would not have terminated Stephens if Stephens had stated an intention to present as a woman only outside of work); T. Rost Aff. ¶ 50 (Def. SJ Ex. 1) ("It was Stephens's refusal to wear the prescribed uniform and intent to violate the dress code while at work that was the decisive consideration in my employment decision"). Accordingly, if the enforcement of R.G.'s dress code is permissible under Title VII, then R.G. is entitled to summary judgment on the EEOC's unlawful discharge claim.

Second, by claiming that R.G.'s sex-specific dress code "insist[s]" that employees "dress in accord with . . . gender stereotypes," the EEOC merely states a truism. Pl. Mem. at 30. *Of course R.G.*'s sex-specific dress code insists that employees dress sex specifically. That is the entire point. The EEOC's own policies recognize that it does not consider unlawful the sort of benign sex stereotyping inherent whenever an employer adopts a sex-specific dress code that requires men to wear clothing customary for men and women to wear clothing customary for women. For example, in its Compliance Manual, the EEOC acknowledges:

> [A] dress code may require male employees to wear neckties at all times and female employees to wear skirts or dresses at all times. So long as these requirements are suitable and are equally enforced and so long as the requirements are equivalent for men and women with respect to the standard or burden that they impose, there is no violation of Title VII.

EEOC Compliance Manual § 619.4(d) (June 2006).

In this case too, the EEOC tacitly admits that not all sex stereotyping with respect to employee dress violates Title VII. Indeed, the EEOC's claims are unintelligible unless one *relies upon* sex stereotypes. The EEOC contends that R.G. violated Title VII because R.G. refused to permit Stephens to dress consistently with Stephens's claimed gender identity while at work. *See* Pl. Mem. at 31. In other words, the EEOC claims that R.G. should have permitted Stephens to *dress as a woman*. But the only way to discern what it means to dress as a woman is by relying on preconceived notions about how women typically dress. The EEOC's argument thus boils down to this: R.G. engaged in impermissible sex stereotyping with respect to employee dress because R.G. refused to permit Stephens to insist upon sex stereotypes concerning women's dress. The EEOC's own argument thus posits that in some situations, sex stereotypes are acceptable.

What is more, Stephens agrees that certain instances of sex stereotyping should be permissible. When asked at deposition whether R.G. should "be required . . . to allow a male funeral director who was . . . bald and [who had] a neatly trimmed beard and mustache, to wear a professional[] female dress and high heels while meeting with a bereaved family or officiating at a funeral," Stephens responded: "If that's the way *he* was going to present *himself, no.*" Stephens Dep. 126:7-19 (emphasis added) (Def. SJ Ex. 35). Stephens thus testified that R.G. should not be forced to allow a biological man who is clearly male to wear stereotypically female clothes. When asked why not, Stephens explained that the hypothetical funeral director's appearance would not

6

"typically . . . meet the expectations of a female," thus openly acknowledging that R.G. should be allowed to insist on certain sex stereotypes related to employee dress. *Id.* at 126:21-22. Therefore, even Stephens understands that not all sex stereotyping constitutes a societal evil that should be eradicated with the heavy hand of the law.

Courts have also refused to denounce the harmless sex-based generalizations that underlie all sex-specific appearance policies. Indeed, even after *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), courts have permitted employers to distinguish between the sexes in their dress and grooming policies. *See, e.g., Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc) (holding that a sex-specific dress code that required female employees to wear makeup and nail polish did not constitute unlawful sex stereotyping); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) ("An appearance standard that imposes different but essentially equal burdens on men and women is not disparate treatment"); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (holding that an employee-appearance policy prohibiting men, but not women, from wearing long hair does not violate Title VII); *Tavora v. N.Y. Mercantile Exch.*, 101 F.3d 907 (2nd Cir. 1996) (upholding a sex-specific grooming policy).

At bottom, then, the central question in this case is not whether R.G.'s dress code relies on customary distinctions between male and female dress. All sex-specific employee-appearance policies do that. Rather, the critical question is whether R.G.'s sex-specific dress code engages in sex stereotyping *of a type that is impermissible under*

7

*Title VII*. Thus to prevail on its motion for summary judgment, the EEOC must explain why R.G.'s sex-specific dress code is different from other sex-specific dress and grooming policies that have been upheld after *Price Waterhouse* and that the EEOC recognizes are appropriate in its Compliance Manual. But the EEOC does not even attempt to do this.

Nor could it, for there is no meaningful distinction between R.G.'s sex-specific dress code and those other sex-specific policies. That is because R.G.'s dress code, like those other policies, does not impose an unequal burden on one sex. *See* Def. SJ Mem. at 7-9. And that consideration—whether a dress code imposes an unequal burden on one of the sexes—is what matters when determining whether a sex-specific dress code violates Title VII. *See Jespersen*, 444 F.3d at 1110 ("The material issue under our settled law is not whether the policies [for men and women] are different, but whether the policy imposed on the plaintiff creates an 'unequal burden' for the plaintiff's gender"); *Barker*, 549 F.2d at 401 (holding that a plaintiff who failed to allege that his employer's grooming policy imposed an unequal burden on one sex did not state a claim under Title VII); EEOC Compliance Manual § 619.4(d) ("[S]o long as the [dress code] requirements are equivalent for men and women with respect to the standard or burden that they impose, there is no violation of Title VII.").

For example, in *Carroll v. Talman Federal Savings and Loan Association of Chicago*, the Seventh Circuit considered whether Talman Federal's dress policy, which required female employees to wear a "clearly identifiable uniform" but allowed male employees

8

to wear a "variety of normal business attire," violated Title VII's prohibition on sex discrimination. 604 F.2d 1028, 1032-33 (7th Cir. 1979). The court observed that "[s]o long as [employee appearance regulations] find some justification in commonly accepted social norms and are reasonable related to the employer's business needs, such regulations are not necessarily violations of Title VII even though the standards prescribed differ somewhat for men and women." *Id.* at 1032. The court, however, concluded that Talman Federal's dress policy discriminated "based on offensive [sex] stereotypes" and was "demeaning to women" because of the "natural tendency to assume that the uniformed women have a lesser professional status than their male colleagues attired in normal business clothes." *Id.* at 1033. In other words, Talman Federal's dress policy discriminated based on sex in violation of Title VII because it imposed an unequal burden on female employees: the burden of wearing a professionally demeaning uniform.

Here, however, R.G.'s dress code for funeral directors like Stephens does not impose an unequal burden on the sexes because R.G. provides professional suits for all funeral directors, whether male or female. *See* Def. SJ Mem. at 7-9. Thus, discharging Stephens because of Stephens's intent to violate the dress code does not violate Title VII.

**B.** **Accepting the EEOC's Argument Would Invalidate All Sex-Specific Dress Codes under Title VII.**

As discussed above, courts use "equal burdens" analysis to separate unlawful sex-specific dress codes from lawful ones. The EEOC, however, asks this Court to hold that R.G. engaged in impermissible sex stereotyping when it discharged Stephens simply because R.G.'s dress code—the reason for Stephens's discharge—requires that employees "conform to [RG's] expectations of how someone assigned the male [or female] sex at birth" should dress at work. Pl. Mem. at 28. The EEOC thus would have this Court ignore equal-burdens analysis and hold that R.G.'s sex-specific dress code violates Title VII *for the sole reason that it requires employees to dress sex specifically*. But this would amount to holding that all sex-specific dress codes are unlawful under Title VII. Nothing warrants such a significant departure from precedent, congressional intent, and common sense.

No state or federal court of which R.G. is aware has ever held that a sex-specific employee-appearance policy constitutes unlawful sex stereotyping simply because it distinguishes between the sexes. Nor has any state or federal court of which R.G. is aware ever held that an employer engages in sex stereotyping in violation of Title VII simply by requiring its male employees to comply with dress-code requirements for male employees and its female employees to comply with dress-code requirements for female employees.

10

The EEOC relies on *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), a case involving a biological male firefighter who presented as a female, arguing that there the Sixth Circuit held that an employer "violates Title VII when it takes action against an employee based on '[s]ex stereotyping,' that is, 'based on a person's gender non-conforming behavior.'" Pl. Mem. at 27 (quoting *Smith*, 378 F.3d at 575). But the EEOC ignores a critical difference between the facts in *Smith* and those in this case: *Smith* did not involve a sex-specific dress code.[2] The plaintiff in *Smith* alleged that his employer singled him out for adverse treatment because he "express[ed] less masculine, and more feminine mannerisms and appearance." 378 F.3d at 572. Here, however, R.G. did not target Stephens for disparate treatment, but rather evenly applied its sex-specific dress code. *See* Def. SJ Mem. at 10-11. Consequently, *Smith* provides no guidance on the decisive dress-code question at issue in this case.

Many important considerations have led courts to uphold sex-specific dress codes against Title VII challenges, and they counsel against invalidating sex-specific dress codes in the manner urged by the EEOC in this case. First, an employer must be able to control the manner in which it presents its business to the public through its employees. When holding that a company's sex-specific grooming policy did not constitute unlawful sex discrimination, the D.C. Circuit concisely explained the significance of a business's right to control its public image:

---

[2] Indeed, the EEOC fails to cite a single case where an employer's dress or grooming regulations were at issue.

> Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance.

*Fagan*, 481 F.2d at 1124-25. Accepting the EEOC's position would severely hinder the ability of businesses to control their public image. It would, for example, force an employer to allow a biological male employee who is bearded and balding to wear high heels and a dress to work. But even Stephens testified that this would be unacceptable in the funeral industry. Stephens Dep. 126:7-19 (emphasis added) (Def. SJ Ex. 35).

Second, sex-specific dress and grooming policies not only enable businesses to control their public image, they also advance legitimate—and even vital—business purposes. *See Carroll*, 604 F.2d at 1032 (observing that employee-dress policies are often "related to the employer's business needs"). That is certainly the case here. R.G.'s dress code advances its critical interest in creating an environment free from distractions and conducive to the healing process of grieving family members and friends. *See* T. Rost Aff. ¶ 34 (Def. SJ Ex. 1) ("Maintaining a professional dress code that is not distracting to grieving families is an essential industry requirement that furthers their healing process."). R.G. thus does not allow funeral directors to wear the uniform for members of the opposite sex because that would attract undue attention to those funeral directors and disrupt the grieving process for clients. *Id.* at ¶

37 (Ex. 1). Title VII does not require businesses to eliminate dress codes that advance such legitimate business purposes.

Third, nothing suggests that Congress intended Title VII to override all sex-specific dress codes, as the EEOC's argument would do. When enacting Title VII's sex-discrimination prohibition, "Congress sought only to give all persons equal access to the job market, not to limit an employer's right to exercise his informed judgment as to how best to run his shop." *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975). Thus, using Title VII to invalidate a sex-specific dress code that imposes equal burdens on the sexes would stretch the statute far beyond "the intent of Congress to . . . guarantee . . . equal job opportunity for males and females.*" Id.* at 1091; *see also Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) ("In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment *of men and women* resulting from sex stereotypes.") (citation and quotation marks omitted) (emphasis added).

## C.   Stephens's Purported Intent to Abide by R.G.'s Dress Code for Female Employees Is Not Relevant.

The EEOC argues that compelling R.G. to allow male employees to wear the uniform for female employees would not invalidate all sex-specific dress codes because "Stephens fully intended to abide by the female dress code—and to continue to dress in a professional manner at work." Pl. Mem. at 31; *see also* Pl. Mem. at 29

13

(arguing that Stephens "intended to dress professionally, in a manner consistent with [RG's] dress requirements for women") (citing Stephens Dep. 133:6-9 (Pl. Ex. Q)). This is another sleight-of-hand meant to distract from the central issue in this case.

In order to utilize a sex-specific dress code to control the public face of its business, an employer must be able to do two things. First, the employer must be able to dictate sex-differentiated appearance regulations. Second, the employer must be able to set an objective standard for determining the sex of an employee. This means that the employer must be allowed to apply its sex-specific dress code based on the employee's biological sex rather than his or her gender identity. Otherwise, the sex-specific nature of the dress code is not useful for controlling the image of the employer's business.

Consider, for example, a company that requires its male employees to wear men's suits and its female employees to wear skirts or dresses. By the EEOC's logic, a male employee could wear a men's suit to work one day, declare his gender identity to be female and wear a skirt the next day, and then declare himself male and switch back to a men's suit at some point in the future, all without violating the company's "sex-specific" dress code. Thus, if the EEOC is right that an employer may establish sex-differentiated appearance standards but may not apply those standards based on its employees' biological sex, it is meaningless to say that the employer's appearance standards are sex-differentiated in the first instance.

14

Here, the undisputed record evidence establishes that, from the time of hiring through the time of termination, Stephens was a biological male. Indeed, this fact is conclusively established for purposes of this proceeding. *See* Pl.'s Resp. to Def.'s First Set of Discovery at Request for Admission No. 6 (Def. SJ. Ex. 25) (denying that Stephens is "female *and not a male* for purposes of determining whether discrimination on the basis of 'sex' has occurred under Title VII") (emphasis added); Stephens Dep. at 49:5-13 (Def. SJ Ex. 14) (testifying that Stephens "was assigned male at birth"). But if this Court does not allow R.G. to apply its dress code to Stephens based on Stephens's undisputed status as a biological man, it will transform the sex-specificity of R.G.'s dress code into a dead letter that serves no purpose, and in that way, it will undermine R.G.'s ability to control its public face and create distraction-free environments for grieving families.

Underlying the EEOC's arguments is an unstated claim that Stephens is a transgender woman and that, because of that alone, Stephens should have been allowed to comply with R.G.'s dress code for female funeral directors. But arguing that transgendered employees may comply with their employers' sex-specific dress codes in accordance with their gender identity, while non-transgendered employees must comply with those dress codes in accordance with their biological sex, essentially asserts that transgender status is a protected classification entitled to special treatment under Title VII. This Court, however, has already rejected that position in this very case. *See EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 100 F. Supp. 3d 594, 595

(E.D. Mich. 2015) (holding that "transgender status is not a protected class under Title VII"). The EEOC should not be able to avoid the clear import of that holding by subtly repackaging its arguments.

\* \* \*

The foregoing discussion demonstrates that, as a matter of law, Rost's statement that R.G. discharged Stephens as a result of Stephens's intent to wear the female uniform in violation of R.G.'s sex-specific dress code does not constitute direct evidence of unlawful sex stereotyping under Title VII. This Court should thus refuse to hold that R.G.'s enforcement of its dress code constitutes unlawful sex stereotyping simply because it is sex-specific. Rather, the Court should follow the lead of other courts (like the Ninth Circuit in *Jespersen*), apply equal-burdens analysis to R.G.'s dress code, and determine that R.G.—not the EEOC—is entitled to summary judgment on the unlawful discharge claim.

## II. RFRA Prohibits the EEOC from Applying Title VII to Force R.G. to Violate its Sincerely Held Religious Beliefs.

### A. Contrary to the EEOC's Contentions, Applying Title VII in this Case Would Substantially Burden R.G.'s Religious Exercise.

The EEOC contends that its attempt to apply Title VII in this case does not substantially burden or even affect R.G.'s religious exercise. *See* Pl. Mem. at 18-24. Yet the EEOC's arguments rely upon mischaracterizations of R.G.'s RFRA defense. This Court should thus reject the EEOC's position and conclude that R.G. has established the prerequisites of its RFRA defense: (1) religious exercise; and (2) substantial burden.

16

*Religious Exercise.* As R.G. explained in its memorandum in support of its motion for summary judgment, Rost and R.G. engage in religious exercise that RFRA protects. *See* Def. SJ Mem. at 15-18. The EEOC tries to reduce R.G.'s religious exercise to its "placement of devotionals and cards for the public." Pl. Mem. at 20. But the undisputed facts establish that Rost's life work of serving those who mourn the loss of their loved ones—that is, his very operation of R.G.—constitutes protected religious exercise. The Supreme Court has recognized that "the exercise of religion involves . . . acts that are engaged in for religious reasons," which include "[b]usiness practices that are compelled . . . by the tenets of a religious doctrine." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2770 (2014) (quotation marks and citation omitted). Here, the record shows that Mr. Rost's "faith compels [him]" to "serve grieving people" as he does through R.G., *see* T. Rost Aff. ¶ 10 (Def. SJ Ex. 1) ("I believe God has called me to serve grieving people . . . , and my faith compels me to do this important work."). Accordingly, R.G. is not just a business; it is the embodiment of Rost's religious exercise.

Furthermore, another more specific aspect of R.G.'s and Rost's religious exercise is at issue in this case. R.G. operates consistently with Rost's sincerely held religious beliefs that a person's sex (whether male or female) is an immutable God-given gift and that people should not deny or attempt to change their sex. *Id.* at ¶ 42. Because of these convictions, R.G. will not purchase female attire for a male funeral director (or male attire for a female funeral director), or otherwise permit a funeral

17

director to wear the uniform for members of the opposite sex. *See id.* at ¶¶ 43-46. Supreme Court precedent confirms that this qualifies as religious exercise protected under RFRA. For just as Hobby Lobby's religiously motivated business practice of declining to pay for its employees' abortion-inducing drugs is protected religious exercise under RFRA, *see Hobby Lobby*, 134 S. Ct. at 2766, 2775, so is R.G.'s religiously motivated decision not to purchase female attire for a male funeral director.[3]

These facts about R.G.'s religious exercise show that the EEOC is incorrect when it claims that R.G. discharged Stephens simply because Stephens "does not act as Rost's beliefs dictate [Stephens] should." Pl. Mem. at 20. On the contrary, the uncontested evidence establishes that Rost would not have discharged Stephens if Stephens had stated an intent to present as a woman on Stephens's own time while complying with R.G.'s dress code at work. Rost 30(b)(6) Dep. 137:11-15 (Def. SJ Ex. 4); T. Rost Aff. ¶¶ 50-51 (Def. SJ Ex. 1). Thus, the decisive factor in R.G.'s employment decision was Stephens's intent to dress in female attire *while representing R.G.* because what Stephens wears at work implicates Rost's religious convictions and R.G.'s dress code. T. Rost Aff. ¶ 50 (Def. SJ Ex. 1).

*Substantial Burden.* As R.G. demonstrated in its memorandum in support of its motion for summary judgment, applying Title VII in this case would substantially

---

[3] The EEOC curiously argues that RFRA protects only "religious exercise, not simply beliefs." Pl. Mem. at 18. This argument is irrelevant because, as explained above, R.G. engages in protected religious exercise. But to the extent that it is relevant, it is flatly wrong because "the exercise of religion" protected by RFRA *includes* "belief and profession" as well as "the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Hobby Lobby*, 134 S. Ct. at 2770.

18

burden R.G.'s and Rost's religious exercise. *See* Def. SJ Mem. at 18-19. The EEOC disagrees, claiming that "Rost's religious exercises are not affected" by Stephens's wearing the uniform for female funeral directors, Pl. Mem. at 20, and that "RG[] cannot establish a substantial burden" on its exercise of religion, *id.* at 21.

But the undisputed facts demonstrate that forcing R.G. to allow Stephens to wear the uniform for female funeral directors would require Rost "to engage in conduct that seriously violates [his] religious beliefs," *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015), thus imposing a substantial burden on R.G.'s exercise of religion. *See* Def. SJ Mem. at 18. Moreover, as R.G. has already shown, requiring it to permit a male funeral director to wear the uniform for female funeral directors would directly interfere with—and thus impose a substantial burden on—R.G.'s ability to carry out Rost's religious exercise of caring for the grieving. *Id.* at 18-19. It would do this in at least two ways. First, allowing a funeral director to wear the uniform for members of the opposite sex would often create distractions for the deceased's loved ones and thereby hinder their healing process. T. Rost 30(b)(6) Dep. 54:8-17, 59:13-60:9 (Def. SJ Ex. 4); T. Rost Aff. ¶¶ 36-38 (Def. SJ Ex. 1). Second, by forcing R.G. to violate Rost's faith, this application of Title VII would significantly pressure Rost to leave the funeral industry and end his ministry to grieving people. T. Rost Aff. ¶ 48 (Def. SJ Ex. 1). Thus, applying Title VII here would substantially burden R.G.'s and Rost's religious exercise of caring for the grieving.

### B.    The EEOC Has Not Shown that Applying Title VII in this Case Satisfies Strict Scrutiny.

The EEOC argues that even if this application of Title VII substantially burdens Rost's religious exercise, that burden is nonetheless justified because it purportedly serves a compelling government interest in the "'eradication of employment discrimination based on the criteria identified in Title VII.'" Pl. Mem. at 25-26 (quoting *EEOC v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763, 810 (S.D. Ind. 2002)). This argument is flawed because RFRA's strict-scrutiny test focuses not on generalized state interests like the eradication of discrimination in employment, but rather on the state's specific interest in applying the law at issue to the party before the court and "the asserted harm of granting specific exemptions to [that party]." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006); *see also Hobby Lobby*, 134 S. Ct. at 2779 (similar); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 578 (1995) (analyzing a nondiscrimination law's "apparent object" when "applied . . . in the way it was done [t]here" rather than its general purpose of prohibiting discrimination on all the statutorily "proscribed grounds"). Thus, the relevant question is whether the state has a specific compelling interest in forcing R.G. to allow its male funeral directors to wear the uniform for female funeral directors while on the job. But as R.G. has shown in its memorandum in support of its motion for summary judgment, the EEOC has no interest in requiring that. *See* Def. SJ Mem. at 19-20.

20

This need for a particularized analysis of the asserted governmental interest explains why the EEOC's reliance on dicta in *Hobby Lobby* is unavailing. *See* Pl. Mem. at 24-25. The majority in *Hobby Lobby* addressed the principal dissent's contention that "discrimination in hiring, for example on the basis of race, might be cloaked as religious practice to escape legal sanction." 134 S. Ct. at 2783 (citing *id.* at 2804-05 (Ginsberg, J., dissenting)). The EEOC argues that the *Hobby Lobby* majority's rejection of the dissent's contention somehow means that "Title VII serves a compelling governmental interest which cannot be overridden by RFRA" in any case. Pl. Mem. at 24. The EEOC is incorrect.

The majority in *Hobby Lobby* stated that its decision "provides no . . . shield" against cloaked racial discrimination because the government "has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal." 134 S. Ct. at 2783. The majority spoke only of racial discrimination, not discrimination based on sex, sex stereotyping, or transgender status. And it certainly did not discuss the government's interest in applying Title VII to force a funeral home to allow its funeral directors to dress in the uniform for members of the opposite sex. *Hobby Lobby* thus did not address what is at issue here.

Notably, the Court in *Hobby Lobby* confirmed that RFRA's strict-scrutiny analysis demands a "focused inquiry" that "look[s] beyond broadly formulated interests" and scrutinizes the government's particularized interest in applying its law

21

under the specific circumstances. *Id.* at 2779 (quotation marks and alterations omitted). *Hobby Lobby* thus leaves no doubt that each court must scrutinize the facts before it to determine whether that particular application of a government mandate satisfies strict scrutiny. Therefore, the EEOC's attempt to invoke *Hobby Lobby* in its effort to bypass the particularized analysis that *Hobby Lobby* mandates is unpersuasive.

Finally, it is telling that the EEOC does not even attempt to explain why forcing R.G. to allow its funeral directors to wear uniforms for members of the opposite sex satisfies RFRA's least-restrictive-means requirement. The EEOC's silence on this point is not at all surprising because "[t]he least-restrictive-means standard is exceptionally demanding." *Id.* at 2780. Thus, for the reasons explained in R.G.'s memorandum in support of its motion for summary judgment, this Court should find that the EEOC has not satisfied the least-restrictive-means requirement, *see* Def. SJ Mem. at 20-21, conclude that R.G. must prevail on its RFRA defense, and declare that R.G. (not the EEOC) is entitled to summary judgment on the EEOC's unlawful discharge claim.[4]

## III.   The EEOC Is Not Entitled to Summary Judgment on Its Clothing-Allowance Claim.

The EEOC also contends that R.G. violates Title VII through a purported

---

[4] The EEOC also argues that the application of Title VII in this case does not violate R.G.'s free-exercise rights under the First Amendment. *See* Pl. Mem. at 15-17. Because RFRA provides more expansive protection for R.G.'s free-exercise rights than the First Amendment does, and because R.G. is entitled to summary judgment on its RFRA defense, the Court need not reach R.G.'s First Amendment free-exercise defense. *See Hobby Lobby*, 134 S. Ct. at 2785 (concluding, after finding a RFRA violation, that it was "unnecessary to reach the First Amendment claim").

"policy of paying for the work clothing of male employees" but not "provid[ing] a comparable benefit to female employees." Pl. Mem. at 32. This argument also fails.

First, the EEOC does not have standing to maintain a claim with respect to R.G.'s clothing allowance on behalf of a class of female employees. As explained in R.G.'s memorandum in support of its motion for summary judgment, *see* Def. SJ Mem. at 21-24, because the clothing-allowance claim is "unrelated to [the charging] party" and involves discrimination "of a kind other than that raised by [the charging party]," it is not the result of an "investigation reasonably expected to grow out of [Stephens's] charge of discrimination." *EEOC v. Bailey Co.*, 563 F.2d 439, 446-448 (6th Cir. 1977), *disapproved of on other grounds by Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). Consequently, the EEOC lacks authority to raise the claim in this lawsuit.

Second, contrary to the EEOC's assertions, the undisputed facts demonstrate that R.G. provides equivalent clothing benefits to male employees and female employees. For funeral directors, it is R.G.'s policy to provide all of them (whether male or female) with company-issued suits. *See* Def. SJ Mem. at 24. For employees who interact with the public in positions other than funeral director, even though the male employees receive company-issued suits and the female employees receive a clothing allowance, both sexes receive clothing benefits that enable them to conform to the dress code and replace worn clothing as necessary. *See id.* at 24-25. And for employees in positions that do not interact with the public, no one (regardless of their sex) receives clothes or a clothing allowance. *See id.* at 25.

23

The EEOC claims that the benefits are not comparable because the clothing allowance for female employees who interact with the public in positions other than funeral director is only $150 for full-time employees and $75 for part-time employees, while the suit purchased for comparable male employees is worth "in excess of $200." Pl. Mem. at 33. This argument ignores that these female employees are given the allowance every year, while the men's suits are used until they wear out. Thus, if a part-time male employee has his suit for three years, the value of what he receives during that time is approximately $225, and a part-time female employee who works during those same three years has equally received clothing allowance checks in the amount of $225. Or if that male employee's suit lasts for five years, which is common for part-time male employees, *see* T. Rost Dep. 18:10-24 (Def. SJ Ex. 3), the value of what he receives ($225) is far less than what a comparable female employee obtains over that time ($375). So the EEOC's suggestion that R.G.'s clothing benefits discriminate against female employees is simply mistaken.

For these reasons, R.G.—not the EEOC—is entitled to summary judgment on the EEOC's clothing-allowance claim.

## Conclusion

For the foregoing reasons, R.G. respectfully requests that the Court deny the EEOC's motion for summary judgment.

Dated: May 2, 2016

Respectfully submitted,

/s/ Douglas G. Wardlow
Douglas G. Wardlow

James A. Campbell (AZ Bar 026737)
Douglas G. Wardlow (AZ Bar 032028)
Joseph P. Infranco (NY Bar 1268739)
Bradley S. Abramson (AZ Bar 029470)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jcampbell@ADFlegal.org
dwardlow@ADFlegal.org
jinfranco@ADFlegal.org
babramson@ADFlegal.org

Joel J. Kirkpatrick (P62851)
JOEL J. KIRKPATRICK, P.C.
843 Penniman Ave., Suite 201
Plymouth, MI 48170
(734) 404-5710
(866) 241-4152 Fax
joel@joelkirkpatrick.com

*Attorneys for Defendant*

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I electronically filed the foregoing Opposition to EEOC's Motion for Summary Judgment and all accompanying papers (which include the Exhibits in Support of this Opposition) with the Clerk of the Court using the ECF system, which will send notification of this filing to all parties in the case.

/s/ Douglas G. Wardlow
Douglas G. Wardlow

26