## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Equal Employment
Opportunity Commission,

            Plaintiff,

v.

R.G. & G.R. Harris Funeral
Homes, Inc.,

            Defendant.

Civil Action No.
2:14-cv-13710
Hon. Sean F. Cox

---

## DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S
## COUNTER-STATEMENT OF DISPUTED FACTS

---

Defendant R.G. & G.R. Harris Funeral Homes, Inc. ("R.G.") submits the following Counter-Statement of Disputed Facts. In accordance with Chamber rules, R.G. first either admits or denies each assertion in Plaintiff Equal Employment Opportunity Commission's ("EEOC") Statement of Material Facts Not in Dispute. Second, pursuant to Chamber Rule on Motion Practice C(2)(B), R.G. avers that the facts in dispute are not material to the claims at issue.

**R.G.'s Response to the EEOC's Statement of Undisputed Facts**

<u>Termination Claim</u>

1.    *Defendant ("RGGR") hired Aimee Stephens in October 2007. Ex. Q, Stephens Dep. at 50:8-13.*

Deny. R.G. hired William Anthony Beasley Stephens in October 2007. At all times during employment at R.G., Stephens's legal name was William Anthony Beasley Stephens. Stephens Dep. 49:5-13, 79:22-80:10 (Def. SJ Ex. 14);[1] T. Rost Dep. 21:1-25 (Def. SJ Ex. 3); Def.'s Resp. to Charge at 5, EEOC002744-45 (Def. SJ Ex. 22); Kish Dep. 67:9-68:21 (Def. SJ Ex. 5). After leaving R.G., Stephens changed legal names from William Anthony Beasley Stephens to Aimee Australia Stephens. Order and Petition for Name Change, EEOC002816-17 (Def. SJ Ex. 24).

2.    *Aimee Stephens served as a funeral director/embalmer for the Defendant ("RGGR") for nearly six years under the name of Anthony Stephens. Ex. Q, Stephens Dep. at 56:14-15.*

Admit.

3.    *Before RGGR hired her, Stephens was a licensed funeral director in North Carolina. Ex. Q, Stephens Dep. at 20:1-3.*

Admit that Stephens was a licensed funeral director in North Carolina. Deny to the extent that the female pronoun "her" is used to describe Stephens as a female during employment at R.G. for purposes of Title VII because:

   a)   The EEOC *denied* that Stephens is "female *and not a male* for purposes of

---

[1] Defendant's Summary Judgment Exhibits 1 through 34 are attached to Defendant's Memorandum of Law in Support of R.G.'s Motion for Summary Judgment. Defendant's Summary Judgment Exhibits 35 through 40 are attached to Defendant's Memorandum of Law in Opposition to the EEOC's Motion for Summary Judgment.

determining whether discrimination on the basis of 'sex' has occurred under Title VII." Pl. Resp. to Def. First Req. for Adms. No. 6 (Def. SJ Ex. 25) (emphasis added); and

b) Prior to and at all times during Stephens's employment at R.G., Stephens was male. *Id.*; *see also* Stephens Dep. 49:5-13, 79:22-80:10 (Def. SJ Ex. 14); T. Rost Dep. 21:1-25 (Def. SJ Ex. 3); Def.'s Resp. to Charge at 5, EEOC002744-45 (Def. SJ Ex. 22); Kish Dep. 67:9-68:21 (Def. SJ Ex. 5).

R.G. hereby incorporates this denial to all uses of a female pronoun by the EEOC to describe Stephens during Stephens's employment at R.G.

4.    *Michigan required her to complete a six-month apprenticeship before she could become a licensed funeral director in Michigan. Ex. Q, Stephens Dep. at 45:20-46:10.*

Admit.

5.    *RGGR hired Stephens as a director/embalmer following her six month apprenticeship. Ex. Q, Stephens Dep. at 59:4-8.*

Admit.

6.    *On July 31, 2013, Stephens informed RGGR's owner, Thomas Rost, in a letter that she was undergoing a gender transition from male to female and intended to dress in appropriate business attire at work as a woman from then. Ex. B, Rost 30(b)(6) Dep. at 109:24-110:10.*

Deny this fact as stated. Admit that on July 31, 2013, Stephens provided R.G.'s owner, Thomas Rost ("Rost"), a letter in which Stephens stated (among other things) a clear intent to stop presenting as a male and start presenting as a female by wearing female clothing at work. Deny that Stephens wearing female clothing would have

3

been appropriate business attire at work for a biological male funeral director. T. Rost Aff. ¶¶ 39-40 (Def. SJ Ex. 1); T. Rost 30(b)(6) Dep. 54:8-17, 59:13-60:9, 61:2-18, 139:5-23, 142:23-143:12 (Def. SJ Ex. 4); EEOC T. Rost Aff. ¶ 21, EEOC002763 (Def. SJ Ex. 16).

7.    *Stephens's gender identity is female. Ex. Q, Stephens Dep. at 133:6-133:9.*

Deny. The cited testimony affirms Stephens's intent to conform to the female uniform but does not speak to gender identity. According to the EEOC's definitions of "gender identity" ("inner sense of being male or female") and "gender expression" ("outward appearance, behavior, and other such characteristics that are culturally associated with masculinity and femininity"), the EEOC's citation supports only that Stephens intended to present as a female by wearing the female uniform and does not describe a gender identity, i.e., "[an] inner sense of being male or female." Pl.'s Resp. to Def.'s First Set of Discovery at Interrogatory No. 3 (Def. SJ Ex. 25); Stephens Dep. at 133:6-9 (Def. SJ Ex. 35). Regardless, Stephens's professed gender identity is immaterial to the Title VII claims at issue in this case.

8.    *Stephens intended to abide by RGGR's dress code for its female employees. Ex. Q, Stephens Dep. at 133:6-133:9.*

Admit.

9.    *Stephens took a previously scheduled vacation from July 31, 2013, through August 15, 2013. Ex. B, Rost 30(b)(6) Dep. at 111:19-112:2.*

Deny. The vacation referred to was scheduled to take place after August 15, 2013. Stephens "worked for the next two weeks" after presenting the letter to Rost on July

31, 2013, and R.G. discharged Stephens before Stephens's planned vacation. Stephens

Dep. 75:1-76:6 (Def. SJ Ex. 14).

10.    *On August 15, 2013, Rost fired Stephens. Ex. Q, Stephens Dep. at 80:1-80:6.*

Admit.

11.    *Rost privately fired Stephens in person at RGGR's Garden City location. Ex. B, Rost 30(b)(6) Dep. at 126:1-10.*

Admit.

12.    *After firing Stephens, Rost informed RGGR's employees of his decision via facsimile. Ex. B, Rost 30(b)(6) Dep. at 127:19-128:10.*

Admit.

13.    *Rost made the decision to terminate Stephens by himself without consulting anyone else. Ex. B, Rost 30(b)(6) Dep. at 118:1-6.*

Admit.

14.    *Rost admitted that "the specific reason" he fired Stephens was that Stephens was going to present as a female: "he [Stephens] was no longer going to represent himself as a man. He wanted to dress as a woman." Ex. B, Rost 30(b)(6) Dep. at 135:24-136:3.*

Deny this fact as stated because it cites a truncated portion of Rost's testimony. Rost

testified that "the specific reason" he discharged Stephens was that Stephens "wanted

to dress as a woman" at work, and that that was "a problem" because it violated

R.G.'s dress code for on-duty employees. T. Rost 30(b)(6) Dep. at 135:24-137:15

(Def. SJ Ex. 4).

15.    *Rost testified that he objected to Stephens's use of "Aimee" in the charge of discrimination, saying that this made him "uncomfortable…because he's a man." Ex. O, Rost Dep. at 23:4-8.*

Admit that when asked by the EEOC's attorney, "Were you uncomfortable with the fact that the name Aimee Stephens was being used in the charge?," Rost agreed that he was because Rost had only known Stephens to be a "man" and to be "Anthony Stephens" for the six years Stephens was employed at R.G. T. Rost Dep. at 23:4-8 (Def. SJ Ex. 36); Stephens Dep. 50:8-17, 74:13-75:24, 76:2-10, 79:22-80:10 (Def. SJ Ex. 14); T. Rost 30(b)(6) Dep. 126:1-25 (Def. SJ Ex. 4).

16.   *Stephen's job performance did not motivate Rost's decision to terminate her. Ex. B, Rost 30(b)(6) Dep. at 108:1-109:9.*

Admit.

17.   *Rost admitted the only reason he fired Stephens was become (sic) she intended to present as a woman at work. Ex. B, Rost 30(b)(6) Dep. at 135:24-137:10.*

Deny this fact as stated. Admit that one reason Rost discharged Stephens was Stephens's intent to dress in the female funeral director uniform at work. Deny that that is the "only reason." *See* R.G.'s Statement of Material Facts Not in Dispute ¶ 75 ("The specific reasons that Rost dismissed Stephens were (1) that Stephens 'refus[ed] to comply with [R.G.'s] male dress/grooming policy' and (2) that allowing Stephens to wear the uniform for female funeral directors would have 'violated . . . [Rost's] sincerely held religious beliefs.' Def.'s Resp. to Pl.'s First Set of Discovery at Interrogatory No. 3 (Def. SJ Ex. 27); T. Rost 30(b)(6) Dep. 54:1-17, 55:1-14, 135:24-136:3 (Def. SJ Ex. 4).").

18.   *Rost admitted that RGGR's dress code comports with his religious views. Ex. B, Rost 30(b)(6) Dep. at 57:20-59:12.*

6

Admit.

Religious-Based Defenses

19.    *Rost owns 94.5% of the shares of Defendant and was the sole decision-maker who terminated Stephens's employment. Ex. B, Rost 30(b)(6) Dep. at 26:20-26:24.*

Admit.

20.    *To the extent RGGR has free exercise or religious freedom rights at issue in this litigation, they are those of Rost. Ex. B, Rost 30(b)(6) Dep. at 29:8-13.*

Deny this fact as stated. Admit that Rost's free-exercise rights are at issue in this litigation, but deny as a matter of law that R.G.'s rights are not at issue. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014) ("[W]e hold that a federal regulation's restriction on the activities of a for-profit closely held corporation must comply with RFRA.").

21.    *Rost is a Christian. Ex. B, Rost 30(b)(6) Dep. at 29:20-22.*

Admit.

22.    *Rost's exercise of his religious beliefs at or through RGGR is limited to (1) the placement of "Daily Bread" devotional books and (2) cards bearing the word "Jesus" on the front with New Testament verses on the back. Ex. B, Rost 30(b)(6) Dep. at 39:23-40:17; Ex. D, Daily Bread Devotional; and Ex. E, Jesus card.*

Deny this fact as stated. Admit that Rost and R.G. exercise their religion though "(1) the placement of 'Daily Bread' devotional books and (2) cards bearing the word 'Jesus' on the front with New Testament verses on the back." Deny that Rost's and R.G.'s exercise of religion is so limited. The following undisputed facts show that Rost's and R.G.'s religious exercise is much broader than that:

a) Rost "practice[s] [his] faith through [his] businesses." T. Rost 30(b)(6) Dep. 86:20-22, 87:3-24 (Def. SJ Ex. 4); T. Rost Aff. ¶¶ 7, 10 (Def. SJ Ex. 1).

b) R.G.'s Mission Statement states that "R.G. & G.R. Harris Funeral Homes recognize that its highest priority is to honor God in all that we do as a company and as individuals." T. Rost 30(b)(6) Dep. 80:20-81:3 (Def. SJ Ex. 4); R.G. Webpage (Def. SJ Ex. 15).

c) Rost leads prayer at R.G. business meetings and corporate events. Kowalewski Dep. 60:13-61:18 (Def. SJ Ex. 9); M. Rost Dep. 27:6-15 (Def. SJ Ex. 10).

d) Rost operates R.G. as a ministry to serve grieving families while they endure some of the most difficult and trying times in their lives. T. Rost 30(b)(6) Dep. 86:2-19 (Def. SJ Ex. 4); T. Rost Aff. ¶ 7 (Def. SJ Ex. 1).

e) Rost sincerely believes that God has called him to serve grieving people. He sincerely believes that his purpose in life is to minister to the grieving, and his religious faith compels him to do that important work. T. Rost Aff. ¶ 10 (Def. SJ Ex. 1); T. Rost 30(b)(6) Dep. 86:2-19 (Def. SJ Ex. 4).

f) Rost describes R.G.'s ministry as one of healing—to help families on the "worst day of their lives" by "meet[ing] their emotional, relational and spiritual needs . . . in a religious way." T. Rost 30(b)(6) Dep. 86:2-19 (Def. SJ Ex. 4).

g) Rost operates R.G. consistent with his religious beliefs that "a person's sex is an immutable God-given gift and that people should not deny or attempt to change their sex." T. Rost Aff. ¶ 42 (Def. SJ Ex. 1). Because of these beliefs,

he cannot "permit one of R.G.['s] funeral directors to deny their sex while acting as a representative of [R.G.]." *Id.* at ¶ 43; *see also id.* at ¶ 45; and he cannot purchase female attire for a male employee to wear at work or male attire for a female employee to wear at work, *see id.* at ¶ 46.

23.  *Stephens's intent to present consistently with her gender identity violated Rost's sincerely held religious beliefs and was an express motivation for her firing. Exhibit T, Defendant's Responses to Plaintiff's First Set of Discovery Requests, Interrogatory 3.*

Deny this fact as stated. Admit that it would have violated Rost's sincerely held religious beliefs for him to pay for and to permit Stephens to wear the female uniform provided by R.G. while on duty as a funeral director, and admit that Stephens's stated intent to wear the female uniform at work was an express motivation for Stephens's discharge. Deny the implication in this statement that Stephens's gender expression outside of work was a factor in Stephens's discharge. T. Rost Aff. ¶ 50 (Def. SJ Ex. 1); T. Rost 30(b)(6) Dep. 137:11-15 (Def. SJ Ex. 4) (indicating that Rost would not have dismissed Stephens if Stephens had expressed a belief in being a woman and an intent to dress or otherwise present as a woman outside of work).

24.  *Stephens' continued employment at RGGR would not have affected Rost's ability to continue placing either the Daily Bread or Jesus cards in the funeral home. Ex. B, Rost 30(b)(6) Dep. at 57:2-19.*

Admit.

25.  *RGGR is not affiliated with or part of any church. Ex. B, Rost 30(b)(6) Dep. at 31:15-31:19.*

Admit.

26. *The articles of incorporation for RGGR do not avow any religious purpose. Ex. R, Articles of Incorporation.*

Admit.

27. *There are no religious views or values that employees are expected to uphold. Ex. B, Rost 30(b)(6) Dep. at 81:18-21.*

Admit that R.G.'s employees are not required to hold any religious views. Deny that employees are not expected to uphold R.G.'s values, including those reflected in its mission statement, which "is to honor God in all that we do as a company and as individuals." T. Rost 30(b)(6) Dep. 80:20-81:3 (Def. SJ Ex. 4); R.G. Webpage (Def. SJ Ex. 15).

28. *RGGR's employees do not regard RGGR as a Christian business enterprise. Ex. H, Nemeth Dep. at 19:18-20:4; Ex. I, Kish Dep. at 55:10-55:25.*

Deny this fact as stated. Admit that employees testified that there were no Bible studies or prayer groups at R.G. Deny that "RGGR's employees" generally do not regard R.G. as a Christian business. *See* Cash Dep. 8:25-9:25, 46:5-18 (Def. SJ Ex. 8) (testifying, as a person who has worked at R.G. for over twenty-five years, that he believes R.G. is a Christian business based on the mission statement, the Bible verse on the website, and his knowledge that Rost has been "affiliated with the church over the years"); Kowalewski Dep. 29:8-10 (Def. SJ Ex. 9) (similar).

29. *RGGR is open 24 hours per day, 365 days per year, and Easter is not a paid holiday. Ex. B, Rost 30(b)(6) Dep. at 88:20-89:21.*

Admit.

30. *RGGR serves clients of every religion (various Christian denominations, Hindu, Muslim,*

*Jewish, native Chinese religions) or none at all. Ex. J, Cash Dep. at 41:19-42:10; Ex. K, Crawford Dep. at 32:18-34:9; Ex. B, Rost 30(b)(6) Dep. at 33:19-36:23.*

Admit.

31.   *Employees have worn Jewish head coverings when holding a Jewish funeral service. Ex. K, Crawford Dep. at 34:20-35:4; Ex. J, Cash Dep. at 42:7-12.*

Admit.

32.   *RGGR keeps Catholic religious items (crucifixes, kneelers, candles) in storage until requested by Catholic (or occasionally non-Catholic) clients. Ex. L, Matthew Rost Dep. at 36:20-25; Ex. J, Cash Dep. at 42:19-25; Ex. H, Nemeth Dep. at 26:1-10; Ex. K, Crawford Dep. at 34:20-35:11; Ex. F, Shaffer Dep. at 34:16-35:10; Ex. M, McKie Dep. at 29:12-25; 31:11-14.*

Admit.

33.   *While the rooms where funerals are held on site are called "chapels," they are decorated to look like a living room and are not decorated with visible religious fixtures. This is done deliberately to avoid offending people of different religions. Ex. B, Rost 30(b)(6) Dep. at 84:2-85:6.*

Admit.

34.   *RGGR does not sponsor publications which call people to join the Christian faith or celebrate Christian holidays. Ex. B, Rost 30(b)(6) Dep. at 31:20-32:2; 39:2-16.*

Admit that other than placing the Bible, the "Daily Bread" devotionals, and the "Jesus Cards" in public places in the funeral homes, R.G. does not currently sponsor other publications that call people to join the Christian faith or celebrate Christian holidays. T. Rost 30(b)(6) Dep. 39:23-40:17 (Def. SJ Ex. 4); Nemeth Dep. 27:13-28:2 (Def. SJ Ex. 7); Cash Dep. 47:17-24 (Def. SJ Ex. 8); Kowalewski Dep. 31:17-32:21, 33:5-22 (Def. SJ Ex. 9); M. Rost Dep. 28:20-29:19 (Def. SJ Ex. 10); Peterson Dep. 28:18-30:12 (Def. SJ Ex. 11).

35.    *There are no prayer groups or Bible studies at RGGR. Ex. J, Cash Dep. at 47:8-16; Ex. N, Kowalewski Dep. at 30:11-12; Ex. H, Nemeth Dep. at 19:18-24; Ex. I, Kish Dep. at 55:10-20; Ex. M, McKie Dep. at 27:8-15.*

Admit.

36.    *Rost does not have any religion-based exclusions to employee medical coverage, such as refusing to pay for abortions. Ex. B, Rost 30(b)(6) Dep. at 92:17-93:20.*

Admit.

37.    *Rost employs people from different religious denominations, and of no religious beliefs at all. Ex. B, Rost 30(b)(6) Dep. at 40:18-42:11; Ex. F, Shaffer Dep. at 33:10-12.*

Admit.

38.    *Rost recognizes that employing individuals with beliefs different from his own does not constitute an endorsement of their beliefs or activities by the Funeral Home. Ex. B, Rost 30(b)(6) Dep. at 41:20-42:18.*

Admit that Rost does not endorse or consider himself to endorse his employees' beliefs or non-employment-related activities, but state that Rost does consider his employees to represent him and R.G. while on duty and acting as employees. EEOC T. Rost Aff. ¶¶ 13-14, EEOC 002760-2761 (Def. SJ Ex. 16); T. Rost Aff. ¶ 32 (Def. SJ Ex. 1); EEOC Kish Aff. ¶ 15, EEOC 002767 (Def. SJ Ex. 17).

39.    *Rost does not impose his own Christian beliefs on employees, stating that he would not terminate an employee because he or she had sex outside of marriage, had an abortion, or committed adultery. Ex. B, Rost 30(b)(6) Dep. at 138:2-138:16.*

Deny this fact as stated. Admit that Rost does not impose his Christian beliefs on employees' non-employment activities. Deny that Rost's Christian beliefs do not affect his operation of R.G. or some of the requirements on employees. T. Rost 30(b)(6) Dep. 86:20-22, 87:3-24 (Def. SJ Ex. 4); T. Rost Aff. ¶¶ 7, 10 (Def. SJ Ex. 1).

For example, aspects of R.G.'s requirements for employee dress are motivated by Rost's religious beliefs. T. Rost Aff. ¶¶ 41-46 (Def. SJ Ex. 1); T. Rost 30(b)(6) Dep. 57:20-59:12, 69:12-24 (Def. SJ Ex. 4).

40.   *The business climate causes Rost to act against his religious ideals: the practice of cremation instead of holding a funeral. His Christian beliefs align him toward performing funerals. Ex. B, Rost 30(b)(6) Dep. at 51:1-22.*

Deny this fact as stated. Admit that Rost performs cremations, that "for [himself] and for [his] family," he "personally" prefers traditional funeral ceremonies, and that under his "personal religious values," he "believe[s] in the traditional funeral." Deny that Rost violates his "religious ideals" in order to perform cremations for others, and deny the general insinuation that Rost regularly "act[s] against his religious ideals" when operating R.G. Rost 30(b)(6) Dep. at 51:1-22 (Def. SJ Ex. 4).

41.   *However, the industry has changed, with a growing preference for cremations, and he needs to do them to stay in business. Id. at 52:14-53:10.*

Admit, except with respect to the caveats stated in the response to the prior paragraph.

<u>Clothing Allowance Claim</u>

42.   *RGGR provides its male employees who interact with clients, including both funeral directors and runners, with suits and ties free of charge. Ex. I, Kish Dep. at 17:25-19:5; 57:12-58:4; and Ex. O, Rost Dep. at 51:1-8.*

Admit.

43.   *A runner is someone who obtains death certificates and aids in body removals. Ex. I, Kish Dep. at 18:25-19:5.*

Admit.

13

44.   *For the past 10 years RGGR has purchased these suits and ties from Sam Michael's. Ex. O, Rost Dep. at 13:22-24.*

Admit.

45.   *Sam Michael's invoices RGGR directly for payment. Ex. I, Kish Dep. at 19:6-19.*

Admit.

46.   *Prior to Sam Michael's RGGR used a different retailer to provide clothing benefits for male employees. Ex. O, Rost Dep. at 15:9-15.*

Admit that R.G. has purchased employee uniforms at Sam Michael's for approximately ten years, but state that the cited testimony does not support the assertion made. R.G. assumes the EEOC was referring to testimony like that found at Rost. Depo. 19:25-20:1 (Def. SJ Ex. 3).

47.   *Upon hire, full-time male employees are provided two suits and two ties and part-time male employees are provided one suit and one tie. Ex. O, Rost Dep. at 14:9-19.*

Deny this fact as stated. Admit that upon hire full-time male employees that interact with the public are provided two suits and two ties, and part-time male employees who interact with the public are provided one suit and one tie, but deny that male employees who do not interact with the public are provided suits and ties. Kish Dep. 56:14-58:4, 65:17-66:18 (Def. SJ Ex. 5).

48.   *After the initial suits are provided, RGGR replaces suits as needed. Ex. O, Rost Dep. at 14:20-15:2.*

Admit.

49.   *Typically, male employees receive one or two new suits a year on an as needed basis. Ex. N, Kowalewski Dep. at 22:21-23:1; Ex. J, Cash Dep. at 21:4-8; Ex. F, Shaffer Dep. at 44:3-15; Ex. K, Crawford Dep. at 19:1-3.*

14

Deny this fact as stated. Admit that male employees who interact with the public receive replacement suits as they wear out. Deny that male employees who interact with the public typically receive one or two new suits a year because frequency of replacement for a suit ranges from one year to ten years. T. Rost Dep. 13:25-15:2, 18:10-19:8 (Def. SJ Ex. 3); Crawford Dep. 19:1-3 (Def. SJ Ex. 6); Kowalewski Dep. 22:21-23:1 (Def. SJ Ex. 9).

50.   *Male employees go to Sam Michael's to be fitted and obtain their suits during work hours. Ex. F, Shaffer Dep. at 44:10-15.*

Deny this fact as stated. Admit that uniforms paid for by R.G. may be fitted at Sam Michael's by employees during work hours. Deny that this benefit is limited to male employees. T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); Kish Dep. 64:12-24 (Def. SJ Ex. 5); Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Def. SJ Ex. 28); McKie Dep. 38:19-23 (Def. SJ Ex. 13).

51.   *These clothing benefits also include tailoring of the suit jackets and pants and repairs to the suit as needed. Ex. I, Kish Dep. at 19:20-24.*

Admit.

52.   *RGGR spends about $225 per suit and $10 per tie. Ex. O, Rost Dep. at 15:3-6.*

Admit.

53.   *RGGR's dress code lists "Funeral Director on Duty" in the section governing what male employees must wear. Ex. S, Dress Code.*

Admit.

54.   *Until October 2014, after the EEOC filed this lawsuit, no work-clothing benefits were provided to female employees. Starting in October 2014 female employees have been given an*

*annual clothing stipend ranging from $75 for part-time employees to $150 for full-time employees. Ex. O, Rost Dep. at 15:16-16:12; Ex. I, Kish Dep. at 20:16-21:3; Ex. P, clothing allowance checks; and Dkt. 1.*

Deny this fact as stated. Admit that until October 2014, no work-clothing benefits were available to non-funeral-director female employees, and that starting in October 2014 non-funeral-director female employees who interact with the public have been given an annual clothing stipend ranging from $75 for part-time employees to $150 for full-time employees. Deny that before October 2014, R.G. did not provide work-clothing benefits for any female employees because at all times R.G.'s policy has been to provide dress-code-conforming uniforms (suits) to all funeral directors whether male or female. T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); Kish Dep. 64:12-24 (Def. SJ Ex. 5); Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Def. SJ Ex. 28); McKie Dep. 38:19-23 (Def. SJ Ex. 13); T. Rost Aff. ¶ 54 (Def. SJ Ex. 1).

55.  *Rost acknowledges, however, that the attire it provides to its male employees costs RGGR approximately $235 (part-time) to $470 (full-time) per employee. Ex. O, Rost Dep. at 15:3-6.*

Admit.

56.  *RGGR based the amount of clothing allowance for its female employees on what it determined was "fair," rather than the amount it paid for its male employees' clothes. Ex. O, Rost Dep. at 45:12-20.*

Deny this fact as stated. Admit that R.G. based the amount of clothing allowance for non-funeral-director female employees who interact with the public on what it determined was "fair" in the sense that R.G. deemed the selected amount sufficient to

16

purchase clothing that conforms to R.G.'s dress code for those positions, Kish Aff. ¶ 5 (Def. SJ Ex. 2); Rost Dep. at 45:12-20 (Def. SJ Ex. 3), while providing those employees more flexibility to wear their preferred style of clothing within the limits of the dress code. T. Rost Depo. 46:7-47:19 (Def. SJ Ex. 3); Nemeth Depo. 24:6-25:5 (Def. SJ Ex. 37); Crawford Depo. 40:23-41:11 (Def. SJ Ex. 38); McKie Depo. 37:11-38:18, 40:15-25 (Def. SJ Ex. 39).

57.     *Rost characterizes the female clothing allowance as "little." Ex. O, Rost at 15:16-17.*

Admit.

58.     *Unlike Defendant's male employees who receive their clothing benefits immediately upon hire, Defendant's female employees are required to wait until the next clothing allowance checks are issued for all female employees. Ex. I, Kish Dep. at 25:11-15, 38:15-25.*

Deny this fact as stated. Admit that the uniforms provided to all funeral directors and to male employees who interact with the public are provided immediately upon hire, and admit that non-funeral-director female employees who interact with the public receive a stipend issued annually. Kish Dep. at 25:11-15, 38:15-25 (Ex. 40). Deny to the extent that this fact as stated ignores that R.G.'s policy is to provide female funeral directors with a uniform just like it provides a uniform for male funeral directors. Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Def. SJ Ex. 28); T. Rost Aff. ¶ 54 (Def. SJ Ex. 1); Kish Dep. 64:12-24 (Def. SJ Ex. 5); McKie Dep. 38:19-23 (Def. SJ Ex. 13).

59.     *RGGR issues the female employees a separate check each year for their clothing stipend. Ex. I, Kish Dep. at 25:11-15.*

Deny this fact as stated. Admit that R.G. issues to non-funeral director female employees who interact with the public a separate check each year for their clothing stipend. Kish Dep. at 25:11-15, 38:15-25 (Ex. 40); T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); Kish Dep. 64:12-24 (Def. SJ Ex. 5); Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Def. SJ Ex. 28); McKie Dep. 38:19-23 (Def. SJ Ex. 13). Deny to the extent that this fact as stated ignores that R.G.'s policy is to provide female funeral directors with a uniform just like it provides a uniform for male funeral directors. Def.'s Resp. to Pl.'s Second Set of Discovery at Interrogatory No. 14 (Def. SJ Ex. 28); T. Rost Aff. ¶ 54 (Def. SJ Ex. 1); Kish Dep. 64:12-24 (Def. SJ Ex. 5); McKie Dep. 38:19-23 (Def. SJ Ex. 13).

60.   *RGGR does not issue a clothing allowance stipend to female employee (sic) upon hire. Ex. I, Kish Dep. at 38:15-25.*

Admit.

61.   *Female employees do not purchase clothes while at work. Ex. M, McKie Dep. at 25:19-21.*

Admit.

62.   *Since October 2014, male employees continue to receive suits and ties at no cost as before. Ex. O, Rost Dep. at 13:4-9.*

Deny this fact as stated. Admit that male employees who interact with the public have continued to be issued uniforms since October 2014. Deny that all male employees receive suits. Kish Dep. 56:14-58:4, 65:17-66:18 (Def. SJ Ex. 5).

**Statement of Material Facts in Dispute for Trial**

R.G. avers that none of the facts in dispute is material to the legal claims at issue.

Dated: May 2, 2016

                                          Respectfully submitted,

                                          /s/ Douglas G. Wardlow
                                          Douglas G. Wardlow

                                          James A. Campbell (AZ Bar 026737)
                                          Douglas G. Wardlow (AZ Bar 032028)
                                          Joseph P. Infranco (NY Bar 1268739)
                                          Bradley S. Abramson (AZ Bar 029470)
                                          ALLIANCE DEFENDING FREEDOM
                                          15100 N. 90th Street
                                          Scottsdale, AZ 85260
                                          (480) 444-0020
                                          (480) 444-0028 Fax
                                          jcampbell@ADFlegal.org
                                          dwardlow@ADFlegal.org
                                          jinfranco@ADFlegal.org
                                          babramson@ADFlegal.org

                                          Joel J. Kirkpatrick (P62851)
                                          JOEL J. KIRKPATRICK, P.C.
                                          843 Penniman Ave., Suite 201
                                          Plymouth, MI 48170
                                          (734) 404-5710
                                          (866) 241-4152 Fax
                                          joel@joelkirkpatrick.com

                                          *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2016, I electronically filed the foregoing Counter-Statement of Disputed Facts with the Clerk of the Court using the ECF system, which will send notification of this filing to all parties in the case.

/s/ Douglas G. Wardlow
Douglas G. Wardlow