IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 2:14-CV-13710 |
| v. | ) ) | Hon. Sean F. Cox Magistrate Judge |
| R.G. & G.R. HARRIS FUNERAL HOMES, INC., | ) ) ) | David R. Grand |
| Defendant. | ) | |

**Plaintiff's Counter-Statement of Disputed Facts**

1.  Admitted.

2.  The Commission denies that this is a material fact, but does not deny the truth of the assertion.

3.  The Commission denies that this is a material fact, but does not deny the truth of the assertion.

4.  Admitted.

5.  The Commission denies that this is a material fact, but does not deny the truth of the assertion.

6.  The Commission denies that this is a material fact, and leaves Defendant to its proofs.

7.  The Commission denies that this is a material fact, and leaves Defendant to its proofs.

8.  Admitted.

9.  Admitted.

10. Admitted.

11. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

12. The Commission denies that this is a material fact, and leaves Defendant to its proofs.

13. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

14. Admitted.

15. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

16. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

17. Admitted.

18. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

19. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

20. Denied. The Commission denies the characterization that Rost practices his faith through his business. While the Commission is not challenging the sincerity of Rost's religious convictions, there is evidence that RGGR is not a religious organization. Doc. 51, Pg ID 608-612.

21. The Commission admits this language appears on the website; however, this language occupies just a small portion of a large website, and Kish testified that this language was copied from the mission statement of another funeral home. Ex. I, Kish Dep. (Doc. 51-10) 31:22-32:3.

22. The Commission admits this language appears on the website; however, this language occupies just a small portion of a large website.

23. Denied. The Commission denies the characterization that Rost is providing access to "spiritual guidance," but admits that Rost places the daily bread and Jesus cards at RGGR's locations. RGGR serves clients from a variety of faiths, and even those

3

who do not subscribe to any faith. Ex. J, Cash Dep. (Doc. 51-11) 41:19-42:10; Ex. K, Crawford Dep. (Doc. 51-12) 32:18-34:9; Ex. B Rost 30(b)(6) (Doc. 51-3) 33:19-36:23. Notably, continuing to employee Stephens would not interfere with Rost's ability to continue to provide the cards and booklets. Ex. X, Rost 30(b)(6) Dep. 56:16-20. Kowalewski's deposition, at the lines to which RGGR cites, states that he did not know if Rost or George Crawford places these two items at the funeral home. Ex. Y, Kowalewski Dep. 32:9-21.

24. Admitted in part. The Commission admits that Rost leads a generic pre-meal prayer at monthly off-site breakfast meetings which are attended only by RGGR's three managers, and once a year during an all-staff retreat. Outside of these pre-meal prayers, Rost does not lead any RGGR employee in prayer. Ex. J, Cash Dep. (Doc. 51-11) 49:2-51:15; Ex. N, Kowalewski Dep. (Doc. 51-15) 60:13-61:20.

25. Denied. The Commission denies that this is a material fact. Furthermore, it is overly broad, and outside of Rost's personal knowledge to testify to. To the extent RGGR is making a

4

sweeping generalization regarding death, funerals, and grief, this is impermissible expert testimony. RGGR serves clients from a variety of faiths, and even those who do not subscribe to any faith. Ex. J, Cash Dep. (Doc. 51-11) 41:19-42:10; Ex. K, Crawford Dep. (Doc. 51-12) 32:18-34:9; Ex. B, Rost 30(b)(6) Dep. (Doc. 51-3) 33:19-36:23.

26. The Commission denies that this is a material fact, but admits that Cash testified in this manner. However, RGGR's citation to Cash's deposition is wrong; the correct cite is: 44:17-46:18.

27. The Commission denies that this is a material fact. Kowalewski's cited testimony is that RGGR is a Christian business because its employees are "church-going people of different faiths, and to me a church-going person constitutes a Christian." Ex. Y, Kowalewski Dep. 29:8-14. Just preceding this testimony, Kowalewski testified that he has never had any sort of religious conversation with Rost. Ex. Y, Kowalewski Dep. 29:5-7.

28. Admitted.

29. Denied. Rost did not testify in this manner, but RGGR submits a post-deposition affidavit asserting, among other things, this statement. However, the record does not support Rost's assertion, because at the time of Stephens's termination, RGGR was not providing any clothing benefit to its female employees. Ex. AA, Kish Dep. 22:8-22:10. Rost has never paid for a female funeral directors clothing because Rost's grandmother retired before Rost obtained control of the company. Also, Stephens was going to comply with the dress code. Ex. Q, Stephens Dep. (Doc. 51-18) 133:6-133:9.

30. Denied. The Commission denies the characterization that RGGR is a Christian business. While the Commission is not challenging the sincerity of Rost's religious convictions, there is evidence that RGGR is not a religious organization. Doc. 51, Pg ID 608-612. To the extent RGGR is making a sweeping generalization regarding grieving families this is impermissible expert testimony. RGGR serves clients from a variety of faiths, and even those who do not subscribe to any faith. Ex. J, Cash

Dep. (Doc. 51-11) 41:19-42:10; Ex. K, Crawford Dep. (Doc. 51-12) 32:18-34:9; Ex. B Rost 30(b)(6) (Doc. 51-3) 33:19-36:23.

31. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

32. Denied. The Commission denies the characterization that RGGR is a ministry. While the Commission is not challenging the sincerity of Rost's religious convictions, there is evidence that RGGR is not a religious organization or a ministry. Doc. 51, Pg ID 608-612. RGGR serves clients from a variety of faiths, and even those who do not subscribe to any faith. Ex. J, Cash Dep. (Doc. 51-11) 41:19-42:10; Ex. K, Crawford Dep. (Doc. 51-12) 32:18-34:9; Ex. B Rost 30(b)(6) Dep. (Doc. 51-3) 33:19-36:23.

33. The Commission denies that this is a material fact. To the extent RGGR trains its staff regarding emotional, rational, and spiritual needs of its clients, it does so in a non-religious manner. See Ex. AJ, The Experience of Healing Diagrams. Shaffer testified that he does not do any type of grief counseling. Ex. AB, Shaffer Dep. 48:23-49:17.

7

34.  Denied. The Commission denies the characterization that
     RGGR is a ministry. Further, there is ample testimony that
     RGGR does not limit its services to only those consistent with
     Rost's Christian faith. The religious rites, custom, and rituals at
     RGGR are not exclusive to the Christian faith. Ex. J, Cash Dep.
     (Doc. 51-11) 41:19-42:10; Ex. K, Crawford Dep. (Doc. 51-12)
     32:18-34:9; Ex. B, Rost 30(b)(6) (Doc. 51-3) 33:19-36:23.
     Indeed they are completely dependent on requests by the family
     without influence from Rost. Additionally, RGGR does not
     perform these rites, customs, or rituals. RGGR employs a
     celebrant for occasions where the family requests someone to
     conduct the service if they do not have an officiant—typically
     when the family is not religious. Ex. Z, Cash Dep. 43:21-44:2.

35.  Admitted.

36.  Admitted.

37.  The Commission denies that this is a material fact, but does
     not deny the truth of the assertion.

38.  The Commission denies that this is a material fact, and objects
     to the characterization that funeral directors often meet with

8

families. Client interaction is the primary job of the managers
at each location and not that of the funeral directors. Ex. Z,
Cash Dep. 25:15-28:25; Ex. Y, Kowalewski Dep. 39:1-42:1; Ex.
AB, Shaffer Dep. 24:13-25:19.

39. The Commission denies that this is a material fact. These
duties are the primary responsibilities of the managers and not
funeral directors. Ex. Z, Cash Dep. 25:15-28:25; Ex. Y,
Kowalewski Dep. 39:1-42:1; Ex. AB, Shaffer Dep. 24:13-25:19.

40. The Commission denies that this is a material fact. These
duties are the primary responsibilities of the managers and not
funeral directors. Ex. Z, Cash Dep. 25:15-28:25; Ex. Y,
Kowalewski Dep. 39:1-42:1; Ex. AB, Shaffer Dep. 24:13-25:19.

41. The Commission denies that this is a material fact. The
managers are primarily responsible for client contact. Ex. Z,
Cash Dep. 25:15-28:25; Ex. Y, Kowalewski Dep. 39:1-42:1; Ex.
AB, Shaffer Dep. 24:13-25:19.

42. The Commission denies that this is a material fact, and admits
that Defendant accurately quotes from its own interrogatory
response. However, the managers are primarily responsible for

9

client contact and communications. Ex. Z, Cash Dep. 25:15-28:25; Ex. Y, Kowalewski Dep. 39:1-42:1; Ex. AB, Shaffer Dep. 24:13-25:19.

43. The Commission denies that this is a material fact, and admits that Defendant accurately quotes from its own interrogatory response. RGGR's language is suggestive of impermissible gender-based stereotyping regarding Stephens presenting consistent with her gender identity and not the sex she was assigned at birth.

44. The Commission denies that this is a material fact. The managers are primarily responsible for client contact and communications. Ex. Z, Cash Dep. 25:15-28:25; Ex. Y, Kowalewski Dep. 39:1-42:1; Ex. AB, Shaffer Dep. 24:13-25:19.

45. The Commission denies that this is a material fact. The managers are primarily responsible for client contact and communications. Ex. Z, Cash Dep. 25:15-28:25; Ex. Y, Kowalewski Dep. 39:1-42:1; Ex. AB, Shaffer Dep. 24:13-25:19.

46. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

47. The Commission denies that this is a material fact, but does not deny the truth of the assertion.

48. Denied. First, The Commission denies that this statement is material. Second, Rost testified that Stephens's job performance was not a factor in his decision to terminate her. Ex. B Rost 30(b)(6), Dep. (Doc. 51-3) 109:1-9. Crawford testified that the reason Rost fired Stephens was because "he wanted to leave on vacation and then come back as a woman." Ex. AC, Crawford Dep. 27:12-21.

49. Admitted.

50. The Commission admits that the handbook says this. However, Rost testified that he requires female employees to wear a skirt and not pants. Ex. AD, Rost Dep. 24:8-23.

51. Admitted.

52. Denied. The Commission denies this statement as it is unclear what "biological sex" means. The Commission admits that RGGR administers its dress code based in its perception of someone's sex. Perception is undefined, and, in particular, could not be related to an individual's chromosomes, birth sex,

11

or genitalia because RGGR does not know any of these three.
RGGR does not ask employees what their "biological sex" is in
order to administer its dress code.

53. The Commission admits that Kish and Crawford testified to
this. However, RGGR's citation to Kish's testimony does not
support this assertion. The correct cite is Kish Dep. 17:25-19:5.
Similarly, the correct Crawford citation is Crawford Dep. 18:17-
21. RGGR has never had a female funeral director, so this
testimony is mere speculation. Ex. AD, Rost Dep. 47:20-48:2.

54. Denied. The Commission denies this statement. Rost is not an
expert witness testifying to the funeral-industry standards.
Further, whether the industry standard is for women to wear a
dark-colored blouse and jacket, and men to wear matching
suits is not material. Rost also admitted that his requirement
that RGGR's female employees where skirts is not an industry
standard. Ex. AD, Rost Dep. 51:13-16.

55. Denied. The Commission denies this statement. Rost is not an
expert witness who can testify to the grieving process.
Additionally, this statement is not material. Stephen was not

12

intending to draw attention to herself—to the contrary, she was fully sensitive to the concerns of the grieving and intended to continue being courteous and compassionate. Ex. X, Rost 30(b)(6) Dep. 75:5-76:5, 108:21-24; Ex. AE Stephens Dep. 90:1-90:2, Ex. A, Stephens Letter (Doc. 51-2).

56. Denied. This statement is not material. First, it is unclear how Stephens presenting consistent with her gender identity can violate a belief. Second, to the extent RGGR is trying to invoke RFRA, RFRA protects religious exercise and not beliefs. 42 U.S.C. § 2000bb(1)(a)). Third, RGGR has never had a female funeral director. Ex. AD, Rost Dep. 51:13-16. So it is not known whether RGGR would provide a female funeral director a suit. Also, until October 2014, RGGR did not provide any clothing compensation for its female employees. Ex. O, Rost Dep. (Doc. 51-16) 15:16-16:12; Ex. I, Kish Dep. (Doc. 51-10) 20:16-21:3.

57. The Commission denies that this fact is material, but otherwise admits it.

58. The Commission denies that this fact is material, but otherwise admits it.

13

59. Denied. First, this statement is not material. Second, the
    Commission denies this statement because it mischaracterizes
    Stephens's testimony. Ex. AE, Stephens Dep. 90:15-17 ("Q.
    Okay. So in your experience, the industry standards is to have
    professional clothing? A. Yes.") Stephens testified that funeral
    homes can require their employee to dress in a professional
    manner at work. Additionally, the Commission objected to the
    line of questioning RGGR cites as calling for a legal conclusion.
    Ex. AE, Stephens Dep. 118:19-25.

60. The Commission denies that this fact is material, but otherwise
    admits that RGGR reprimanded one employee for violating its
    dress code. Instead of a suit coat the employee wore a jacket
    that said "body snatcher" to retrieve a decedent. Ex. Y,
    Kowalewski Dep. 25:17-26:13; Ex. AA, Kish Dep. 54:1-55:1.

61. Admitted.

62. The Commission denies that this fact is material, but otherwise
    admits it.

63. The Commission denies that this fact is material, but otherwise
    admits it.

64. The Commission denies that this fact is material, but otherwise admits it.

65. The Commission denies that this fact is material, but otherwise admits it.

66. The Commission denies that this fact is material, but otherwise admits it.

67. Admitted.

68. The Commission denies that this fact is material, but otherwise admits it.

69. Admitted.

70. Denied. Stephens intended to abide by the dress code, and neither Rost nor Stephens discussed the dress code when she presented him the letter or when Rost terminated her. Ex. X, Rost 30(b)(6) Dep. 110:7-112:16, 126:1-127:10.

71. Denied. Stephens testified that Rost said "it was not going to work" and nothing further. Ex. AE, Stephens Dep. 75:23-76:17. The Commission admits that Rost terminated Stephens on August 15, 2013. The offered severance agreement also

15

required that Stephens waive her Title VII sex-discrimination rights. Ex. AF, Severance Agreement.

72. The Commission denies that this fact is material, but otherwise admits it. Stephens's letter stated: "At the end of my vacation on August 26, 2013, I will return to work as my true self, Amiee Australia Stephens, in appropriate business attire." Ex. A, Stephens Letter.

73. Denied. Additionally, this paragraph contains several factual assertions. The Commission admits that Stephens did not accept RGGR's proposed severance agreement. But Stephens testified that she continued to work through the end of her shift on August 15, 2013, and did not leave the facility immediately after her conversation with Rost. Ex. AE, Stephens Dep. 76:18-21.

74. The Commission denies that this fact is material, but otherwise admits it.

75. Denied. This paragraph contains two statements of alleged facts. The Commission denies the characterization of Rost's decision to terminate Stephens. First, Rost never told Stephens

16

he was firing her because of RGGR's dress code. Ex. X, Rost

30(b)(6) Dep. 126:1-127:10. Second, the alleged religious

defense was not raised until long after the litigation started. Ex.

X, Rost 30(b)(6) Dep. 141:1-142:16.

76. Admitted.

77. Denied. This paragraph contains multiple statements of alleged

facts. First, Rost never proposed that Stephens could continue

to work—in men's clothing— prior to his deposition. Indeed, the

possibility was raised by defense counsel as a "hypothetical,"

and the Commission objected on the grounds of speculation.

Ex. X, Rost 30(b)(6) Dep. 137:11-15.  Also Rost testified that he

may have terminated Stephens even if she had worn men's

clothes if word got out that she presented as a female off the

job. Ex. AD, Rost Dep. 30:18-31:20. The Commission admits

that RGGR fired Stephens because Rost perceived that

Stephens would be dressing inconsistent with Rost's gender-

based stereotypes for someone he perceived as male should

present. Ex. X, Rost 30(b)(6) Dep. 135:24-136:3.

78. The Commission denies that this is a material fact.
    Additionally, Rost is not an expert who can testify to the
    grieving and healing process. This statement also reveals Rost's
    stereotyping mindset. Stephen was not intending to draw
    attention to herself—to the contrary, she was fully sensitive to the
    concerns of the grieving and intended to continue being courteous
    and compassionate. Ex. X, Rost 30(b)(6) Dep. 75:5-76:5, 108:21-24;
    Ex. AE Stephens Dep. 90:1-90:2, Ex. A, Stephens Letter (Doc. 51-2).

79. The Commission denies that this is a material fact. The
    Commission admits that Rost testified in this manner, but
    Rost's beliefs cannot trump Title VII's mandates.

80. Denied. At the time of Stephens's termination, RGGR was not
    providing any clothing benefit to its female employees. Ex. AA,
    Kish Dep. 22:8-10. Also, since RGGR has never employed a
    female funeral director, Rost's testimony that RGGR would
    provide female funeral directors a uniform is not supported by
    the record, and is speculative.

81. The Commission denies that this is a material fact.
    Additionally, in two depositions Rost did not testify to this, and
    now asserts this in a last-minute affidavit.

82. The Commission denies that this is a material fact.
    Additionally, bathroom access was never discussed prior to
    Stephens's termination, and Rost even admits it is merely a
    hypothetical reason. Ex. X, Rost 30(b)(6) Dep. 76:16-24.

83. The Commission denies that this fact is material, but otherwise
    admits it.

84. Denied. Under Rost's ownership and management, RGGR has
    never had a female funeral director. Rost testified that he would
    provide a suit to a female funeral director, however this
    assertion cannot be supported by the record since RGGR has
    never had a female funeral director, or at least not in over 65
    years. RGGR's dress code lists "Funeral Directors on Duty" in
    the section governing what male employees must wear. Ex. S,
    Dress Code. Rost's deposition testimony at 13:4-15 talks about
    men being provided suits, and not funeral directors.

85. Admitted.

19

86. Denied. RGGR replaces suits and ties more frequently then every one to four years for full-time male employees and more than every five to ten years for part-time male employees. Ex. N, Kowalewski Dep. (Doc. 51-15) 22:21-23:1; Ex. J, Cash Dep. (Doc. 51-11) 21:4-8; Ex. F, Shaffer Dep. (Doc. 51-7) 44:3-15; Ex. K, Crawford Dep. (Doc. 51-12) 19:1-3. Crawford's deposition, at the lines to which RGGR cites, actually states he replaces his suits every 9 months to a year.

87. Denied. RGGR cites to its own admission that it has never employed a female funeral director. Defendant's Ex. 27 (Doc. 54-28, Pg ID 1549).

88. The Commission denies that this is a material fact, and has no way of determining the truth of this statement.

89. The Commission denies that this is a material fact. Under Rost's ownership and management, RGGR has never had a female funeral director. Rost testified that he would provide a suit to a female funeral director, however this assertion cannot be supported by the record since Rost has never had a female funeral director. RGGR's dress code lists "Funeral Directors on

20

Duty" in the section governing what male employees must wear. Ex. S, Dress Code.

90. Denied. Until October 2014 RGGR provided no clothing benefit or allowance to its female employees. Beginning in October 2014, RGGR began providing its part-time female employees an annual stipend of $75 and its full-time female employees an annual stipend of $150. Ex. AA, Kish. Dep. 22:8-10.

91. Denied. First, RGGR omits to mention that until October 2014 it did not provide any clothing benefit to its female employees. Ex. AA, Kish Dep. 22:8-10. Second, RGGR did not ask any female employees whether this amount is commensurate with the benefit provided to its male employees. Ex. AD, Rost Dep. 45:12-19; Ex. AA, Kish Dep. 22:11-23:7.

92. Denied. McKie testified that she has to buy new skirts and blazers every few months for work. Ex. AG, McKie Dep. 33:5-19. Unlike the male employees, female employees also have to buy their clothing on their own time and not while working. Ex. M, McKie Dep. (Doc. 51-14) 25:19-21.

93. Admitted.

94.  Admitted.

95.  Admitted.

<u>Genuine Issues of Material Facts for Trial</u>

The Commission does not believe there are any genuine issues of material fact regarding liability for trial.

Respectfully submitted,

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

<u>s/ Miles Shultz</u>
MILES SHULTZ (P73555)
Trial Attorney

Dated: May 2, 2016        <u>s/ Dale Price</u>
DALE PRICE (P55578)
Trial Attorney

DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
Dale.Price@EEOC.GOV
Tel. No. (313) 226-7808
Fax No. (313) 226-6584

**<u>Certificate of Service</u>**

I hereby certify that on May 2, 2016, I electronically filed the forgoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all record attorneys.


                              EQUAL EMPLOYMENT
                               OPPORTUNITY COMMISSION
dated: May 2, 2016            <u>s/ Dale Price</u>
                              DALE PRICE (P55578)
                              Trial Attorney