# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Equal Employment
Opportunity Commission,

        Plaintiff,

v.

R.G. & G.R. Harris Funeral
Homes, Inc.,

        Defendant.

Civil Action No.
2:14-cv-13710
Hon. Sean F. Cox

---

## DEFENDANT R.G. & G.R. HARRIS FUNERAL HOMES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

James A. Campbell (AZ Bar 026737)
Douglas G. Wardlow (AZ Bar 032028)
Joseph P. Infranco (NY Bar 1268739)
Bradley S. Abramson (AZ Bar 029470)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
jcampbell@ADFlegal.org
dwardlow@ADFlegal.org
jinfranco@ADFlegal.org
babramson@ADFlegal.org

Joel J. Kirkpatrick (P62851)
JOEL J. KIRKPATRICK, P.C.
843 Penniman Ave., Suite 201
Plymouth, MI 48170
(734) 404-5710
(866) 241-4152 Fax
joel@joelkirkpatrick.com

*Attorneys for Defendant*

## Table of Contents

Introduction ................................................................................................. 1

Argument ...................................................................................................... 1

I.    R.G.'s Enforcement of Its Sex-Specific Dress Code Based on Biological Sex Does Not Violate Title VII. .............................................................. 1

    A.    An Employer May Require an Employee to Comply with a Sex-Specific Dress Code Based on the Employee's Biological Sex. ................ 1

    B.    R.G.'s Sex-Specific Dress Code Does Not Impose Unequal Burdens on the Sexes. ...................................................................... 3

    C.    The EEOC's Clothing Allowance Claims Are Irrelevant to Its Unlawful Discharge Claim. ............................................................. 5

    D.    The Undisputed Evidence Establishes that Female Funeral Directors Would Be Issued and Required to Wear Suits Comparable to Those Provided to Male Funeral Directors. .................... 6

    E.    The EEOC Has Not Cited Any Direct Evidence of Discriminatory Intent. .................................................................................... 7

    F.    The EEOC Cannot Establish Pretext. ......................................... 9

    G.    R.G.'s Sex-Specific Dress Code Does Not Impermissibly Cater to the Discriminatory Preferences of Customers. ......................... 11

II.    RFRA Prohibits the EEOC from Applying Title VII to Force R.G. to Violate its Sincerely Held Religious Beliefs. ......................................... 12

    A.    Applying Title VII in this Case Would Substantially Burden R.G.'s Religious Exercise. ................................................................. 12

    B.    The EEOC Has Not Shown that Applying Title VII in this Case Satisfies Strict Scrutiny. ........................................................... 16

III.    R.G. Is Entitled to Summary Judgment on the EEOC's Clothing Allowance Claim. .................................................................................. 18

Conclusion ................................................................................................. 20

i

# Table of Authorities

**Cases:**

*Blizzard v. Marion Technical College*,
    698 F.3d 275 (6th Cir. 2012)................................................................. 10

*Burwell v. Hobby Lobby Stores, Inc.*,
    134 S. Ct. 2751 (2014) ................................................................... 12, 18

*Chavez v. Credit Nation Auto Sales, LLC*,
    No. 14-14596, 2016 WL 158820 (11th Cir. Jan. 14, 2016) ............................... 8, 9

*Chen v. Dow Chemical Co.*,
    580 F.3d 394 (6th Cir. 2009)................................................................. 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)............................................................................ 17

*Dawson v. H&H Electric, Inc.*,
    No. 4:14-CV-005583, 2015 WL 5437101 (E.D. Ark. Sept. 15, 2015)............. 8, 9

*East Texas Baptist University v. Burwell*,
    793 F.3d 449 (5th Cir. 2015)................................................................. 13

*EEOC v. Bailey Co.*,
    563 F.2d 439 (6th Cir. 1977)............................................................ 18, 19

*EEOC v. Cambridge Tile Manufacturing Co.*,
    590 F.2d 205 (6th Cir. 1979)................................................................. 19

*EEOC v. Catholic University of America*,
    83 F.3d 455 (D.C. Cir. 1996) ................................................................ 12

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006)....................................................................... 16, 17

*Hankins v. New York Annual Conference of United Methodist Church*,
    516 F. Supp. 2d 225 (E.D.N.Y. 2007) ..................................................... 12

*Hankins v. New York Annual Conference of United Methodist Church*,
    351 F. App'x 489 (2d Cir. Oct. 30, 2009)................................................. 12

*Holt v. Hobbs,*
    135 S. Ct. 853 (2015) ...........................................................13, 15, 17

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,*
    132 S. Ct. 694 (2012) .................................................................... 17

*Jespersen v. Harrah's Operating Co.,*
    444 F.3d 1104 (9th Cir. 2006).......................................................3, 4, 5

*Johnson v. Kroger Co.,*
    319 F.3d 858 (6th Cir. 2003)............................................................ 7

*Nguyen v. City of Cleveland,*
    229 F.3d 559 (6th Cir. 2000)............................................................ 8

*Passarge v. Sharefax Credit Union,*
    277 F. Supp. 2d 819 (S.D. Ohio 2003) ........................................... 10

*Robinson v. Runyon,*
    149 F.3d 507 (6th Cir. 1998)............................................................ 7

*Smith v. Chrysler Corp.,*
    155 F.3d 799 (6th Cir. 1998)............................................................ 7

*Smith v. City of Salem,*
    369 F.3d 912 (6th Cir. 2004)......................................................... 2, 3

*Smith v. City of Salem,*
    378 F.3d 566 (6th Cir. 2004)......................................................1, 2, 3

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972)...................................................................... 15

*Zubik v. Burwell,*
    _ S. Ct. _, 2016 WL 2842449 (May 16, 2016)................................13, 14

## Introduction

By insisting that Defendant R.G. & G.R. Harris Funeral Homes, Inc. ("R.G.") allow Charging Party Stephens to violate R.G.'s sex-specific dress code, Plaintiff Equal Employment Opportunity Commission (the "EEOC") seeks to create special Title VII protection based on transgender status. But that argument exceeds extant Sixth Circuit authority—indeed, even the EEOC's favorite precedent, *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), declined to go that far. This Court should follow the Sixth Circuit's lead, conclude that R.G. did not violate Title VII when it discharged Stephens for expressing an intent to violate R.G.'s dress code, and grant summary judgment to R.G.

## Argument

### I. R.G.'s Enforcement of Its Sex-Specific Dress Code Based on Biological Sex Does Not Violate Title VII.

#### A. An Employer May Require an Employee to Comply with a Sex-Specific Dress Code Based on the Employee's Biological Sex.

The EEOC argues that "requiring Stephens to comply [with R.G.'s dress code] based on . . . biological gender rather than . . . gender identity is discrimination because of sex." Memorandum in Support of Plaintiff EEOC's Answer to Defendant's Motion for Summary Judgment ("Pl. Opp. Mem.") at 12-13. But if the EEOC is correct, it would be meaningless to say that the employer's dress code is sex-specific in the first place. *See* Defendant's Memorandum of Law Opposing the EEOC's Motion for Summary Judgment ("Def. Opp. Mem.") at 14. This is because

1

employees could skirt those dress codes through unverifiable professions of gender identity, and employers would be powerless to even question them.

The EEOC's attempt to elevate gender identity over sex in the dress-code context faces another hurdle: simple logic shows that the EEOC's position would actually *cause* (not remedy) discrimination based on gender identity. If an employer had a sex-specific dress code that permitted men but not women to wear neckties, and if it applied that dress code based on gender identity, then a biological woman who professes a male gender identity would be allowed to wear a necktie at work, but a biological woman who professes a female gender identity would not. The EEOC would thus foster rather than prevent discrimination based on gender identity.

Viewed in this way, it is clear that the EEOC's argument that a sex-specific dress code must be applied based on gender identity is tantamount to arguing that transgender employees should receive greater protection under Title VII than non-transgender employees do. Under the EEOC's theory, a non-transgender employee who is discharged for violating a sex-specific dress code would not have a Title VII claim. But a similarly situated transgender employee would.

The Sixth Circuit in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), declined to go this far. The court's original opinion included a paragraph stating that "[d]iscrimination based on transsexualism is rooted in the insistence that sex (organs) and gender (social classification of a person as belonging to one sex or the other) coincide," which is "the very essence of sex stereotyping." *Smith v. City of Salem*, 369

2

F.3d 912, 921-22 (2004). Thus, the argument continued, "to the extent that Smith . . . alleges discrimination based solely on his identification as a transsexual, he has alleged a claim of sex stereotyping pursuant to Title VII." *Id.* at 922. But two months later, the Sixth Circuit issued an amended opinion omitting that paragraph, showing that the court was not willing to extend Title VII to cover transsexual status. 378 F.3d 566. Because the EEOC's argument that employers must apply sex-specific dress codes based on gender identity essentially claims that transgender status is entitled to special protection under Title VII, the Court should adhere to *Smith* and refuse to extend Title VII here.[1]

### B. R.G.'s Sex-Specific Dress Code Does Not Impose Unequal Burdens on the Sexes.

The EEOC argues that R.G.'s dress code imposes unequal burdens on the sexes because it is "stricter . . . for females, who are expected to wear skirts." Pl. Opp. Mem. at 3. This argument fails for several reasons.

First, the unequal-burdens analysis must focus on the dress code for funeral directors. *See Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1106-07 (9th Cir. 2006) (en banc) (focusing only on the dress code for the plaintiff's position). The burdens that R.G.'s dress code imposes on male and female funeral directors are identical—

---

[1] The EEOC also contends that R.G. "display[s] [its] sex stereotypes about . . . Stephens" when it argues that the EEOC's position will "allow[] an employee to switch clothing every day." Pl. Opp. Mem. at 14. This is false. R.G.'s analogies show the necessary implication of the EEOC's legal arguments, and it is telling that the EEOC does not even attempt to deny that its arguments would necessarily permit the hypothetical results that R.G. discusses in its briefing.

3

both men and women are required to wear company-issued suits. *See* T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); T. Rost Aff. ¶ 54 (Def. SJ Ex. 1).

Second, even looking beyond the funeral-director position, the dress code's burden on male employees who interact with the public is equivalent to the burden it imposes on female employees who interact with the public. It is undisputed that those male employees must wear suits and that those female employees must wear skirts or dresses. But no evidence in the record suggests, let alone establishes, that wearing a skirt or dress burdens a woman more than wearing a suit burdens a man. Accordingly, no jury could reasonably conclude that R.G.'s dress code imposes an unequal burden on the sexes.

This is analogous to *Jespersen*. There, the plaintiff contended that her employer violated Title VII because its employee-appearance policy required female but not male employees to wear makeup. 444 F.3d at 1109-10. The plaintiff, however, did not submit any evidence showing that the makeup requirement for women imposed any greater burden in terms of time or cost than did the employer's grooming requirements for men. *Id.* at 1110. Because the employee "failed to create a record establishing that the [employer's grooming] policies are more burdensome for women than for men," the court upheld summary judgment in favor of the employer. *Id.* at 1111. In the same way that Jespersen failed to show that wearing makeup was more burdensome for women, the EEOC has failed to show that wearing a skirt or dress is more burdensome than the dress-code requirements imposed on male employees.

4

Thus, R.G.'s sex-specific dress code is compliant with Title VII.[2]

### C. The EEOC's Clothing Allowance Claims Are Irrelevant to Its Unlawful Discharge Claim.

The EEOC claims that R.G.'s dress code "cannot be read separately from the clothing allowance" issue. Pl. Opp. Mem. at 3-4. Here too, the EEOC is incorrect. Indeed, the EEOC itself recognizes that Stephens's discharge, which occurred because of R.G.'s dress code, is a separate and distinct claim from the EEOC's clothing allowance claim. *Compare* Am. Compl. ¶¶ 14-16 (discussing Stephens's discharge), *with id.* at ¶¶ 17-18 (alleging separate claim regarding clothing allowance).

Moreover, as *Jespersen* illustrates, courts analyzing dress codes focus on the particular position at issue. *See* 444 F.3d at 1106-07 (focusing only on the dress code for the plaintiff's position). Here, R.G.'s policy is to provide male and female funeral directors with company-issued suits. T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); T. Rost Aff. ¶ 54 (Def. SJ Ex. 1). Accordingly, female funeral directors—unlike other female employees who interact with the public—do not receive a clothing allowance. Therefore, the EEOC's attempt to import the clothing-allowance issue into the dress-code analysis is misplaced.

---

[2] In a single sentence, the EEOC suggests that R.G. enforces its dress code "generously in favor of male employees" because "some [male employees] have goatees." Pl. Opp. Mem. at 3. That R.G. allows male employees to maintain neatly trimmed facial hair merely describes one aspect of R.G.'s grooming standards for men. It says nothing about how strictly the female dress code is enforced relative to the male dress code. This Court should thus reject as wholly unsupported the EEOC's suggestion that R.G. unequally enforces the dress code.

### D. The Undisputed Evidence Establishes that Female Funeral Directors Would Be Issued and Required to Wear Suits Comparable to Those Provided to Male Funeral Directors.

The EEOC denies that all funeral directors will receive a company-issued suit. *See* Pl. Opp. Mem. at 4-5. But the EEOC's denial cannot be credited because the EEOC fails to cite any facts that undermine the undisputed evidence on this point. *See* T. Rost Aff. ¶ 54 (Def. SJ Ex. 1); T. Rost Dep. 13:4-14, 47:23-48:11 (Def. SJ Ex. 3); Kish Dep. 64:12-24 (Def. SJ Ex. 5); McKie Dep. 38:19-23 (Def. SJ Ex. 13).

First, the EEOC is simply incorrect when it states that Rost's affidavit "contradict[s]" the evidence establishing that female funeral directors will receive and be required to wear company-issued suits. Pl. Opp. Mem. at 4 (citing T. Rost. Aff. ¶¶ 56-57 (Def. SJ Ex. 1)). The cited paragraphs—which discuss the suits that R.G. gives to male employees who interact with the public in positions *other than funeral directors*, T. Rost. Aff. ¶¶ 56-57 (Def. SJ Ex. 1)—do not address the dress code for funeral directors at all. And the paragraphs of Rost's affidavit that do in fact address the dress code for funeral directors confirm that R.G. "will provide female funeral directors with skirt suits in the same manner that it provides pant suits to male funeral directors," and that female funeral directors "will be required to wear those suits while on the job." *Id.* at ¶ 54.

Second, the EEOC puts much stock in the fact that R.G. currently "contracts for clothing with . . . a *men's* clothier." Pl. Opp. Mem. at 4-5. But that does not mean that R.G. would not provide a comparable suit to female funeral directors. It simply

6

means that R.G. would likely have to purchase the suits elsewhere.

Accordingly, the EEOC has failed to cite any evidence that a reasonable juror could rely upon to reject the fact that R.G. would provide female funeral directors with female suits comparable to those provided to male funeral directors.

### E.   The EEOC Has Not Cited Any Direct Evidence of Discriminatory Intent.

The EEOC argues that portions of Rost's testimony constitute direct evidence of discriminatory intent. *See* Pl. Opp. Mem. at 6-12. This argument fails, however, because Rost's statements do not allow a factfinder to conclude that discriminatory intent existed without drawing additional inferences.

"[D]irect evidence of discrimination" is evidence that "does not require a factfinder to draw *any inferences* in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (emphasis added). "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). "Rarely will there be direct evidence from the lips of the defendant proclaiming his or her [discriminatory] animus." *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998).

R.G. primarily contends that two portions of Rost's deposition testimony constitute direct evidence of discrimination: (1) Rost's statement that he discharged

Stephens because of Stephens's stated intent to dress in the female uniform in violation of R.G.'s sex-specific dress code, T. Rost 30(b)(6) Dep. 135:24-136:3, 136:24-137:10 (Def. SJ Ex. 4); and (2) Rost's testimony that he was "uncomfortable" with Stephens's use of the name "Aimee" in the charge of discrimination, T. Rost Dep. 23:4-8 (Pl. Ex. O). Yet this cited evidence does not show that Rost's discharge of Stephens was motivated by prejudice against men or women. To draw that conclusion, a juror would need to make several inferential jumps—for example, that the enforcement of R.G.'s dress code was motivated by impermissible stereotypes, or that Rost's discomfort with Stephens's subsequent use of the name Aimee is directly tied to Rost's discharge of Stephens. Rather, the cited deposition testimony is direct evidence of only one motivation: Rost's intent to discharge Stephens because Rost did not want one of his employees to violate the dress code by dressing in the work uniform for members of the opposite sex. Consequently, the evidence cited by the EEOC does not constitute direct evidence of discrimination.[3]

Two cases that the EEOC cites to support its direct evidence argument— *Chavez v. Credit Nation Auto Sales, LLC*, No. 14-14596, 2016 WL 158820 (11th Cir. Jan. 14, 2016), and *Dawson v. H&H Electric, Inc.*, No. 4:14-CV-005583, 2015 WL 5437101 (E.D. Ark. Sept. 15, 2015)—are distinguishable from this case. In *Chavez*, the court

---

[3] R.G. has met its burden under Title VII even if this were a "direct evidence case[]" because R.G. has proven that it had a reason other than "impermissible discrimination" for its employment decision. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). That reason is R.G.'s decision to enforce its sex-specific dress code. *See* Def. Opp. Mem. at 3-9.

held that a genuine issue of material fact existed as to whether sex was a motivating factor in the discharge of an employee undergoing a male-to-female gender transition. 2016 WL 158820 at *9. The plaintiff there proceeded under a circumstantial-evidence theory, and among other evidence, the plaintiff showed that his employer told him that he could not wear a dress while going to and from work. *Id.* at *6-*8. Here, by contrast, it is undisputed that R.G. would not discharge or otherwise discipline employees who dress as members of the opposite sex on their own time but comply with the dress code while on the job..[4] *Dawson* is distinguishable for similar reasons: that case also proceeded under a circumstantial-evidence theory and did not involve an employer's enforcement of a sex-specific dress code. 2015 WL 5437101 at *1-*3. Accordingly, neither *Dawson* nor *Chavez* supports the EEOC's contention that Rost's statements constitute direct evidence of impermissible sex stereotyping.

### F.   The EEOC Cannot Establish Pretext.

The EEOC's pretext arguments are likewise without merit. The EEOC argues that "the dress code defense [is] pretextual because Rost did not discuss the code when firing Stephens." Pl. Opp. Mem. at 13. The EEOC further argues that "Rost

---

[4] The EEOC denies this fact, *see* Plaintiff's Counter-Statement of Disputed Facts ¶ 77, but the EEOC cites no record evidence that actually contradicts the fact as stated. The EEOC cites Rost's testimony that he did not know what he would do if a customer complained about Stephens dressing as a woman on his own time. But that testimony does not contradict Rost's clear testimony that Stephens was discharged for refusing to comply with R.G.'s dress code while at work, and that Rost would not have discharged Stephens if Stephens had intended to present as a woman only on his own time. T. Rost Aff. ¶¶ 50-51 (Def. SJ Ex. 1); T. Rost 30(b)(6) Dep. 137:11-15 (Def. SJ Ex. 4).

never proposed that Stephens could continue to work—in men's clothing—prior to his deposition." Pl. Opp. Mem. at 12. But the mere fact that an employer did not explain the reason for the discharge at the time it occurred, standing alone, is not enough for a reasonable juror to find pretext. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 284-85 (6th Cir. 2012) (rejecting plaintiff's argument that the legitimate business reasons for employee's termination were pretextual simply because they were not the same reasons stated by the employer in its termination letter); *Passarge v. Sharefax Credit Union*, 277 F. Supp. 2d 819, 827 (S.D. Ohio 2003) (rejecting employee's argument "that [his employer's] silence at the time of his termination in response to his request for an explanation is evidence of pretext").

The EEOC thus has not carried its burden to establish pretext. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). But here, far from casting doubt on R.G.'s reliance on the dress code, the EEOC's own evidence confirms that R.G. discharged Stephens because Stephens insisted on violating the dress code by dressing in the female uniform. *See* Pl. Opp. Mem. at 8 (citing T. Rost 30(b)(6) Dep. 135:24-136:1); T. Rost 30(b)(6) Dep. 136:24-137:10 (Def. SJ Ex. 4).

10

**G.     R.G.'s Sex-Specific Dress Code Does Not Impermissibly Cater to the Discriminatory Preferences of Customers.**

R.G.'s dress code is intended to ensure that grieving individuals are not subjected to distraction or otherwise disturbed as they come mourn lost loved ones. The EEOC characterizes this as "[c]atering to customer preference based on sex." Pl. Opp. Mem. at 17. The EEOC's characterization, however, is inaccurate. Rost's concern about distracting grieving individuals is not limited to his desire to keep customers; it is connected to his desire (and his sincere religious calling) to ensure that he is effectively ministering to the grieving people that he serves. *See* T. Rost Aff. ¶¶ 7, 10, 39 (Def. SJ Ex. 1). Accordingly, the cases that the EEOC cites for the proposition that "catering to a customer's assumed preferences or prejudices is not a defense" are beside the point. *See* Pl. Opp. Mem. at 18-19. The cases are also distinguishable—each of them involves employers preferring one sex over the other sex (that is, preferring male employees over female employees for a position or vice versa). But nothing of the sort is at issue here.

The EEOC is also incorrect when it asserts that Rost's concern that Stephens would cause distraction when dressing as a woman is speculative. *See* Pl. Opp. Mem. at 20. It is undisputed that Rost knew Stephens for several years, since the time he began working as a funeral director at R.G. *See* T. Rost Aff. ¶ 39 (Def. SJ Ex. 1). Rost thus knew what Stephens looked like, and he had a reasonably informed opinion how Stephens wearing a female uniform would affect the business and ministry that he

11

owns and has been a part of for five decades. *See id.* at ¶¶ 2, 39. Rost's reasonable concerns for the wellbeing of grieving families are based on years of experience and observation and should not be lightly cast aside.

## II.   RFRA Prohibits the EEOC from Applying Title VII to Force R.G. to Violate its Sincerely Held Religious Beliefs.

The EEOC claims that "RFRA has never been interpreted to insulate an employer from liability under" an employment-nondiscrimination law. Pl. Opp. Mem. at 21-22. This is not true, however, because a number of cases have upheld RFRA defenses when raised by religiously motivated employers. *See, e.g.*, *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 467-70 (D.C. Cir. 1996) (finding that RFRA provides a defense to a sex-discrimination claim); *Hankins v. N.Y. Annual Conference of United Methodist Church*, 516 F. Supp. 2d 225, 237-38 (E.D.N.Y. 2007) (finding that RFRA provides a defense to an age-discrimination claim), *aff'd on other grounds* 351 F. App'x 489 (2d Cir. Oct. 30, 2009). Although those cases involved religious nonprofit organizations, the Supreme Court in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), made it clear that RFRA also protects religiously motivated owners of closely held for-profit corporations like R.G. *See id.* at 2775 (holding that a "restriction on the activities of a for-profit closely held corporation must comply with RFRA"). Thus, ample precedent supports RFRA's application in this case.

### A.   Applying Title VII in this Case Would Substantially Burden R.G.'s Religious Exercise.

As with its prior summary-judgment briefing, the EEOC mischaracterizes

R.G.'s substantial-burden arguments. Most notably, the EEOC implies that the burden on R.G.'s religious exercise is merely paying for a female suit worn by a biological male. Pl. Opp. Mem. at 23-24. While this faith-violating expenditure is surely part of the burden on R.G.'s religious exercise, *see* T. Rost Aff. ¶¶ 46-47 (Def. SJ Ex. 1), it does not encompass the whole of the burden. The evidence unequivocally shows that Rost believes that he "would be violating God's commands" not only by paying for, *id.* at ¶ 46, but also by "permit[ting]," *id.* at ¶ 45, "one of [R.G.'s] male funeral directors to wear the uniform for female funeral directors while at work," *id.* Forcing Rost to violate his faith in this way imposes a substantial burden on his religious exercise. *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (noting that a substantial burden exists when a person is required "to engage in conduct that seriously violates [his] religious beliefs").

The EEOC fails in its passing attempt to refute the substantial burden that occurs when the government compels R.G. to permit one of its representatives to dress in the uniform for members of the opposite sex. The EEOC asserts that R.G. was not "asked to facilitate Stephens's behavior" or "to perform any actions which [Rost] finds religiously offensive." Pl. Opp. Mem. at 26. This argument ignores that Stephens's proposal to dress in the female uniform involved conduct *as a representative of R.G.* and thus directly implicated R.G. and its religious exercise. That fact distinguishes this case from *East Texas Baptist University v. Burwell*, 793 F.3d 449, 459 (5th Cir. 2015), *vacated and remanded sub nom. Zubik v. Burwell,* __ S. Ct. __, 2016 WL

2842449 (May 16, 2016),[5] where what the employees proposed to do—use certain forms of contraception—occurred on their own time rather than when they were representing their employer. In contrast, Stephens would have made R.G. and Rost complicit in promoting "the idea that sex is a changeable social construct rather than an immutable God-given gift" in violation of Rost's religious convictions. T. Rost Aff. ¶¶ 42-45 (Def. SJ Ex. 1). Compelling R.G. to do that would impose a substantial burden on its religious exercise.

The EEOC also attempts to refute the substantial burden that occurs when the government forces R.G. to pay for a female suit for a male funeral director. The EEOC begins by arguing that it is "speculative and unsupported" that R.G. would have purchased a female suit for a female funeral director. Pl. Opp. Mem. at 24. But as previously discussed, the EEOC has not cited anything in the record to contradict the undisputed evidence on this point. *See supra* at 6-7.

The EEOC then claims that R.G. would not have needed to provide female suits to Stephens because Stephens "did not ask [R.G.] to provide clothing." Pl. Opp. Mem. at 24; *see also id.* at 25 (stating without citation to evidence that Stephens "would be willing to provide [Stephens's] own clothing"). The EEOC, however, cannot reconcile (1) this newfound argument that R.G. need not provide clothes to Stephens and (2) its clothing allowance claim that R.G. must provide equal clothing provisions

---

[5] The EEOC's reliance on this case is suspect now that the Supreme Court has vacated the Fifth Circuit's opinion.

to male and female employees. When, as here, the EEOC already argues that R.G. violates Title VII by allegedly purchasing clothing for male funeral directors but not for comparable female employees, the EEOC cannot simultaneously seek to bolster its Title VII discharge claim by contending that R.G. need not provide female clothing for Stephens.

The EEOC additionally argues that R.G.'s purchasing of female attire for Stephens cannot constitute a substantial burden because the "cost" of buying female suits for Stephens would have been a few hundred dollars or less. Pl. Opp. Mem. at 24. This argument fails for two reasons, one legal and one factual. First, a significant financial expenditure is not a prerequisite to a substantial burden on religious exercise. The Supreme Court recently confirmed this when it held, in a case where a religious inmate was not required to spend any money, that a substantial burden on religious exercise exists whenever the government requires a person of faith "to engage in conduct that seriously violates [his] religious beliefs." *Holt*, 135 S. Ct. at 862; *see also Wisconsin v. Yoder*, 406 U.S. 205, 218, 221 (1972) (holding that the application to Amish students of a law requiring school attendance until age 16 on penalty of a five-dollar fine constituted a "grave interference with important Amish religious tenets" and "unduly burden[ed] the free exercise of religion"). Second, R.G. has never discussed cost as the basis of the substantial burden imposed on its religious exercise. Rather, regardless of the sum, it is the very act of paying for the clothing—and thus being complicit in something that violates Rost's religious convictions—that contravenes

Rost's beliefs. *See* T. Rost Aff. ¶ 46 (Def. SJ Ex. 1). R.G. has thus established a substantial burden on its religious exercise.

### B.   The EEOC Has Not Shown that Applying Title VII in this Case Satisfies Strict Scrutiny.

The EEOC has not engaged in the particularized analysis that, as R.G. has already shown, RFRA's strict-scrutiny standard requires. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. SJ Mem.") at 19-20; Def. Opp. Mem. at 20-22. Thus, the EEOC's generalized claim that "eliminating workplace sex discrimination is a compelling governmental interest," Pl. Opp. Mem. at 22 (capitalization omitted),[6] does not even begin to show that forcing Rost to allow a male funeral director to dress in the female uniform is the least restrictive means of furthering a compelling government interest.

The EEOC implies that the elimination of workplace discrimination in general is such a compelling governmental interest that it admits of no exceptions. Not only has the Supreme Court rejected that categorical approach to RFRA analysis in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) (rejecting the government's argument that the challenged law "serves a compelling purpose and simply admits of no exceptions"), the Court has regularly concluded that protecting religious liberty justifies exceptions to important governmental interests

---

[6] The EEOC curiously asserts that R.G. "acknowledges" that "Congress's mandate to eliminate workplace discrimination is a compelling governmental interest." Pl. Opp. Mem. at 22. In truth, however, R.G. has steadfastly maintained that "the EEOC cannot demonstrate a compelling interest here." Def. SJ Mem. at 19.

like enforcing nondiscrimination laws, *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 710 (2012), ensuring prison safety and security, *see Holt*, 135 S. Ct. at 863-67, enforcing federal drug laws, *see Gonzales*, 546 U.S. at 433, and protecting public health, *see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544-45 (1993). This is one of those cases where regardless of the strength of the general governmental interest underlying Title VII, the government cannot satisfy strict scrutiny because the government has no compelling interest in forcing R.G. to violate its religious beliefs (as well as its sex-specific dress code) and allow its male funeral directors to wear the female uniform.

Nor can the EEOC satisfy the least-restrictive-means requirement of RFRA's strict-scrutiny analysis. The EEOC rejects R.G.'s proffered alternatives, *see* Def. SJ Mem. at 20-21, because although those options would allow the government to pursue its asserted interests in most situations, it would not permit Stephens to violate R.G.'s dress code. Pl. Opp. Mem. at 27-28. But a proposed less-restrictive alternative is not disqualified as an option simply because it prevents the government from advancing its interest *in the particular situation before the Court*. Indeed, by its very nature, a less-restrictive alternative protects the rights of religiously burdened litigants by forbidding the government from applying the law against them under the circumstances at issue.

Moreover, the government could employ other alternatives to ensure that Stephens retains employment or the benefits of employment. For example, the federal

government could directly hire Stephens and allow Stephens to dress however Stephens wants; the government could pay Stephens a full salary and benefits from the time of Stephens's discharge until Stephens acquires comparable employment; or the government could provide incentives for other employers (including, but not limited to, employers in the funeral industry) to hire Stephens and allow Stephens to dress as a member of the opposite sex on the job. *See Hobby Lobby*, 134 S. Ct. at 2780 ("[F]or the Government to assume the cost of providing the four contraceptives at issue to any women who were unable to obtain them . . . due to their employers' religious objections[] . . . would certainly be less restrictive of the plaintiffs' religious liberty"). With all of these alternatives available to the government, the EEOC cannot meet RFRA's least-restrictive means requirement and thus cannot satisfy strict scrutiny.

## III. R.G. Is Entitled to Summary Judgment on the EEOC's Clothing Allowance Claim.

As R.G. previously explained, the EEOC lacks authority to raise its clothing allowance claim. Def. SJ Mem. at 21-24. The EEOC tries to distinguish *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977), because in that case the EEOC "filed suit on a claim of [a different kind of] discrimination against a . . . person" other than the charging party. Pl. Opp. Mem. at 30. But the same is true here. The clothing allowance claim alleges discrimination against a class of persons that does not include Stephens. Stephens is a biological male who is not within the class of female employees on

whose behalf the EEOC raises the clothing allowance claim. The EEOC confirms this by asserting that Stephens "would be willing to provide [Stephens's] own clothing" and thus is not seeking a clothing allowance. Pl. Opp. Mem. at 25.

When discussing this issue of standing, the EEOC encourages the Court to look beyond the analysis outlined in *Bailey Co.*, *see* Def. SJ Mem. at 21-23, and glean guidance instead from *EEOC v. Cambridge Tile Manufacturing Co.*, 590 F.2d 205 (6th Cir. 1979). Pl. Opp. Mem. at 31. Yet this argument ignores that *Bailey Co.* analyzed the question at issue here—whether the EEOC lacks standing to raise a claim outside what an aggrieved party alleged in his charge of discrimination, 563 F.2d at 446— whereas *Cambridge Tile* "involve[d] the scope of the investigatory and subpoena power of the EEOC," 590 F.2d at 205. Because R.G. does not object to the EEOC's use of its subpoena power, *Cambridge Tile* is inapposite.

The EEOC's clothing allowance claim also fails on its merits for the reasons that R.G. has already explained. *See* Def. SJ Mem. at 24-25; Def. Opp. Mem. at 23-24. The EEOC disagrees, arguing that "[a]n examination of . . . the flexibility afforded to the male clothing benefit . . . demonstrate[s] . . . discrimination against female employees." Pl. Opp. Mem. at 33-34. On the contrary, however, the flexibility of paying a clothing allowance to female employees (and thus allowing them to select the code-complying clothing of their choice) greatly exceeds the supposed flexibility of requiring male employees to wear company-issued suits. This increased flexibility for women further illustrates the equity between the clothing benefits afforded to men

19

and those afforded to women.

## **Conclusion**

For the foregoing reasons, R.G. respectfully requests that the Court grant its motion for summary judgment.

Dated: May 19, 2016

Respectfully submitted,

/s/ Douglas G. Wardlow

Douglas G. Wardlow

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016, I electronically filed the foregoing Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment with the Clerk of the Court using the ECF system, which will send notification of this filing to all parties in the case.

/s/ Douglas G. Wardlow
Douglas G. Wardlow