## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

DONNA STEPHENS, as TRUSTEE OF THE
AIMEE A. AND DONNA STEPHENS TRUST,

      Plaintiff-Intervenor,

v.

R.G. & G.R. HARRIS FUNERAL HOMES,
INC.,

      Defendant.

_____/

Case No. 14-cv-13710

Hon. Sean F. Cox

## JOINT FINAL PRETRIAL ORDER

The parties to the above captioned matter submit this Joint Final Pretrial

Order in accordance with the Court's June 18, 2018 Scheduling Order as updated

and amended by minute order dated August 20, 2020 and Local Rule 16.2.

### I.    Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343

and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and

(3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-

5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42

U.S.C. § 1981a.

## II.    Plaintiff EEOC's and Plaintiff-Intervenor's (collectively, "Plaintiffs'") Claims

The Complaints state the following:

Defendant engaged in unlawful employment practices at its Garden City,

Michigan facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C.

§ 2000e-2(a)(1), by terminating Aimee Stephens's employment because of sex.

Defendant's decision to fire Aimee Stephens was because of Stephens's sex.

Specifically, Defendant fired Stephens because Stephens is transgender, because of

Stephens's transition from male to female, and/or because Stephens did not

conform to Defendant's sex- or gender-based preferences, expectations, or

stereotypes.

As a result of Defendant's discrimination, Stephens suffered emotional pain,

suffering, inconvenience, loss of enjoyment of life, and humiliation. She also

suffered lost wages and losses related to early withdrawal from her IRA account.

Since September 9, 2012, Defendant engaged in unlawful employment

practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1),

by providing a clothing allowance/work clothes to male employees but failing to

provide such assistance to female employees because of sex.

Since October 2014, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by providing unequal clothing benefits to female employees because of sex.

In addition, Plaintiff-Intervenor asserts:

Defendant argues below that the question of defendant's liability for a violation of Title VII remains an open question to be litigated and tried, but that assertion is wholly at odds with rulings from this Court, the Sixth Circuit, and the Supreme Court.

This Court has already held that Defendant violated Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), when it fired Stephens for failing to comply with Defendant's sex-based stereotypes. *Equal Emp't Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, 201 F. Supp. 3d 837, 853 (E.D. Mich. 2016) ("Accordingly, for all of these reasons, the Court rejects the Funeral Home's sex-specific dress code defense to the Title VII sex-stereotyping claim asserted on behalf of Stephens in this case."). The Sixth Circuit affirmed that ruling, *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 567 (6th Cir. 2018) (granting "summary judgment to the EEOC on its unlawful-termination claim"), and the U.S. Supreme Court affirmed the Sixth Circuit's judgment. *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1734 (2020) (holding that the "judgments of the Second and Sixth Circuits in Nos.17–1623 and 18–107 are affirmed."). The

Supreme Court's affirmance of the Sixth Circuit's decision left in place that court's ruling that Defendant violated Title VII by terminating Stephens because she failed to comply with Defendant's sex-based stereotypes. *See Equal Emp't Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 574 (6th Cir. 2018) ("reject[ing] the Funeral Home's sex-specific dress code defense to the Title VII sex-stereotyping claim asserted on behalf of Stephens in this case" and "grant[ing] summary judgment to the EEOC on its sex discrimination claim").

The Supreme Court stated that it was not deciding certain issues related to "bathrooms, locker rooms, or anything else of the kind," because "[t]he only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.'" *Bostock*, 140 S. Ct. at 1753. This question the Court answered in the affirmative.

Though Defendant argues that the Court did not affirm liability on a sex-stereotyping theory, the use of different theories for reaching the same substantive conclusion that Defendant discriminated against Stephens because of her sex does not alter liability. *Cf. Hively v. Ivy Tech Cmty. College of Ind.*, 853 F.3d 339, 345 (7th Cir. 2017) (en banc) ("Although the analysis differs somewhat [between showing Title VII liability via a comparator method and an associational method], both avenues end up in the same place: sex discrimination."). And even if the

different legal theories could be understood as separately establishing liability, the

Supreme Court did not overrule the Sixth Circuit's holding as to the sex

stereotyping theory and it therefore stands. *See, e.g., In re Quality Stores, Inc.*, 354

B.R. 840, 843 (W.D. Mich. 2006) ("Vermont's argument ignores the most obvious

impediment to its position—the existence of binding Sixth Circuit precedent

holding that the abrogation of sovereign immunity in § 106(a) was a valid exercise

of Congressional power. The Supreme Court did not vacate or reverse this holding

in *Hood* or in *Katz*. On each occasion the Supreme Court declined to rule on the

validity of § 106(a) and affirmed the Sixth Circuit's decision on other grounds.

This Court is therefore bound by the Sixth Circuit's opinion in *Hood*." (internal

citations omitted)); *Mastro v. Rigby*, 764 F.3d 1090, 1094 (9th Cir. 2014) ("In *In re*

*Bellingham*, we held that 'consent permits a non-Article III judge to decide finally'

a *Stern* claim. In *Arkison*, the Supreme Court affirmed our decision in *In re*

*Bellingham* on other grounds . . . . The Supreme Court's decision 'not . . . to

address . . . whether Article III permits a bankruptcy court, with the consent of the

parties, to enter final judgment on a *Stern* claim' leaves intact our holding that

consent does, in fact, permit a bankruptcy court to enter final judgment on a *Stern*

claim." (internal citations omitted)); *Chowdhury v. Worldtel Bangladesh Holding,*

*Ltd.*, 746 F.3d 42, 50 n.8 (2d Cir. 2014) ("[T]he Supreme Court's decision in

*Kiobel* did not disturb the precedent of this Circuit that corporate liability is not

presently recognized under customary international law and thus is not currently
actionable under the ATS." (internal citations omitted)).

Defendant's liability under Title VII for firing Stephens has already been
decided and that there is nothing left to brief in this case.

Both plaintiff and plaintiff-intervenor state:

The plaintiffs reserve the right to supplement their arguments regarding
liability if the Court determines that liability needs to be further explored, and to
submit additional evidence on this issue if the Court determines that liability has
not been decided.

### III.   Defendant's Claims

Defendant did not violate 42 U.S.C. § 2000e-2(a)(1) by deciding not to
retain Aimee Stephens after Stephens declined to follow Defendant's sex-specific
dress code in accord with Stephens's biological sex. The dress code—standard for
the industry and consistent with federal law, including the EEOC's existing
compliance manual—is sex-specific. At all times, Harris administered its dress
code based on biological sex, not gender identity. The EEOC and Stephens have
not challenged the dress code. Instead, they say that it constitutes sex
discrimination to apply a dress code based on biological sex rather than an
employee's internal sense of gender. Defendant disagrees and also disagrees that
its employment decision was motivated by Stephens's self-identification as

transgender. The decisive consideration was Stephens's insistence on violating the sex-specific dress code at work. Defendant would not have made the same decision had Stephens continued to conform to the dress code for male funeral directors while at work. And Defendant would have reached the same decision if a female funeral director had declared that she would not comply with the sex-specific dress code requirements based on biological sex.

The Supreme Court's decision in this case did not resolve the primary liability question. "The scope of a remand is determined by examining the *entire* order or opinion." *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004) (emphasis added). And the entirety of the Supreme Court's opinion here makes clear that the Court expressly disclaimed prejudging whether Title VII allows an employer to enforce a sex-specific dress-code policy based on sex, leaving that question open for this Court on remand. *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1753 (2020) ("[N]one of these other laws [sex-segregated bathrooms, locker rooms, and dress codes] are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today. . . . The only question before us is whether an employer who fires someone *simply for being* homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.'") (emphasis added); *accord id.* ("Firing employees because of a statutorily protected

trait surely counts. Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for future cases, not these.").

As for the Sixth Circuit's opinion, it concluded that the EEOC was entitled to summary judgment based only on a sex-stereotyping theory. *EEOC v. R.G. & G.R. Harris Funeral Homes Inc.*, 884 F.3d 560, 571–74 (6th Cir. 2018). And the Supreme Court did *not* affirm the Sixth Circuit's ruling on this ground. In fact, the Supreme Court did not adopt or otherwise rely on a sex-stereotyping theory at all. Instead, the Supreme Court affirmed the Sixth Circuit's sex-discrimination analysis under Title VII's plain language. *Bostock*, 140 S. Ct. at 1738–54. And in that analysis, the Sixth Circuit specifically held that the EEOC "should have had the opportunity, either through a motion for summary judgment or a trial, to establish that the Funeral Home violated Title VII's prohibition on discrimination on the basis of sex by firing Stephens because she was transgender and transitioning from male to female." 884 F.3d at 580–81. Construing both the Supreme Court and Sixth Circuit opinions together, *that* is the scope of the mandate.

Accordingly, the Court should order a briefing schedule for the parties to file cross-motions for summary judgment. If the Court's ruling on those motions does not resolve the case, the Court should schedule a trial so a jury can determine whether Harris Funeral Homes decided not to retain Stephens because of

Stephens's refusal to comply with the company's sex-specific dress code based on biological sex or, instead, "simply for being . . . transgender." *Bostock*, 140 S. Ct. at 1753.

The Ninth Circuit's memorandum opinion in *Kastl v. Maricopa County Community College District*, 325 Fed. Appx. 492 (9th Cir. 2009), is illustrative of the proper path forward. (Justice Gorsuch, who authored the Supreme Court opinion here, sat on the *Kastl* panel by designation.) In *Kastl*, a "transsexual" plaintiff claimed a Title VII violation when the defendant employer declined to allow Kastl to use the opposite sex's restroom facility until completion of sex reassignment surgery and then failed to renew the plaintiff's employment contract. The panel cited Ninth Circuit precedent holding that "it is unlawful to discriminate against a transgender (or any other) person because he or she does not behave in accordance with an employer's expectations for men or women." *Id.* at 493. In other words, the opinion acknowledged that an employer violates Title VII for discharging an employee merely for being transgender. But after recognizing that Kastl's complaint stated "a prima facie case of gender discrimination under Title VII," the panel held that the employer "satisfied its burden of production under the second stage of the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when it proffered evidence that it banned Kastle from using the women's restroom for safety reasons." *Id.* "Because Kastle did not put forward

sufficient evidence demonstrating that [the employer] *was motivated by Kastle's gender*, her claim is doomed at the third *McConnell Douglas* stage." *Id.* (emphasis added). Accordingly, the employer was entitled to summary judgment. *Id.*

So too here. Defendant has proffered evidence that it declined Stephens's proposal to violate the company's sex-specific dress code based on concerns for Stephens's coworkers and the funeral home's clients. It is now the EEOC's and Intervenor's burden to put forward sufficient evidence demonstrating that Defendant was actually motivated by Stephens's gender. If they do, the issue must be presented to a fact finder. If they do not, Defendant is entitled to summary judgment, just like the employer in *Kastl*.

The issue of what triable issues remain is so important that it warrants full briefing and oral argument, not mere statements and counter-statements in a final pretrial order. Nonetheless, Defendant notes that Plaintiff-Intervenor's reliance on cases like *In re Quality Stores*, *Mastro*, and *Chowdhurry* is misplaced. In each of them, the Supreme Court's opinion left intact a circuit court's ruling or precedent. But that's not what happened here.

Until the Supreme Court ruled, the Sixth Circuit's opinion was controlling. That Sixth Circuit said that (a) the EEOC was entitled to summary judgment on its sex-stereotyping theory because "the Funeral Home may not rely on its [sex-specific dress code] policy to combat the charge that it engaged in improper se

stereotyping," 884 F.3d at 574, and (b) the EEOC was entitled to pursue a claim that Defendant violated Title VII by "firing Stephens because she was transgender," *id.* at 580. So what did the Supreme Court "affirm"? Only (b): "An employer who fires an individual merely for being gay or transgender defies the law." 140 S. Ct. at 1754. Did the Court leave holding (a) intact? No. The Court expressly said that whether a sex-specific dress code "*might or might not qualify as unlawful discrimination* or find justifications under other provisions of Title VII are questions for future" decisions. *Id.* 1753 (emphasis added). What the Court "affirmed" was that the "EEOC should have had the opportunity, either through a motion for summary judgment or at trial, to establish that the Funeral Home violated Title VII's prohibition on discrimination on the basis of sex by firing Stephens because she was transgender." 884 F.3d at 580. That is the only interpretation that gives meaning to all aspects of the Supreme Court's decision.

As to the allegations regarding Defendant's clothing benefits, Defendant leaves the EEOC to its proofs.

## IV.  Stipulated Facts

The parties stipulate to the following facts at trial:

1.  Aimee Stephens was employed by Defendant as a Funeral Director/Embalmer starting in October 2007.

2.  On or about August 15, 2013, Defendant fired Aimee Stephens.

3. Defendant's employee manual specifies different dress codes for men and for women.

4. Aimee Stephens complied with the dress code's specifications for male employees from the time of hire until July 2013. Defendant purchased men's suits for Stephens to wear and Stephens wore them.

5. In July 2013, Stephens presented Defendant with a letter that is Plaintiffs' Exhibit 7, that she was a woman, that her name was Aimee, and that she would comply with Defendant's dress code for women.

6. After considering the letter for approximately two weeks, Defendant told Stephens that "[t]his is not going to work" and fired her. Defendant offered Stephens a severance package in exchange for a release of all claims.

7.  Stephens planned to return to work wearing female attire that complied with Defendant's dress code for women.

8. After being fired by Defendant, Aimee Stephens was either unemployed or employed in a job that paid her less than she was paid by Defendant from August 15, 2013 until December 26, 2014, when she was unable to continue work due to her medical condition.

9. Aimee Stephens secured paid employment at Krysco LLC from approximately May 2014 to July 2014 and at VHS of Michigan from approximately July 2014 to December 2014.

10. From her employment at Krysco LLC, Aimee Stephens earned $1,013.14.

11. From her employment at VHS of Michigan, Aimee Stephens earned $13,068.09.

12. As of December 26, 2014, Aimee Stephens became disabled and was no longer able to work.

13. From December 2014 to March 2015, Aimee Stephens was on an unpaid medical leave of absence from VHS of Michigan.

14. In 2013, Defendant paid Aimee Stephens compensation of $35,366.20, up through her termination on August 13, 2013.

15. From the date Defendant fired Aimee Stephens (August 13, 2013) until the date she became disabled (December 26, 2014), Defendant would have paid her $77,805.64.

16. During all relevant times, Defendant had a policy of matching employees' contributions to their respective Roth IRA retirement accounts on a dollar-for-dollar basis, up to three percent of an employee's earnings.

17. At the time she was fired, Aimee Stephens was contributing over three percent of her earnings from Defendant to her Roth IRA retirement account.

18. If Aimee Stephens had been employed between the date Defendant fired her (August 13, 2013) and the date she became disabled (December 26, 2014), Defendant would have contributed three percent of Stephens's earnings—namely, $2,334.17—in matching funds to her Roth IRA retirement account.

19. In 2014, Aimee Stephens withdrew $15,745.40 from her Roth IRA retirement account to replace income lost when she was fired by Defendant.

20. She would not have withdrawn this money from her Roth IRA in 2014 if she had not been fired.

21. Early distributions from traditional Roth IRA retirement accounts incur withdrawal penalty fees and are subject to federal taxation.

22. Aimee Stephens incurred a ten-percent financial penalty of $1,574.54 for the early withdrawal from her Roth IRA account.

23. Aimee Stephens paid federal income taxes of $2,361.81 on the amount withdrawn from her Roth IRA account.

24. Aimee Stephens's lost wages from 2013 and 2014 and the losses associated with her early IRA withdrawal have accrued and continue to accrue prejudgment interest.

25. Between September 9, 2012 and October 15, 2014, Defendant provided no clothing allowance or stipend for public-facing female employees at its funeral homes.

26. During the same time frame, funeral directors were provided with two suits and ties at hire if full-time, and one suit and tie if part-time. Defendant expected these suits and ties to last for one to four years.

27. In addition, funeral directors who were so furnished with suits could have them repaired and replaced as necessary.

28. Prior to this litigation, Defendant had only one female applicant apply for an open funeral director position, and that applicant was not qualified.

29. On October 15, 2014, Defendant began providing annual clothing stipends to non-funeral director, female public-facing employees.

30. Defendant also provides a suit similar to the funeral director suit for male employees who interact with the public in positions other than funeral director. At the time of the litigation, all male employees, other than funeral directors, who interacted with the public were part-time and received one suit that was replaced when no longer serviceable.

31. Said stipends consist of $150 checks for full-time females and $75 checks for part-time females. These stipends were paid annually.

32. The cost to Defendant of each suit provided to male employees was $235. Defendant expected these suits to last one to four years.

33. Defendant does not provide a clothing allowance or suit to employees who are not expected to have client contact, whether male or female.

## V.   Issues of Fact to Be Litigated

1. Defendant contends that following issues of fact remain to be litigated:

   A.   Whether Defendant's decision not to retain Stephens was motivated by Stephens's refusal to comply with Defendant's sex-specific dress code based on biological sex or was, instead, simply for being transgender.

   B.   Whether Defendant administers the dress code based on its employees' biological sex.

   C.   Defendant's dress code is consistent with the standard for the industry.

2. The Plaintiff-Intervenor contends that liability has been established by the Sixth Circuit, which ruling was affirmed by the United States Supreme Court, so these issues do not need to be litigated.  The

Commission reserves the right to further brief on the issue if necessary. *See* discussion above in Sections II and III.

3. The Commission and Plaintiff-Intervenor contend that the following issues of fact need to be litigated:

    A. The amount of compensatory damages to be awarded to Plaintiff-Intervenor.

    B. Whether Aimee Stephens engaged in reasonable efforts to find other employment after Defendant fired her.

    C. Whether Defendant's clothing policy violated Title VII, and if so, the amount of pecuniary compensatory damages to be paid to female employees to make them whole for unequal clothing allowance benefits from September 9, 2012 to the present, if any.

## VI. Issues of Law to Be Litigated

1. Defendant contends that this issue remains to be litigated: Whether Defendant's enforcement of its sex-specific dress code based on biological sex violated Title VII.

2. Plaintiff-Intervenor argues otherwise as set forth above in Section II, and the Commission reserves the right to further brief on the issue if necessary.

3. Whether Defendant's clothing-benefits policy violated Title VII.

**VII.   Evidence Problems Likely to Arise at Trial**

None anticipated.

**VIII. Witnesses**

A. Plaintiffs Intend to Call:

    1.  Aimee Stephens (via videotaped trial deposition and deposition transcript)

    2.  Donna Stephens

B. Plaintiffs May Call:

    1.  Thomas Rost

    2.  Shannon Kish

    3.  If the Court determines that liability has not been established, Plaintiffs reserve the right to identify additional witnesses.

C. Defendants Intend to Call:

    1. Aimee Stephens (via videotaped trial deposition and 12-16-15 deposition)

    2. Thomas Rost

D. Defendants May Call:

    1.  Ms. Dolores Nemeth

    2.  Ryan Kish

    3.  Shannon Kish

4. Troy Shaffer

5. Cody Higley

6. George Crawford

7. Matthew Rost

8. Michelle Peterson

9. David Kowaleski

10. David Cash

## IX.    Exhibits

A. Plaintiffs' Exhibits

| Exh. No. | Bates No. | Document Description | Defendant's Objection |
|----------|-----------|---------------------|----------------------|
| 1. | | 2013 W-2 for Aimee Stephens's employment with Defendant | |
| 2. | | 2014 W-2 for Aimee Stephens's employment at Krysco LLC | |
| 3. | | 2014 W-2 for Aimee Stephens's employment at VHS of Michigan | |
| 4. | | August 22, 2013 earnings statement for Aimee Stephens's employment with Defendant | |
| 5. | | 2014 1099-R for Aimee Stephens | |
| 6. | | 2014 1040 for Aimee Stephens | |
| 7. | 15-16 | July 31, 2013 letter from Aimee Stephens to "Friends and Co-Workers" | |
| 8. | 52-525; 528-2710 | ADP Easy Pay Payroll Register and Master List of Payroll Records for Defendant from 12-25-2011 to 12-21-2014 | |

| 10. | HFH Bates 19 | Select Financial Data 2012-2014 | |
| 11. | HFH Bates 144-183 | Stipend Checks paid to female employees and suit billing data for male employees, 2014-2015 | |
| 12. | HFH Bates 17-18 | List of Male Employees provided suits and female employees provided clothing stipends | |

B. Defendant's Exhibits

| Exh. No. | Bates No. | Document Description | Plaintiffs' Objection |
| --- | --- | --- | --- |
| 1. | | W-4 employee's withholding allowance certificate dated October 1, 2007 when Anthony B. Stephens began employment with Harris funeral homes | |
| 2. | | Cover letter and resume of Anthony B. Stephens submitted to Harris funeral homes when applying for the position of funeral director | |
| 3. | EEOC002717 etc. | Harris funeral homes employee manual presented to Stephens upon beginning employment and 2007 | |

## X.    Damages

Plaintiff and Plaintiff-Intervenor will be seeking damages in the form of

backpay for lost wages and losses related to the IRA account withdrawal, in the

amount of $69,994.93 plus prejudgment interest on that amount, plus

compensatory damages for the emotional distress inflicted by the Defendant as a result of the unlawful termination of Stephens in an amount to be determined by the jury. Costs, post-judgment interest, and attorneys' fees also will be sought in post-judgment relief.

Plaintiff EEOC will also seek pecuniary compensatory damages for unpaid clothing allowances should liability under Title VII be established.

## XI. Trial

A. Jury/Nonjury: Assuming Defendant's expected motion for summary judgment does not resolve the case, this is a jury trial.

B. Length:

1. Plaintiff and Plaintiff-Intervenor estimate that their portion of this trial will take approximately one day running from 8:30 AM to 1:30 PM, not including jury deliberations.

2. Defendant estimates that its portion of this trial will take approximately two days on the same schedule.

## XII. Settlement Discussions

The parties have engaged in settlement discussions, including most recently an exchange of emails on October 8 and 9. Although they agree on the amount of back pay and IRA-related damages to which Plaintiff-Intervenor would be entitled, the parties do not agree about either compensatory damages for Plaintiff-Intervenor

nor on her claim for attorney fees. Neither side has closed off further discussions, and further exchange of information is likely.

### XIII. Trial Briefs and Jury Instructions

The parties agree that they will comply with the Court's instructions regarding the content and timing of trial briefs and jury instructions.

### XIV. Juror Expenses

Each party acknowledges that the Court may assess juror expenses under LR 38.2.

Respectfully Submitted,

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | R.G. & G.R. HARRIS FUNERAL HOMES, INC. |
|---|---|
| By:__/s/_Dale Price_____ | By:__/s/ Joel Kirkpatrick_ |
| DALE PRICE (P55578) | JOEL KIRKPATRICK |
| Date: November 17, 2020 | Date: November 18, 2020 |

THE AIMEE A. AND DONNA STEPHENS TRUST

By:___/s/ John Knight_____
JOHN KNIGHT
Date: November 17, 2020

SO ORDERED.

Dated: November 19, 2020              s/Sean F. Cox_____
                                     Sean F. Cox
                                     U. S. District Judge